**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HIGHWAY MATERIALS, INC.,       :
      :
      Plaintiff,       :
      :
      v.       :
      :
WHITEMARSH TOWNSHIP,       :
MONTGOMERY COUNTY, PA; THE BOARD :
OF SUPERVISORS OF WHITEMARSH       :
TOWNSHIP, MONTGOMERY COUNTY, PA.;:
ANN D. YOUNGLOVE, INDIVIDUALLY       :
AND IN HER CAPACITY AS CHAIRMAN       :       CIVIL ACTION NO. 02-3212
OF THE BOARD OF SUPERVISORS;       :
RONALD J. DEROSA, INDIVIDUALLY AND :
IN HIS CAPACITY AS VICE CHAIRMAN;       :       **JURY TRIAL DEMANDED**
WILLIAM P. RIMEL, III, INDIVIDUALLY       :
AND IN HIS CAPACITY AS SUPERVISOR;       :
PETER B. CORNOG, INDIVIDUALLY AND       :
IN HIS CAPACITY AS SUPERVISOR;       :
MICHAEL A. ZEOCK, INDIVIDUALLY AND :
IN HIS CAPACITY AS SUPERVISOR;       :
THOMAS F. ZARKO, INDIVIDUALLY AND       :
IN HIS CAPACITY AS TOWNSHIP       :
ENGINEER,       :
      :
      Defendants.       :


## COMPLAINT


Plaintiff Highway Materials, Inc. ("HMI"), for its Complaint against defendants, alleges as follows:


## NATURE OF ACTION


1.      This is a civil rights action brought by HMI, the owner of a 309-acre tract of land in Whitemarsh Township (the "Township"), against the Township, its Board of

Supervisors (the "Board"), and the Township Engineer. As set forth in detail below, defendants embarked on a scheme to deprive HMI of its rights to develop property in accordance with the applicable zoning. Acting under color of state law and solely for personal and/or political gain, the Board misused and abused its legislative powers by illegally rezoning HMI's property after-the-fact to stop HMI's pending development plans. In furtherance of the scheme to subject HMI's property to the illegal rezoning, defendants denied HMI's pre-existing plans for an office park development by corrupting the administrative process and suborning the Township Engineer. This unlawful scheme, carried out with improper motive and in violation of the due process and equal protection clauses of the United States Constitution, was intended to deprive HMI of vested rights to use the property.

## JURISDICTION AND VENUE

2.    HMI brings this action under the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

3.    This Court has jurisdiction under 28 U.S.C. § 1331.

4.    Venue is proper under 28 U.S.C. § 1391(b) because all defendants reside in the district, a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the district, and the property that is the subject of the action is situated in the district.

## THE PARTIES

5.      HMI is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1750 Walton Road, Blue Bell, Pennsylvania.

6.      Defendant Township is a township of the second class, duly organized under the laws of the Commonwealth of Pennsylvania, with offices at 616 Germantown Pike, Lafayette Hill, Pennsylvania.

7.      Defendant Board is the governing body of the Township and has a mailing address of 616 Germantown Pike, Lafayette Hill, Pennsylvania.

8.      Defendant Ann D. Younglove is a resident of the Township with an address of 3015 Mathers Mill Road, Lafayette Hill, Pennsylvania.

9.      Defendant Ronald J. DeRosa is a resident of the Township with an address of 4044 Joshua Road, Lafayette Hill, Pennsylvania.

10.     Defendant William P. Rimel, III is a resident of the Township with an address of 3175 Colony Lane, Plymouth Meeting, Pennsylvania.

11.     Defendant Peter B. Cornog is a resident of the Township with an address of 3009 Church Road, Lafayette Hill, Pennsylvania.

12.     Defendant Michael A. Zeock is a resident of the Township with an address of 4046 Fairway Road, Lafayette Hill, Pennsylvania.

13.     Defendants Younglove, DeRosa, Rimel, Cornog and Zeock (the "Supervisors") are the five current Township Supervisors.  This action is brought against them in both their personal and their official capacities.

14.     Defendant Zarko is an individual whose business address is CKS Engineers, Inc., 88 South Main Street, Doylestown, Pennsylvania.  This action is brought against him individually and in his capacity as Township Engineer.

## FACTUAL BACKGROUND

### The HMI Property

15.     HMI is the owner of a 309-acre tract of land adjacent to Stenton Avenue, Joshua Road and Flourtown Road in Whitemarsh Township, Pennsylvania (the "Property").  The Property consists of three parcels previously or currently used for quarrying and concrete and bituminous production.  HMI acquired the Property in 1997.

16.     "Parcel 1" is 54 acres, the site of a quarry hole that had been filled in when HMI acquired the Property.  "Parcel 2" is approximately 67 acres, and consists largely of a quarry hole that is being filled and a concrete production business.  "Parcel 3", a 188-acre tract, contains an active quarry and a bituminous production business.

17.     For many years, most of the Property had been zoned HVY-X Industrial, the only exceptions being a small corner of Parcel 1 (zoned AA Residential) and about one-third of Parcel 3 (zoned Limited-X or A Residential).   The HVY-X Industrial zoning permitted

virtually any use of the Property, except residential use or retail sales, and afforded reasonable opportunity for redevelopment of the Property.  HMI carefully investigated the permitted uses on the Property under the Township ordinances before deciding to acquire the Property.

18.    After acquiring the Property, HMI expended substantial sums in cleaning up Parcel 1, such as removing dilapidated structures and other relics of the former quarrying and lime manufacturing operations.

**Development Plans Spawn Political Turmoil**

19.    Beginning in 1999, HMI, through its legal, planning and engineering representatives, sought to return Parcel 1 to productive use, and began to discuss the redevelopment with Township officials.

20.    HMI submitted various sketch plans of its proposals to Township officials for the redevelopment of Parcel 1.  These plans became known to the surrounding neighbors and the general public.  Significant public opposition to HMI's proposals developed.

21.    Learning that HMI and other owners of large parcels in the Township were considering plans to put their properties to productive use, several persons formed the Whitemarsh Township Residents Association ("WTRA") in Fall 2000.  The principal goal of the WTRA was to oppose proposed development in the Township.

22.    WTRA members (and especially the WTRA leadership) expressed public opposition to the as-of-right development of Parcel 1, going so far as, on information and belief,

to threaten Supervisors that they would be voted out of office at the next election if they disagreed with WTRA's agenda. WTRA quickly grew to over 1,500 members, in a Township with only approximately 4,400 registered voters.

23.     WTRA retained the law firm of Kaplin Stewart Meloff Reiter & Stein (the "Kaplin Firm"), which also represented a neighbor to the Property, Donald Cohan. Lawyers with the Kaplin Firm, including Marc Kaplin, prevailed upon the Board of Supervisors to use the zoning and development approval process to stop as-of-right development of the Property.

24.     The Kaplin Firm's attempts to influence and control the Board included: (i) providing surreptitious legal advice to the Board, orally and by way of confidential memoranda of law, purporting to explain the process of development approval (and attempting to justify rejection of development plans); (ii) making public statements encouraging the Supervisors to deny HMI's plans; (iii) submitting an ordinance to drastically downzone the Property (which subsequently was adopted by the Board virtually verbatim); and (iv) offering in public to assist in the defense of the Township, using the private financial resources of Mr. Cohan in the event that Township decisions with respect to the Property resulted in litigation. These offers, statements and submissions not only were inducements to the Supervisors, but also implicit threats designed to coerce the Supervisors into stopping HMI's development.

25.     In November 2001 two Supervisor seats were up for election. The candidates supported by the WTRA, defendants Cornog and Zeock, campaigned on promises to stop development in the Township, including development of the Property. Both were elected to the Board, replacing incumbent candidates not endorsed by the WTRA.

**Supervisors Improperly Rezone the Property**

26.    In July 2001, the WTRA and Cohan submitted a petition to the Township, prepared by the Kaplin Firm and containing over 400 signatures, requesting that the Property be rezoned to permit only single-family detached homes on minimum one-acre lots.

27.    The petition included a draft zoning ordinance prepared by the Kaplin Firm, notwithstanding that submission of a draft ordinance by a civic association like the WTRA is not authorized under the Pennsylvania Municipalities Planning Code or the Township Code.

28.    In a Board meeting on July 26, 2001, the Supervisors announced that they were submitting a request for proposals for a land use study on rezoning of the Property.  The Supervisors addressed the proposed ordinance submitted by the WTRA and Cohan and stated that it would be sent to the land planner selected to do the study.

29.    The minutes of the July 26 meeting state that the land use study was to be part of a "process to evaluate the appropriate zoning for the [Property]."

30.    On September 10, 2001, HMI filed preliminary land development plans for a project to be known as "Creekside Commons," which were consistent with the HVY-X Industrial district regulations and approvable under Township ordinances (the "Preliminary Plans").  Creekside Commons consists of 500,000 square feet of Class A office space, with accessory parking.

31.    In what appears to be an act of retaliation, the Board at its meeting on September 20, 2001 abandoned the "process" promised at its July 26 meeting and announced

that it was authorizing advertisement of a proposed rezoning of the Property virtually identical to the rezoning submitted by the WTRA and Cohan.

32.    On October 18, 2001, with elections but two weeks away, the Board rezoned the Property to a new and novel EX-Extraction District (the "Rezoning").  Remarkably, the draft ordinance submitted by the Kaplin Firm was enacted substantially verbatim by the Board.  The Rezoning purported to restrict development of Parcel 1 to single-family detached homes on one-acre minimum lots and to restrict Parcels 2 and 3 in the same fashion once quarrying ceased.

33.    That same night, immediately <u>after</u> the Rezoning, the Supervisors hired the firm of Simone Jaffe Collins to conduct the land use study of the Property.  The Board gave no reason why it had abandoned its "process" and rezoned the Property without the benefit of a study.

34.    Tellingly, land immediately adjacent to the Property zoned for industrial uses was not rezoned.  The Rezoning targeted only the Property.

35.    The Board not only rezoned the Property without benefit of a land use study, it also disregarded the Whitemarsh Township Comprehensive Plan (the "Comprehensive Plan"), which designated the Property for heavy industrial uses.

36.    In addition, in June 2001, the Township Planning Commission proposed an Amendment to the Comprehensive Plan (the "Draft Comprehensive Plan"), which designated the Property for light industrial and office park development.

37.     The Rezoning was passed with reckless disregard to whether a filled-in quarry would be suitable for single-family residential development and was intended to stop development of the Property and in particular Parcel 1.

38.     The Rezoning, rushed and ill-planned, was procedurally defective and had to be re-enacted at the February 28, 2002 Board meeting.  Once again, the Board acted without receiving the land use study it had commissioned on October 18.

**Defendants Frustrate The Plan Review Process**

39.     Having submitted the Preliminary Plans in advance of the Rezoning, HMI was entitled to have its submission evaluated under the HVY-X Industrial zoning regulations in accordance with the Municipalities Planning Code.  In order to carry out their scheme -- stopping redevelopment of the Property -- defendants conspired to reject the Preliminary Plans.

40.     The requirements for preliminary plans are set forth in the Township ordinances. HMI's Preliminary Plans were prepared by a professional engineer highly regarded in the community and met the requirements in all material respects.  To the extent the Preliminary Plans may have failed to satisfy certain technical preliminary plan requirements, the failure was due to defendants' frustrating the normal land development process, especially by, on information and belief, directions from defendant Supervisors to the Township Engineer and others to withhold from HMI the customary good faith cooperation given to landowners and required under Pennsylvania law.

41.     In the normal course of the preliminary plan approval process, important issues (such as the type and placement of sewer systems) cannot be addressed effectively without response from Township officials, including the Township Engineer.  Under Pennsylvania land use law, township officials are under a legal duty to cooperate with landowners in the land development process.

42.     The normal and customary process in the Township (and as outlined in the Township ordinances) reflects this duty of cooperation: (a) the developer submits the plans to the Township Manager for review by the Township Engineer, the Parks and Recreation Department, the Zoning Officer, the Fire Marshal, the Shade Tree Commission and the Township Planner; (b) after review, the Township Manager reports back to the developer with any deficiencies in the plan; (c) the developer may revise the plans to address the deficiencies and resubmit the plans to the Manager; and (d) dialog continues until the preliminary plans are suitable for consideration by the Planning Commission.  In many respects, preliminary plans are not required to show the same level of detail as final approved plans.

43.     HMI communicated on numerous occasions with Township officials, including Township Engineer Zarko and Township Solicitor Ross Weiss, proposing to meet and discuss any and all aspects of the Preliminary Plans and in particular those aspects of the Preliminary Plans on which Township input was critical.  HMI repeatedly requested information and guidance from the Township in order to be in a position to comply with the Township ordinances, especially with respect to sanitary sewer options, surface water runoff retention basin requirements, and road improvement specifications of the Township and the Pennsylvania

Department of Transportation.  Defendants withheld from HMI the customary cooperation necessary to define and resolve these issues.

44.    With respect to sanitary sewer requirements, HMI repeatedly requested that the Township state its preference between two options: (a) building a sewer connection from the Property to an existing public sewer line; or (b) building an on-site treatment plant. Defendants withheld the response necessary for HMI to pursue an option and formulate its proposal.

45.    On March 8, 2002, HMI received a letter from the Township Manager that the Preliminary Plans were scheduled "for action" by the Township Planning Commission, just eleven days later, on March 19, 2002.  The March 8 letter also stated that the matter was scheduled "for action" by the Board, just thirteen days later on March 21, 2002.  The letter did not explain why the Township may have needed to act on such short notice, nor why any action at all was then required.

46.    By letter dated March 12, 2002, counsel for HMI, James Garrity, notified the Board and Township staff that the Preliminary Plans might not be ready "for action" because defendants had withheld the customary and required cooperation necessary for the land development process.  Accordingly, Mr. Garrity offered the Township a formal extension of time under Section 508 of the Municipalities Planning Code to provide the defendant Supervisors additional time to render their decision on the Preliminary Plans.  The Township did not respond.

## The Planning Commission Denies Approval

47.    In preparation for the March 19 Planning Commission Meeting and the March 21 Board Meeting, HMI's Engineer Tim Woodrow filed Revised Preliminary Plans (the "Revised Preliminary Plans") with the Township on the afternoon of March 19, 2002.

48.    The Township directed Mr. Woodrow immediately to deliver a copy of the Revised Preliminary Plans to Township Engineer Zarko's office in Doylestown.  Despite no requirement to do so, HMI caused Mr. Woodrow to deliver the Revised Preliminary Plans to defendant Zarko on the morning of March 20, 2002.

49.    On March 19, 2002, in its first public review of the Preliminary Plans in any version since they were filed on September 10, 2001, the Planning Commission recommended denial of the plans without specifying even one instance where the plans failed to comply with Township ordinances or, as is customary, advising what steps would be necessary to bring the plans into compliance.  Before the vote, Mr. Garrity had reiterated his written offers of both an extension of time and a "freeze" of all further action on the Revised Preliminary Plans in order to permit the Township to propose and HMI to make any changes, modifications or additions that might prove necessary to assure compliance.  These offers were ignored by the Planning Commission, just as they had been ignored by the Township.

**Supervisors Put the Plans "On Trial"**

50.    In a sign of things to come, defendant Zarko faxed a seven-page letter describing alleged deficiencies in the Revised Preliminary Plans to HMI's counsel at 5:20 p.m. on March 21, 2002, only two hours before the Board meeting.

51.    The Board meeting on March 21, 2002 was anything but ordinary. First, while Mr. Garrity was afforded time to make a short presentation, the Supervisors had <u>no</u> comments and asked <u>no</u> questions at the conclusion of the presentation. Rather, the Township had arranged for the presence of a court reporter and proceeded to put the Revised Preliminary Plans "on trial."

52.    With absolutely no notice to HMI, the Township proceeded to call "witnesses" against the Revised Preliminary Plans. Township Solicitor Ross Weiss conducted formal, sworn examinations of defendant Zarko and Township Manager Gregan. On information and belief, the Township had never before put preliminary plans "on trial" in a judicial-style administrative proceeding.

53.    With no notice from the Township, HMI had no reasonable opportunity to call or prepare witnesses or exhibits to rebut the testimony of defendant Zarko and Mr. Gregan in what was to become, in Township Solicitor Weiss's words, a "judicial" proceeding.

54.    After the "trial," and with no deliberation nor discussion whatsoever, the Board unanimously rejected the Revised Preliminary Plans by passing Resolution 2002-17 (the "Denial Resolution").

55.    The Denial Resolution is taken virtually verbatim from defendant Zarko's March 21, 2002 letter that alleged purported deficiencies in the Revised Preliminary Plans, which as set forth above had been faxed to HMI's counsel only two hours before the March 21 Board meeting.  The Denial Resolution is over eight single-spaced pages, had obviously been prepared before the March 21 Meeting and contains numerous pretexts for denying the Revised Preliminary Plans, none of which provides a legal basis for rejection.

56.    The Denial Resolution and defendant Zarko's March 21 letter are arbitrary, capricious, unjustifiable, and contrary to law because they apply <u>final</u> plan requirements to HMI's Revised <u>Preliminary</u> Plans.  For instance:

a.    In the case of sanitary sewer provisions, the Township ordinances for preliminary plans require only the submission of a one-page planning module application, which was duly filed by Mr. Woodrow.  Defendants found HMI's plan deficient based on the lack of a full operational plan, a requirement for final plans.

b.    HMI was faulted for not obtaining regulatory agency permits and approvals including water and sanitary sewer service and road improvement permits.  Under the Township ordinances, however, those permits and approvals are normally obtained only <u>after</u> preliminary approval of plans, and frequently are not obtained until after final approval.

c.    HMI was faulted for not submitting fire flow information relating to public water facilities.  This is, however, a final plan obligation.

d.    HMI's Revised Preliminary Plans were faulted for not including copies of fully executed easement agreements. However, the preliminary plan process is meant to <u>define</u> what easements are necessary.  The execution of easement agreements are final plan requirements.

e.    HMI's Revised Preliminary Plans were faulted for not including detailed construction plans pertaining to the proposed

Stenton Avenue roadway improvements.  However, once again, detailed construction plans are final plan requirements after Pennsylvania Department of Transportation approval.

57.     The Denial Resolution and defendant Zarko's March 21 letter are arbitrary, capricious and unsupportable.  In some respects, they are plain wrong.  For instance, one of the stated reasons that the Revised Preliminary Plans were denied was that a retention pond planned for a small piece of land zoned AA Residential did not comply with zoning, when in fact it did.  Another "reason" for denial was that the plans did not provide for berms and chain link fencing around the perimeter of the site, notwithstanding that the Township ordinances do not require berms and fencing around an office park development.

58.     Several "reasons" for denial stemmed from the Township's own actions and failures to act.  For example, the Township failed to submit the Preliminary Plans to the Montgomery County Conservation District or the Whitemarsh Township Fire Marshall, and yet defendants denied the plans in part for lack of input from those two offices.

59.     Perhaps most egregiously, defendants denied the Revised Preliminary Plans because HMI failed to obtain a highway occupancy permit from the Pennsylvania Department of Transportation.  The Township ordinances state, however, that the application to the Pennsylvania Department of Transportation for such a permit may not be submitted until after preliminary plan approval.

60.     Taken individually and especially when viewed together, the "reasons" given for denial were but a pretext to stop development and encumber the Property with the Rezoning, which itself was the first step in the scheme to stop development.

61.     Township Engineer Zarko acted under color of state law at all times, in accord with the Supervisors' direction and pursuant to the provisions of the Second Class Township Code, 53 P.S. §§ 65101 et seq.

62.     Township Engineer Zarko acted with improper motive and in bad faith, among other things, by knowingly applying final plan requirements to the Revised Preliminary Plans.

63.     The Township, the Board and each defendant Supervisor knew of, approved of and directed Township Engineer Zarko's unconstitutional actions to corrupt the land development process to support denial of the Revised Preliminary Plans.

64.     Each defendant Supervisor participated in the Rezoning on October 18, 2001, the second Rezoning on February 28, 2002, the March 21, 2002 denial of HMI's Revised Preliminary Plans, or all three.  Defendants Younglove and DeRosa attended the Board meetings on October 18, February 28 and March 21, and voted for both Rezonings and against the Revised Preliminary Plans; defendants Cornog and Zeock (the WTRA "appointees") attended the February 28 and March 21 meetings and voted for the second Rezoning and against the Revised Preliminary  Plans; and defendant Rimel attended the March 21 meeting and voted against the

Revised Preliminary Plans.  Each defendant Supervisor knew, or reasonably should have known, that his or her conduct violated HMI's clearly established rights.

## CLAIMS UNDER 42 U.S.C. § 1983

## COUNT I

## DENIAL OF SUBSTANTIVE DUE PROCESS

65.     HMI incorporates by reference paragraphs 1-64 as if fully set forth herein.

66.     Under Section 1983 of the Civil Rights Act of 1871, defendants, acting upon color of state law, have deprived HMI of a right, privilege or immunity secured by the Constitution.

67.     The right of HMI to develop the Property consistently with the existing ordinances of the Township has been intentionally abridged by the Township, the Board, the individual Supervisors, and Township Engineer Zarko, all of whom acted in bad faith, with improper motive, and with intent to deprive HMI of property rights under the United States Constitution.

68.     HMI's property rights secured by the Constitution were clearly established at the time of defendants' wrongful actions.

69.     Each defendant knew, or reasonably should have known, that his conduct violated HMI's clearly established rights.

70.    The Rezoning was aimed at stopping HMI's as-of-right redevelopment of the Property and adaptive reuse for offices or other lawful use.  The summary and pretextual denial of land development approval was intended to impose upon HMI the constraints of the Rezoning and to deprive HMI of its reasonable expectation to develop the Property.

71.    In imposing the Rezoning and then denying the Revised Preliminary Plans, defendants have engaged in arbitrary and capricious action motivated by bias, bad faith and improper motives (such as political and/or personal gain) to destroy HMI's protected property interests.

72.    The Township Comprehensive and Draft Comprehensive Plans expressly recognize the suitability of the Property for an office park.  The Rezoning restricts the use of the Property to a use not viable given the site remediation and improvements required.  More importantly, the Rezoning of the Property to single-family residential was intentionally and deliberately undertaken to stop development and deprive HMI of property rights.

73.    In a process uninformed by comprehensive planning and designed to stop HMI's as-of-right development, the Rezoning created a special district ex post facto applicable only to HMI's Property in violation of HMI's constitutionally protected property rights.

74.    Further instances of defendants' denial of HMI's rights to substantive due process abound in the meetings of March 19 and 21, in which the Revised Preliminary Plans were denied because of deficiencies that did not exist and/or could easily have been resolved with the usual and customary cooperation afforded to developers in the Township.

75.    Defendants' actions are not rationally related to a legitimate governmental interest.

## COUNT II

## DENIAL OF PROCEDURAL DUE PROCESS

76.    HMI incorporates by reference paragraphs 1-75 as if fully set forth herein.

77.    Defendants have willfully breached their constitutional duties and corrupted the administrative process to impose an unlawful legislative action, the Rezoning, on the Property.

78.    Defendants have made governmental decisions wrongfully and acted under color of state law pursuant to an unlawful and unconstitutional scheme to deprive HMI of its Property.

79.    HMI repeatedly attempted to engage in the customary review procedures with Township officials only to be met with intentional lack of response, silence and, ultimately, hostility.

80.    After ignoring all of HMI's attempts at communication, the Township scheduled an unprecedented rush meeting to decide HMI's application.  HMI repeatedly offered an extension to the Township to the 90-day review period.

81.    Evidence of defendants' blatant denial of procedural due process abounds in unanswered letters and the rushed meetings on March 19 and March 21, 2002, in which the

Revised Preliminary Plans were denied because of deficiencies that did not exist and/or could have been easily resolved but for the fact that Township officials, under direction by defendant Supervisors, withheld the usual and customary cooperation provided to landowners in the Township.

82.    The March 21, 2002 Board meeting at which the Supervisors put the Revised Preliminary Plans "on trial" (including formal examination of Township-called witnesses) was a mockery of the procedural inquiry relevant to approval of preliminary development plans for similar projects in the Township and throughout Pennsylvania.

83.    In order to block HMI's redevelopment of the Property, and to impose a regime of spot-zoning and special ex post facto legislation, defendants corrupted the lawful process prescribed in the Municipalities Planning Code and the Township Code and intentionally and maliciously deprived HMI of preliminary land development approval.

## COUNT III

## DENIAL OF EQUAL PROTECTION

84.    HMI incorporates by reference paragraphs 1-83 as if fully set forth herein.

85.    Defendants have intentionally treated HMI differently from others similarly situated without rational basis for the difference in treatment.

86.    As part of defendants' unlawful discrimination, they: (i) improperly rezoned the Property and only the Property; (ii) withheld normal cooperation with HMI in the planning process; (iii) rejected reasonable offers of extensions of time to complete the process;

and (iv) denied the Revised Preliminary Plans, after putting them "on trial," because of alleged deficiencies that were a mere pretext and/or could easily have been satisfied with the usual and customary cooperation provided to landowners in the Township.

WHEREFORE, HMI requests that the Court enter judgment in its favor and against all defendants:

1.     Awarding damages to HMI based on the value of the Property before and after the Rezoning and the denial of the Revised Preliminary Plans.

2.     Awarding damages for lost income, lost opportunities and lost profits.

3.     Awarding punitive damages as the Court deems just.

4.     Awarding equitable relief in the form of an Order reversing the Rezoning.

5.     Awarding equitable relief in the form of an Order demanding that the Board engage in a full and fair process of evaluation of HMI's Revised Preliminary Plans.

6.     Awarding HMI annual damages pending the approval of HMI's Revised Preliminary Plans equivalent to lost annual income on the Property.

7.    Awarding HMI professional and attorneys' fees and costs.

8.    Granting HMI such other and further relief as the Court may deem just and proper.

_____
Michael Sklaroff
Walter M. Einhorn, Jr.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Highway Materials, Inc.

Date:  May 24, 2002