UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.      :
                                :     CIVIL ACTION NO. 02-cv-3212
    v.                         :
                                :
WHITEMARSH TOWNSHIP, MONTGOMERY  :
COUNTY, PA, et al.                :

ORDER

AND NOW, this        day of                       , 2002, upon

consideration of Defendants Whitemarsh Township, the Board of Supervisors of Whitemarsh

Township, Ann D. Younglove, Ronald J. Derosa, William P. Rimel, Peter P. Cornog and

Michael A. Zeock's Motion to Dismiss Complaint Pursuant to F.R.C.P. 12(b)(6) or, alternatively,

Motion for Summary Judgment Pursuant to F.R.C.P. 56(b) and any response thereto, it is hereby

ORDERED

that the Motion is granted.  Plaintiff's Complaint is hereby dismissed with prejudice/Summary

judgment is hereby entered in favor of Defendants Whitemarsh Township, the Board of

Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. Derosa, William P. Rimel,

Peter P. Cornog and Michael A. Zeock and against Plaintiff.

BY THE COURT:

_____
                                                         J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.                :
                                       :    CIVIL ACTION NO. 02-cv-3212
        v.                             :
                                       :
WHITEMARSH TOWNSHIP, MONTGOMERY        :
COUNTY, PA, et al.                     :

DEFENDANTS WHITEMARSH TOWNSHIP, THE BOARD OF SUPERVISORS
OF WHITEMARSH TOWNSHIP, ANN D. YOUNGLOVE,
RONALD J. DEROSA, WILLIAM P. RIMEL, PETER P. CORNOG
AND MICHAEL A. ZEOCK'S MOTION TO DISMISS COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6) OR, ALTERNATIVELY,
<u>MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(b)</u>

Defendants Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann

D. Younglove, Ronald J. Derosa, William P. Rimel, Peter P. Cornog and Michael A. Zeock herewith

move this Honorable Court to dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6) or,

alternatively, to grant summary judgment in those Defendants' favor pursuant to F.R.C.P. 56(b) for

the reasons set forth in the attached Memorandum of Law, which is incorporated herein by reference.

DEASEY, MAHONEY & BENDER, LTD.

BY:_____
          HARRY G. MAHONEY, ESQUIRE
          MICHAEL L. BARBIERO, ESQUIRE
          Attorneys for Defendants, Whitemarsh Township,
          the Board of Supervisors of Whitemarsh
          Township, Ann D. Younglove, Ronald J. Derosa,
          William P. Rimel, Peter P. Cornog and Michael
          A. Zeock

          Attorney I.D. Nos. 19609/82933
          Suite 1300
          1800 John F. Kennedy Boulevard
          Philadelphia, PA 19103-2978

(215) 587-9400
(215) 587-9456 - fax
245.20872

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.           :
                                  :        CIVIL ACTION NO. 02-cv-3212
        v.                        :
                                  :
WHITEMARSH TOWNSHIP, MONTGOMERY   :
COUNTY, PA, et al.                :

DEFENDANTS WHITEMARSH TOWNSHIP, THE BOARD OF SUPERVISORS
OF WHITEMARSH TOWNSHIP, ANN D. YOUNGLOVE,
RONALD J. DEROSA, WILLIAM P. RIMEL, PETER P. CORNOG
AND MICHAEL A. ZEOCK'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6) OR, ALTERNATIVELY,
<u>MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(b)</u>

DEASEY, MAHONEY & BENDER, LTD.
HARRY G. MAHONEY, ESQUIRE
MICHAEL L. BARBIERO, ESQUIRE
Attorneys for Defendants, Whitemarsh
Township, the Board of Supervisors of
Whitemarsh Township, Ann D. Younglove,
Ronald J. Derosa, William P. Rimel, Peter P.
Cornog and Michael A. Zeock

Attorney I.D. Nos. 19609/82933
Suite 1300
1800 John F. Kennedy Boulevard
Philadelphia, PA 19103-2978
(215) 587-9400

(215) 587-9456 - fax

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-vi

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Zoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    Land Development Process under the Subdivision and Land
            Development Ordinances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      E.    Submissions And Discussions Before Submission of Application of
            Preliminary Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      F.    Preliminary Plan Application And Review . . . . . . . . . . . . . . . . . . . . . . . 15

            1.    First Revised Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.    Second Revised Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            3.    Extensions Of Time In Which To Take Action On The
                  Application For Preliminary Plan Approval . . . . . . . . . . . . . . . . . . 16

            4.    Denial Of The Preliminary Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      G.    The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.  LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      A.    Standard for Deciding a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . 19

      B.    Conversion of a Motion to Dismiss Into a Motion for Summary
            Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      C.    Standard for Deciding a Motion for Summary Judgment. . . . . . . . . . . . . 19

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.    Plaintiff's Complaint Fails To State A Cause Of Action For Which
       Relief Can Be Granted For Denial Of Procedural Due Process . . . . . . . . . . . . . . 20

    B.    Defendants' Actions Did Not Deny Plaintiff Its Substantive Due
       Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        1.    Rezoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        2.    Application For Preliminary Plan Approval . . . . . . . . . . . . . . . . . . . . . 28

            a.    Plaintiff's Preliminary Plans, Revised Plans And
                Second Revised Plans Never Complied With The
                Township's Zoning Ordinance And Subdivision And
                Land Development Ordinances . . . . . . . . . . . . . . . . . . . . . . . . . . 28

            b.    Alleged Lack Of Cooperation Given By Township . . . . . . . . . . 31

            c.    "Short" Notice Of Township's Intent To Take Action
                On Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

            d.    Nature Of The Proceedings On March 21, 2002 . . . . . . . . . . . . 33

    C.    Plaintiff's Equal Protection Rights Were Not Violated . . . . . . . . . . . . . . . . . . . . 35

    D.    Punitive Damages Are Not Recoverable Against The Township Or
       The Board Of Supervisors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>FEDERAL CASES</u>

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 250 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Andrews v. City of Philadelphia,
   895 F.2d 1469, 1478 (3d Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Angelastro v. Prudential-Bache Sec., Inc.,
   764 F.2d 939, 944 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Appeal of Langsmaid Lane Homeowners Ass'n,
   72, 77 Pa.Cmwlth. 53 (Cmwlth. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Armbruster v. Unisys Corp.,
   32 F.3d 768, 777 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Bello v. Walker,
   840 F.2d 1124, 1128 (3d Cir. 1988), <u>cert</u>. <u>denied</u>, 488 U.S. 868 (1988) . . . . . . . . . . . . . . . . . 21

Blanche Road Corp. v. Bensalem Township,
   57 F.3d 253 (3d Cir. 1995), <u>cert</u>. <u>denied</u> 116 S.Ct. 303 (1995) . . . . . . . . . . . . . . . . . . . . . . . 23

Boykins v. Ambridge Area School Dist.,
   621 F.2d 75 (3d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Chantilly Farms, Inc., et al. v. West Pikeland Township,
   2001 WL290645 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Cleburne v. Cleburne Living Center, Inc.,
   473 U.S. 432, 439 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

DeBlasio v. Zoning Board of Adjustment,
   53 F.3d 592 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Gomez Vasquez v. Diaz Colon,
   91 F.Supp.2d 481 (D.C. Puerto Rico, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Harris v. County of Riverside,
   904 F.2d 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hightower v. City of Philadelphia,
   69 BNA FEP Cas 920, 70 BNA FEP Cas 1002 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 36

Hilfirty v. Shipman,
   91 F.3d 573, 579 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Jordan v. Fox Rothschild O'Brien & Frankel,
   20 F.3d 1250, 1261 (3d Cir. 1994)0 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kaplan v. Clear Lake City Water Auth.,
   794 F.2d 1059 (5th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Matsushita Elec. Indus Co. v. Zenith Radio Corp.,
   475 U.S. 574, 587 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Medical Protective Company v. Watkins,
   198 F.3d 100, 103 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Midnight Sessions, Ltd. v. City of Philadelphia,
   945 F.2d 667, 680 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

Minnesota v. Clover Leaf Creamery Co.,
   449 U.S. 456, 464, 101S.Ct. 715, 724, 66 L.Ed.2d 659 (1981) . . . . . . . . . . . . . . . . . . . . . . . 24

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
   463 U.S. 29, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983) . . . . . . . . . . . . . . . . . . . . . . . 24

Newport v. Fact Concerts, Inc.,
   453 U.S. 247 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Pace Resources, Inc. v. Shrewsbury Township,
   808 F.2d 1023, (3rd Cir.), cert denied, U.S., 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987) . . 24, 25, 28

Parkway Garage, Inc. v. City of Philadelphia,
   5 F.3d 685, 692 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ransom v. Marrazzo,
   848 F.2d 398, 401 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rogin v. Bensalem Township,
   616 F.2d 680 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 35

Rose v. Bartle,
   871 F.2d 331, 342 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rotolo v. Borough of Charleroi,
   532 F.2d 920 (3d Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Sameric Corporation of Delaware, Inc. v. City of Philadelphia,
   142 F.3d 582 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Shelton v. City of College Station,
   780 F.2d 475, 482-83 (5th Cir.1986) (en banc) (emphasis supplied),
   cert. denied, --- U.S. ----, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) and,
   --- U.S. ----, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Usury v. Turner Elkhorn Mining Co.,
   428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) . . . . . . . . . . . . . . . . . . . . . . 25

Vance v. Bradley,
   440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979) . . . . . . . . . . . . . . . . . . . . . . 25

Village of Belle Terre v. Boraas,
   416 U.S. 1, 93 S.Ct. 1536, 39 L.Ed2d 797 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Village of Euclid v. Ambler Realty Company,
   272 U.S. 365, 47 S.Ct. 114, 71 L.Ed 303 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wagner v. Township of Harmer,
   651 F.Supp. 1286, 1288 (W.D. Pa. 1987), aff'd, 826 F.2d 1054 (3d Cir. 1987) . . . . . . . . . . . 23

Woodwind Estates, Ltd. v. Gretkowski,
   205 F.3d 118 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATE CASES

Abarbanel v. Solebury Township,
   572 A.2d 862 (Pa.Cmwlth. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Anselma Station v. Pennoni Assocs.,
   654 A.2d 608, 616 (Pa.Cmwlth.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Fleming v. City of Tacoma,
   81 Wash.2d 292, 502 P.2d 327 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Sobel Construction Company v. Zoning Hearing Board of Borough of East Stroudsburg,
   329 A.2d 912, 16 Pa.Cmwlth. 599 (Cmwlth. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Township of Haverford v. Zoning Hearing Board of Haverford Township

and Havwin Manor, Inc.,
344 A.2d 758 (Pa.Cmwlth. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## FEDERAL RULES AND STATUTES

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

F.R.C.P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 22, 25, 36

## STATE RULES AND STATUTES

53 P.S. §10101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

53  P.S. §10508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 33

53 P.S. §10508(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

53 P.S. §10601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

53 P.S. §11001A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

65 P.S. §701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

65 P.S. §706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## MISCELLANEOUS

Ryan, Pennsylvania Zoning Law and Practice, §11.2.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

I.    <u>INTRODUCTION</u>

Plaintiff, Highway Materials, Inc. filed a Complaint (Exhibit "A" attached hereto) against Defendants Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. Derosa, William P. Rimel, Peter P. Cornog and Michael A. Zeock (hereinafter collectively "Township Defendants") pursuant to 42 U.S.C. §1983, the Civil Rights Act, for alleged violation of Plaintiff's procedural due process rights, substantive due process rights and equal protection rights.  The case arises from a March 21, 2002 decision by the Board of Supervisors to deny Plaintiff's application for preliminary plan approval of a proposed land development of a 54 acre tract of land.  The proposal called for an office development on a filled-in quarry site.

The real property in question was one of three parcels which comprised the former Corson Limestone Quarry.  Following its purchase of the property in 1997, Plaintiff initially approached the Township with the concept of "redeveloping" its properties, beginning with the 54 acre site.  During this early "concept" period, the Township and the Plaintiff discussed a broad range of issues that needed to be addressed in connection with redeveloping the site, including sanitary sewer needs, traffic impact, stormwater management and proposed uses for the property.  A "sketch" plan showing a proposed mixed office/residential use was presented by the Plaintiff in 2000.

The real property in question was originally zoned under the Whitemarsh Township Zoning Ordinance as a HVY-X Industrial District.  The zoning for the site was changed by ordinance on February 28, 2002 to a new district designated as "EX-Extraction District" ("EX District").  It is critical to note that Plaintiff's real property consisting of the foregoing 54 acre parcel and two additional adjacent parcels, are the only working or rehabilitated quarry properties in the Township. As such, they are unique in character and no other land in the Township is similarly situated.

Plaintiff's application for preliminary plan approval of the property to develop office buildings was filed on September 10, 2001 and thus predates the zoning change. Accordingly, the plan submitted by the Plaintiff as part of the application, as well as two subsequent revisions to the plans, were reviewed by the Township, its consulting engineer and the Planning Commission under the Township's Zoning Ordinance and Subdivision and Land Development Ordinance ("SALDO") in effect at the time of the original application. None of the plans submitted by the Plaintiff complied with the Township's ordinances. Therefore, the Board of Supervisors passed a resolution denying Plaintiff's application for preliminary plan approval.

As this Memorandum of Law will demonstrate, Plaintiff's Complaint fails to state a cause of action for which relief can be granted. Alternatively, by means of the attached exhibits and affidavit, Defendants will demonstrate that they are entitled to summary judgment in their favor and against Plaintiff because Plaintiff cannot establish that its procedural due process rights, substantive due process rights and equal protection rights have been violated by the Township's actions.

II.    FACTS

A.    Parties

Plaintiff, Highway Materials, Inc., is a corporation which, according to the Complaint, has a mailing address in care of the DePaul Group, 1750 Walton Road, Blue Bell, Pennsylvania. The Defendants include Whitemarsh Township and its Board of Supervisors which consists of five individuals who are also named in their individual capacity: Ann D. Younglove, Ronald J. Derosa, William P. Rimel, Peter P. Cornog and Michael A. Zeock. Also named as a defendant is Thomas F. Zarko, the Township's consulting engineer who reviewed the Plaintiff's plans and revisions for compliance with Township ordinances.

Whitemarsh Township is a municipality located in Montgomery County. It operates pursuant to a Home Rule Charter.

B.    The Property

The real property which is the subject of this lawsuit is located in Whitemarsh Township on the east side of Stenton Avenue near its intersection with Joshua Road. It is directly adjacent to the Philadelphia Cricket Club golf course which borders the property on its north, east and south sides. The parcel consists of 54 acres. It is one of three quarry sites previously known as the Corson Limestone Quarry. For convenience, the parties refer to Plaintiff's three quarry sites as Holes #1, 2 and 3. Quarry Hole #1 is located on the subject property, the 54 acre parcel. It was formerly an active limestone quarry but has been filled in over the years with "clean" fill. A true and correct copy of the Zoning Map in effect at the time of Plaintiff's application is attached hereto as Exhibit "B". The subject 54 acre parcel is outlined in red (Quarry Hole #1). The other two parcels are outlined in green (Quarry Hole #2) and yellow (Quarry Hole #3). Quarry Hole #2 is in the process of being "filled in" for redevelopment. Quarry Hole #3 is still an active quarry. The Plaintiff has indicated its desire to redevelop that property once it has been filled in.

As stated before, the property directly to the north, east and south of Hole #1 is a golf course owned and operated by the Philadelphia Cricket Club. To the west, across Stenton Avenue, is Quarry Hole #2 and a portion of Erdenheim Farm. To the north and west beyond Joshua Road is another golf course owned and operated by the Sunnybrook Country Club. Other adjacent parcels are residential.

C.    Zoning

As stated in the introduction to this Memorandum, the subject parcel was zoned HVY-X (Modified Heavy Industrial) (see legend of Zoning Map attached hereto as Exhibit "B") pursuant to the Township Zoning Ordinance in effect up until February 28, 2002.  Two small portions of the property were and are zoned AA (Residential).  The pertinent portion of the Township Zoning Ordinance, Article XXI applicable to HVY (Heavy Industrial) and HVY-X Districts is attached hereto as Exhibit "C".  The use regulations are set forth in sections 116-155 of the Ordinance, as follows:

Section 116-155.  Use Regulations.

A.  A building may be erected, altered or used, and a lot or premises may be used for any lawful purpose; however, the following shall not be permitted expect as an accessory use customarily incidental to a permitted use:

Abattoirs

Acetylene gas manufacture

Ammonia, Bleaching powder and chlorine manufacture

Arsenal

Automobile dismantling or junk establishment, unless carried on in an enclosed building

Bakery, wholesale

Beryllium processing

Blast furnace

Brewing

Celluloid manufacture

-4-

Coke oven

Commercial advertising on billboards, except advertising of a business or industry conducted on the premises

Creosote treatment or manufacture

Distillation of bones, coal, wood, petroleum, refuse or grain

<u>Dwellings, except such as are for the residence of a caretaker, watchman or custodian on the same lot with the principal use to which it is accessory, and are located at least ten (10) feet from any such building</u>

Dyestuff manufacture

Fat rendering

Fireworks or explosive manufacture

Fish smoking and curing

Glue, size or gelatin manufacture

Incineration, reduction, storage or dumping of slaughterhouse refuse, rancid fats, garbage, dead animals or offal

Lampblack manufacture

Oil cloth or linoleum manufacture

Oiled goods manufacture

Oil, turpentine or varnish manufacture

Organic fertilizer manufacture

Petroleum or asphalt refining

Plating works

Printing ink manufacture

Pyroxylin manufacture

Retail commercial

Soda and soda compound manufacture

Steel mill

Stockyard and piggery

Sulphuric, nitric or hydrochloric acid manufacture

Tallow, grease or lard manufacture or refining, tanning, curing or storage of leather, rawhide or skins

Tar distillation or manufacture

Vinegar manufacture

Wool pulling or scouring

Yeast plant

Any other use which is of may be, in comparable degree to any of the foregoing, noxious or offensive by reason of odor, dust, fumes, smoke, gas, vibration, illumination or noise, or which is or may be dangerous to the public health, welfare, safety or which constitutes or may constitute a public nuisance or hazard, whether by fire, explosion or otherwise

B.  Extraction of mineral deposits, stockpiling, the processing of the removed materials and on-site operations appurtenant to mineral extraction shall not be permitted uses in an HVY Industrial District but shall be permitted in an HVY-X District as hereafter set forth in §116-156.

(Emphasis added).  Additional regulations applicable only to HVY-X Districts are set forth in §116-156.

The idea of rezoning the quarry properties to allow for residential uses was considered by the parties for several years before it was rezoned.  The Plaintiff's representatives submitted a sketch

-6-

plan to the Township in 2000 which proposed the mixed office/residential use.  On July 3, 2001, Marc Kaplin, Esquire, on behalf of a neighbor who resided near the quarry properties, submitted a petition and a proposed ordinance to add a new district designated EX-Extraction.

Acting on the suggested ordinance, the Board of Supervisors enacted several ordinances on October 18, 2001 which would have rezoned the Plaintiff's properties under the new EX-Extraction zoning.  Plaintiff filed a challenge to the new zoning on procedural grounds with the Township's Zoning Hearing Board.  The Board of Supervisors corrected the procedural defects by enacting Ordinance No. 747 which added the new district designated EX-Extraction.  This was done on February 28, 2002.

On February 28, 2002, the Board of Supervisors enacted Ordinance No. 747 which added a new district designated as the EX-Extraction District.  A true and correct copy of Ordinance No. 747 is attached hereto as Exhibit "D ".  The use regulations in an EX Extraction District permit mineral extraction from quarries.  Following rehabilitation, the permitted uses would be residential in nature.

By Ordinance Nos. 748, 749 and 750, the three parcels owned by the Plaintiff on which the former quarries and quarry (Holes #1, 2 and 3) are located were rezoned to EX-Extraction District. Small portions of the 54 acre site (Hole #1) remained zoned AA Residential.  A portion of Hole #3 remained zoned A Residential.  True and correct copies of Ordinances Nos. 748, 749 and 750 are attached hereto as Exhibits "E", "F" and "G" respectively.

The overall effect of the changes in the Zoning Ordinance and the Zoning Map was to rezone Plaintiff's three parcels, including the 54 acre parcel (with the exception of the portion zoned AA Residential) to EX- Extraction and to permit a broad range of residential uses following rehabilitation of the sites. Previously, under the HVY-X Industrial District use regulations, any use

except those restricted (including residential), were permitted in the HVY-X District following rehabilitation of the property. Permitted uses in a HVY-X District would include administrative and executive offices.

      D.    Land Development Process under the Subdivision and Land Development Ordinance

Subdivision and land development procedures, requirements and standards are set forth in the Township's Subdivision and Land Development Ordinance (SALDO). A true and correct copy of the Township's SALDO is attached hereto as Exhibit "H". The Township's SALDO sets forth three stages in the procedure for approval of land development plans: (1) optional sketch plan, (2) preliminary plan and (3) final plan. (SALDO, §105-12). The sketch plan stage allows a developer to interface with the Planning Commission, the Township Planner and others at the Township to receive early and informal consultation and guidance before preparation of and submission of the application for preliminary plan approval.

The next step, which is mandatory, is application for preliminary plan approval. The purpose of this stage, according to §105-14, "is to obtain formal conditional approval in order to minimize changes and revisions before final plans are submitted". §105-21 sets out the requirements for the preliminary plan. Among other things, the ordinance requires a transportation impact study for certain developments. It also requires a sewer plan and a sedimentation and erosion control plan and many other requirements.

The Ordinance specifies that the Board of Supervisors must act on a preliminary plan application within 75 days of the first Planning Commission meeting which occurs after submission

of the plan (§105-14(15)) and notifying the developer of its decision in writing, within 15 days thereafter (§105-14(16)).

The last stage of land development under SALDO is final plan approval.  The importance of the preliminary plan is demonstrated by the first section of §105-15(B)(1):

> The final plan shall conform to the preliminary plan, as approved.

E.    Submissions And Discussions Before Submission of Application of Preliminary Plan

Following acquisition of the property in 1997, the Plaintiff contacted Township officials to advise of its intent to rehabilitate each of the properties and eventually change their use from those of quarries.  Specifically with regard to the 54 acre parcel (Hole #1), the Township and the Plaintiff discussed issues relating to sanitary sewers, traffic, stormwater management and possible uses for the property.

Sanitary Sewer Needs

In early 2000, before Highway Materials submitted any plans to Whitemarsh, the developer requested Whitemarsh to informally confirm that it would ask Springfield Township to accept the future sanitary sewer flow from Hole No. 1.  (Letter from James Garrity, Esquire to Lawrence Gregan of 3/13/00, Exhibit "I").  This was needed to address Highway Materials' sanitary sewer needs for the proposed development.  Highway Materials recognized that other issues would also have to be resolved before it could connect to Springfield Township.  Whitemarsh responded that it had already submitted this request to Springfield Township and then proceeded to revise its Act 537 Sewage Facilities Plan to include Hole No. 1 in the sewer service agreement with Springfield

Township.  (Letter from Gregan to Garrity of 3/16/00; Letter from Zarko to the DePaul Group of

4/13/00; Letter from Zarko to Garrity of 4/13/00; Exhibits "J", "K" and "L").

Traffic Study

In the Spring of 2000, at the request of Highway Materials, the Township retained Valley

Forge Laboratories, Inc. ("VF") to investigate the impact the development proposed by Highway

Materials would have on the surrounding network of roads.  (Letter from Timothy Woodrow to

Gregan of 3/17/00; Letter from Gregan to Woodrow of 3/27/00, Exhibits "M" and "N").

This traffic study was completed before any plan or application had been submitted by

Highway Materials, even though the Township had no obligation to commission a traffic study.  VF

completed a Traffic Impact Study during June and July, 2000 of the proposed development, which,

at that time, was for a 500,000 square feet office complex.  After completing the study, VF

concluded that the development would have a substantial impact on the studied intersections.  In

order to alleviate the degradation of the road network caused by both this development, as well as

background growth, and to bring the overall intersection levels of service up to acceptable standards,

VF recommended many road improvements with a projected cost of $885,000.  Admittedly, some

of these improvements would be needed even without the increased traffic from the proposed

development, but the immediacy of proceeding with these improvements was enhanced with the

proposed development.

Stormwater Waivers

Highway Materials, while still undertaking its preliminary planning, requested a waiver of

the requirements of the Whitemarsh Grading, Erosion Control and Stormwater Management

Ordinance as it relates to stormwater management.  (Letter from Woodrow to Ford of 5/30/00,

-10-

Exhibit "O").  The waiver request was placed on the agenda for the July 13, 2000 Supervisors' meeting and Highway Materials was notified of this meeting.  Nevertheless, no representative of Highway Materials attended the meeting.  The Supervisors were advised by the Township engineer that Whitemarsh should not accept the waiver request (1) as it violates the existing Township ordinances, (2) sets bad precedent, and (3) the developer had several stormwater management options available that complied with the Township ordinances without the need of a waiver. Therefore, the Supervisors rejected the request for the waiver.  (Memo from Zarko to Gregan of 6/23/00, Exhibit "P").  When advising Highway Materials of the decision, Whitemarsh outlined the other alternative stormwater management options available to the developer that would not require a waiver. (Letter from Gregan to Woodrow of 7/19/00, Exhibit "Q").

Proposed Uses

In August 2000, Whitemarsh representatives (Solicitor Ross Weiss, Zarko, Ford and Gregan) met with the representatives of Highway Materials to review a proposal for development of the property.  (Memo from Gregan to Board of Supervisors of 8/16/00, Exhibit "R").  The developer informally presented a concept plan showing office space and luxury apartments.  The Whitemarsh representatives recommended that Highway Materials submit a Sketch Plan to start the review and public comment process.

Although no Sketch Plan had been submitted, on October 26, 2000, Highway Materials requested Whitemarsh to authorize the Township engineer, Mr. Zarko, to work with them to review and provide input on the best path for sanitary sewer construction prior to completing the development design.  (Letter from Woodrow to Gregan of 10/26/00, Exhibit "S").

Shortly thereafter, on November 16, 2000, Whitemarsh authorized Zarko to review and provide input on alternative plans for the sewage construction that the developer had presented. As a condition of this authorization, Highway Materials was required to post an engineering escrow in the amount of $1,000. (Letter from Gregan to Woodrow of 11/16/00, Exhibit "T"). Instead of pursuing this authorized meeting, Highway Materials chose to submit its Sketch Plan, foregoing the requested input from the engineer.

<u>Sketch Plan</u>

On November 30, 2000, Highway Materials submitted a Sketch Plan to Whitemarsh. (Letter from Garrity to Supervisors, Planning Commission, and Staff of Whitemarsh Township of 11/30/00, Exhibit "U"). This Sketch Plan showed a "mixed-use" development consisting of four four-story office buildings and three seven-story apartment buildings. In total, there would be 450,000 square feet of office space and 600 apartments. The mixed-use plan depicted 3450 parking spaces.

To implement the Sketch Plan which depicted a mixed-use, the developer was required to obtain either a zoning use variance or a legislative zoning change, as the property was zoned, HVY-X, which does not permit residential use. A zoning variance can only be obtained from the Zoning Hearing Board and not the Supervisors. The Board of Supervisors can legislatively change the zoning classifications. Subsequent approval of the Sketch Plan, should it have been submitted as a formal preliminary plan, would also have required site variations.

The Township engineer, Mr. Zarko, completed his review of the Sketch Plan on January 2, 2001. (Letter from Zarko to Whitemarsh Township of 1/02/01, Exhibit "V"). Although the Township engineer noted that the Sketch Plan provided no information concerning the proposed

means of providing water and sanitary sewerage service to the site, he provided additional comments, summarized as follows:

a)    Zarko noted that the developer planned to provide public sanitary sewerage service to the project via a connection to the Springfield Township Sanitary Sewer System, but since the site was not included in the existing Intermunicipal Sewer Service Agreement between Whitemarsh Township and Springfield Township, the developer had to obtain Springfield Township's approval of the projected flows and an amendment had to be made to the Intermunicipal Sewer Service Agreement;

b)    Zarko noted that Sewage Facilities Planning Approval would have to be obtained with any future plan submissions;

c)    Zarko noted that a copy of the Water Service Agreement/Commitment Letter with an applicable utility company should be submitted to the Township with any future plan submissions; and

d)    Zarko made dozens of additional comments on the landscaping, traffic study, and design of the site.

The Montgomery County Planning Commission completed its review of the Sketch Plan on January 29, 2001. The Montgomery County Planning Commission's overall development opinion was that the proposal was "too intense in both its impervious coverage and density for this site and the surrounding area." (1/29/01 letter from Sandberg to Ford, Exhibit "W"). The Montgomery County Planning Commission recommended a new traffic study since the previous one did not review the impact of residential use. Overall, the Montgomery County Planning Commission recommended that "the applicant and the township work together to draft a new zoning district that would allow office buildings and apartments in a campus setting, with appropriate dimensional requirements." (See Exhibit "W").

The Whitemarsh Planning Commission met on February 27, 2001 to review the Sketch Plan. At this meeting, the Planning Commission indicated its dislike for the proposed mixed-use Sketch Plan and declined to make any specific recommendation to the Supervisors regarding the Sketch Plan. (Minutes from Whitemarsh Township Planning Commission Meeting of 2/27/01, Exhibit "X"). Highway Materials, in its presentation of the Sketch Plan to the Planning Commission, indicated that, as of right, it could proceed with a much more intense plan than proposed.

At the February 27, 2001 Planning Commission meeting, Marc Kaplin, Esquire, on behalf of Donald Cohan ("Cohan") submitted a Conceptual Plan for Proposed Development of Quarry site prepared at the request of Cohan. Cohan is a neighbor of the Hole No. 1 site and appeared at the Planning Commission to voice his opposition to the Highway Materials Sketch Plan. The Cohan Conceptual Plan depicted a proposed use of professional office space, as permitted by zoning classification HVY-X with no need for a zoning variance. The Cohan Conceptual Plan was designed for 450,000 square feet of professional office space and 2,250 parking spaces.

After the February 27, 2001 Planning Commission meeting, the developer, still not satisfied that it had obtained the input it sought from the Planning Commission on the concept of a mixed-use development, requested that the Supervisors consider placing the Sketch Plan on an upcoming Board of Supervisors' Agenda. (Letter from Garrity to Gregan of 3/1/01, Exhibit "Y").

The Township responded to this request by placing the Sketch Plan on the Agenda for the May 24, 2001 Supervisors' Meeting. (Letter from Gregan to Garrity of 4/16/01, Exhibit "Z"). On May 24, 2001, the Supervisors reviewed the Sketch Plan submitted by the developer. This was the same Sketch Plan reviewed by the Planning Commission on February 27, 2001 for a mixed-use development of Hole No. 1. Approximately 600 Whitemarsh residents attended to hear the details

of the plan.  Many residents voiced their opposition to the plan.  The Township ordinances do not

permit the Supervisors to take any formal action on a Sketch Plan, and thus the Supervisors did not.

     F.     <u>Preliminary Plan Application And Review</u>

On August 28, 2001, Plaintiff applied for preliminary plan approval of a development of

500,000 square feet of office buildings with 2,512 parking spaces.  Following its standard procedures

as set forth in its SALDO, the Township distributed Plaintiff's applications and plans to various

individuals and entities including the Montgomery County Planning Commission and Mr. Zarko of

CKS Engineers, Inc., the Township's consulting engineers.  A true and correct copy of Plaintiff's

application for preliminary plan approval is attached hereto as Exhibit "AA".  A complete set of the

Plaintiff's original development plans prepared by Woodrow & Associates, Inc. dated August 20,

2001 is attached hereto as Exhibit "BB".

Mr. Zarko performed his engineering review mandated by the SALDO.  He issued his first

review letter on October 11, 2001 which provided 93 comments identifying the plan's non-

compliance, discrepancies and deficiencies with Township ordinances.  A true and correct copy of

the first review letter is attached hereto as Exhibit "CC".  The Montgomery County Planning

Commission also issued a review letter, a true and correct copy of which is attached hereto as Exhibit

"DD".

     1.     <u>First Revised Plans</u>

In response to the review letters of the MCPC and Mr. Zarko , Timothy P. Woodrow, P.E.

of Woodrow and Associates, Inc., on December 24, 2001 filed revised plans and a letter response

to Zarko's first review letter.  A true and correct copy of Woodrow's December 21, 2001 letter is

attached hereto as Exhibit "EE".  Mr. Zarko performed a review of the revised plans and issued his

second review letter on January 24, 2002. (Exhibit "FF"). The second review letter reflects that Mr. Woodrow, in his revised plans, satisfactorily addressed only 21 of the 93 comments identified in the first review letter.

On March 8, 2002, the Township notified Plaintiff's counsel in writing that the Board of Supervisors were planning to take action on the application for preliminary plan approval at its meeting on March 21, 2002. (Exhibit "GG").

### 2.    Second Revised Plans

Following the Township's notification, the Plaintiff's engineer, on March 19, 2002, submitted a letter response to Mr. Zarko's second review letter and a second revised plan (revisions date March 19, 2002). True and correct copies of Mr. Woodrow's March 19, 2002 letter and second revised plans are attached hereto as Exhibits "HH" and "II". Despite the late submission of the plans, they were reviewed by the Township Planning Commission on March 19, 2002. The Planning Commission recommended denial of the preliminary plans. In addition, Mr. Zarko performed a review of the plans prior to the Board of Supervisors meeting on March 21. A true and correct copy of Mr. Zarko's review letter is attached hereto as Exhibit "JJ". Mr. Zarko's review of the second revised plans reflect that only 17 of the 64 comments contained in his revised plan review were satisfactorily addressed in the second revised plans.

### 3.    Extensions Of Time In Which To Take Action On The Application For Preliminary Plan Approval

The Plaintiff initially offered to grant an unlimited extension of time to the Township in which to review the preliminary plan application. The Township has had a longstanding policy not to accept unlimited extensions of time in which to review plan submissions. In this case, it accepted

-16-

one offer of extension of time in November 2001. In accordance with §508 of the Municipalities Planning Code (52 P.S. §10508), a municipality must act on a submission such as a preliminary plan approval application within 90 days of the first date of the Planning Commission's meeting after submission of the plans, assuming the Planning Commission meets within 30 days after the plan submission. By its calculations, the Township, by accepting Plaintiff's offer for an extension of time, had until March 24, 2002 in which to act on Plaintiff's application. Although Plaintiff made a further offer to extend the time, the Township was not required to accept this offer and did not do so. Failure to act on the application by March 24, 2002 would have resulted in a deemed approval of Plaintiff's preliminary plans. 53 P.S. 10508.

        4.    <u>Denial Of The Preliminary Plan</u>

At its meeting on March 21, 2002, the Board of Supervisors unanimously voted to deny Plaintiff's application for preliminary plan approval because of the reasons set forth in the review letter of Mr. Zarko dated March 21, 2002. According to Mr. Zarko's report, the original plans and revised plans did not comply with the Township's Zoning Ordinance, Subdivision and Land Development Ordinance and other related ordinances. Accordingly, the Board of Supervisors passed Resolution 2002-17 outlining all of the deficiencies and non-compliances with the Township's Ordinances. A true and correct copy of Resolution 2002-17 is attached hereto as Exhibit ""KK.

Out of an abundance of caution and because of concern that Plaintiff intended to file a lawsuit, the Board of Supervisors engaged a court reporter to transcribe the proceedings of its March 21, 2002 meeting. A true and correct copy of the transcript is attached hereto as Exhibit "LL".

Following denial of Plaintiff's preliminary plan application, it took an appeal to the Court of Common Pleas of Montgomery County. The land use appeal is still pending.

G.    <u>The Complaint</u>

Plaintiff's Complaint (Exhibit "A") was filed on May 24, 2002.  While the factual allegations are somewhat convoluted and intertwined, they can be essentially distilled to two major grievances:

a.    The rezoning of the property from HVY-X Industrial to EX Extraction was improper; and

b.    the denial of Plaintiff's application for preliminary plan approval was improper and done solely to subject Plaintiff's property to the new zoning (EX-Extraction).

The Complaint purports to state three separate claims pursuant to 42 U.S.C. §1983:

Count I        -        Denial of substantive due process rights;

Count II        -        Denial of procedural due process rights;

Count III        -        Denial of equal protection.

The ad damnum clause requests compensatory and punitive damages (paragraphs 2, 3 and 5), equitable relief in the form of an Order reversing the rezoning (paragraph 4), equitable relief in the form of an Order that the Board engage in a full and fair process in evaluating the revised preliminary plans (paragraph 5) and damages for what appears to be a partial taking claim (paragraph 1).

Defendants have filed the instant Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) or, alternatively, a Motion for Summary Judgment Pursuant to F.R.C.P. 56(b).  That Motion is now before the Court for disposition.

III.    LEGAL STANDARDS

    A.    Standard for Deciding a Motion to Dismiss

When deciding a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), the Court may look only to the facts alleged in the Complaint and its attachments.  Jordan v. Fox Rothschild O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) Motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proven by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

    B.    Conversion of a Motion to Dismiss Into a Motion for Summary Judgment

If, in a F.R.C.P. 12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56".  F.R.C.P. 12(b).  Accordingly, a court converting a motion to dismiss into a motion for summary judgment must normally give notice to the parties of its intention to do so.  Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989).  When, however, a motion to dismiss is framed in the alternative as a motion for summary judgment, conversion is appropriate without additional notice.  Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996).

    C.    Standard for Deciding a Motion for Summary Judgment.

In deciding a motion for summary judgment pursuant to F.R.C.P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Medical Protective Company v. Watkins, 198 F.3d 100, 103 (3d Cir.

-19-

1999)(quoting <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. <u>Matsushita Elec. Indus Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

IV.    <u>ARGUMENT</u>

    A.    Plaintiff's Complaint Fails To State A Cause Of Action For Which
        <u>Relief Can Be Granted For Denial Of Procedural Due Process</u>

Plaintiff's claim for denial of its procedural due process rights should be dismissed because Pennsylvania unquestionably affords Plaintiff a full judicial remedy to challenge the denial of its application for preliminary plan approval. While the essence of Plaintiff's allegations in Count II of the Complaint are that the procedures followed by the Board of Supervisors both in enacting the rezoning of Plaintiff's property and denying the application for preliminary plan approval were improper, the test for procedural due process in the land use and zoning areas is whether the state affords a full judicial mechanism with which to challenge an official decision. In <u>DeBlasio v. Zoning Board of Adjustment</u>, 53 F.3d 592 (3d Cir. 1995), the U.S. Court of Appeals for the Third Circuit stated:

> In order to establish a violation of (plaintiff's) right to procedural due process (plaintiff), in addition to proving that a person acting under color of state law deprived him of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. <u>Midnight Sessions, Ltd. v. City of Philadelphia</u>, 945 F.2d 667, 680 (3d Cir. 1991).

A state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify legal error by a local administrative body. <u>Bello v. Walker</u>, 840 F.2d 1124, 1128 (3d Cir. 1988), <u>cert</u>. <u>denied</u>, 488 U.S. 868 (1988); <u>DeBlasio</u>, 53 F.3d at 597.

The Municipalities Planing Code, 53 P.S. §10101, et seq., provides full, complete and adequate remedies for a person aggrieved by a decision of a municipality regarding land use. Article X-A of the Code provides for appeals to the Court of Common Pleas of the county in which the land is located. 53 P.S. §11001A, et seq. It is obvious that Plaintiff has availed itself of these remedies provided by the Municipalities Planning Code by filing a Land Use Appeal in the Court of Common Pleas of Montgomery County. Therefore, since Pennsylvania clearly provides a judicial mechanism with which to challenge the administrative decision of Whitemarsh Township, Plaintiff has no viable procedural due process claim as a result of the denial of its application for preliminary plan approval. <u>See</u> <u>Bello</u>, 845 F.2d at 1128.

Significantly, Plaintiff had available to it a procedure under the Township's SALDO to file a further revised plan after the Supervisors' denial resolution on March 21, 2002, but chose not to exercise that procedure. Section 105-14(18) of the SALDO provides as follows:

> (18) If the preliminary plan is disapproved, the applicant may file a revised preliminary plan with the Manager in order to secure approval. No fee will be charged for the first revision, but all successive submissions shall pay the fee for preliminary plans.

For reasons only known to Plaintiff and its consultants, Plaintiff waived the option to file a revised plan following the passage of Resolution No. 2002-17 and chose, instead, to file a Land Use Appeal to the Court of Common Pleas of Montgomery County.

-21-

With regard to the rezoning of the Plaintiff's property to EX-Extraction, this was an act performed by the Board in its legislative capacity. For legislative decision making, the individual generally is not entitled to any procedural due process. Rogin v. Bensalem Township, 616 F.2d 680 (3d Cir. 1980). In some Circuits, procedural due process is accorded a landowner when the zoning change is directed at a single property. See, e.g., Harris v. County of Riverside, 904 F.2d 497. In that case, due process may require notification of the change in zoning classification.

In the instant case, the Board enacted an ordinance in the Fall of 2001 to add the EX-Extraction District to the Zoning Ordinance and to rezone Plaintiff's three properties. Plaintiff was fully aware of the proposed changes to the Zoning Ordinance. In fact, Plaintiff filed a challenge to the rezoning with the Township's Zoning Hearing Board on the basis that there were technical errors in the enactment procedure by the Board of Supervisors. Rather than defend their action, the Board "re-enacted" the Ordinances on February 28, 2002, after first assuring that it had followed all of the procedural requirements for enactment. Plaintiff had notice and a full opportunity to be heard on the rezoning. After enactment of Ordinance Nos. 747, 748, 749 and 750, Plaintiff did not file a challenge to the rezoning, even though the MPC and the township's own ordinances gave it every right and opportunity to do so.

In light of the foregoing, it is clear that Plaintiff cannot prove a violation of its procedural due process rights in either the rezoning of its property or the denial of its preliminary plan. Therefore, Count II of the Complaint should be dismissed with prejudice.

B.    Defendants' Actions Did Not Deny Plaintiff Its Substantive Due Process Rights

To establish a claim under 42 U.S.C. §1983, two essential elements must be present:

-22-

1.    The conduct complained of was committed by a person acting under color of state law; and

2.    This conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

Wagner v. Township of Harmer, 651 F.Supp. 1286, 1288 (W.D. Pa. 1987), aff'd, 826 F.2d 1054 (3d Cir. 1987).

Substantive due process protects citizens from arbitrary and irrational acts of government. Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 692 (3d Cir. 1993). To prove a substantive due process violation, Plaintiff must show either (1) that the government's actions were not rationally related to a legitimate government interest; or (2) that the government's actions were motivated by bias, bad faith or improper motive. Id. At 692. Blanche Road Corp. v. Bensalem Township, 57 F.3d 253 (3d Cir. 1995), cert. denied 116 S.Ct. 303 (1995); Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 683 (3d Cir. 1991), cert. denied 112 S.Ct. 1668 (1992). Whether the government's actions were rationally related to a legitimate government interest is a question of law for the Court. On the other hand, whether the government's actions were motivated by bias, bad faith or improper motive is a question for resolution by the jury if there is a genuine dispute of fact. Parkway Garage, supra, at 692 (emphasis added).

1.    Rezoning

§601 of the Municipalities Planning Code grants to the governing body of each municipality in Pennsylvania the authority to enact, amend, and repeal zoning ordinances. 53 P.S. §10601. The right of a municipality to enact a zoning ordinance was recognized by the U.S. Supreme Court in the watershed case of Village of Euclid v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed

303 (1926), which upheld against a 14th Amendment due process attack the basic concept of zoning. Federal courts have generally accorded a high degree of deference to policy objectives in land use planning.  Village of Belle Terre v. Boraas, 416 U.S. 1, 93 S.Ct. 1536, 39 L.Ed2d 797 (1974).

Pennsylvania appellate courts have acknowledged that zoning is permitted when exercised for the promotion of the health, safety, morals or general welfare of the community.  Sobel Construction Company v. Zoning Hearing Board of Borough of East Stroudsburg, 329 A.2d 912, 16 Pa.Cmwlth. 599 (Cmwlth. 1974).  Rezoning is a purely legislative function reserved to the governing body of the municipality.  Township of Haverford v. Zoning Hearing Board of Haverford Township and Havwin Manor, Inc.,344 A.2d 758 (Pa.Cmwlth. 1975)(citing 53 P.S. §10601).

The Third Circuit has commented on the difficult burden a plaintiff has in establishing a substantive due process violation in a zoning matter.  In Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, (3rd Cir.), cert denied, U.S., 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), the Court of Appeals noted the narrow review that is proper for a court's scrutiny of zoning ordinances and their compliance with federal substantive due process standards:

> Given the legislative or quasi-legislative nature of zoning decisions, their review by federal courts is quite different from the review to which they may be subjected by state courts.  See, e.g., Fleming v. City of Tacoma, 81 Wash.2d 292, 502 P.2d 327 (1972) (rezoning amendments are subject to review under Washington "appearance of fairness" doctrine).  It is also very different from the review of certain federal administrative actions, where, by statute, a decision must be overturned if not supported by "substantial evidence" on the record.  See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983).  Unlike such schemes for administrative review, federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for "irrationality" or "arbitrariness," is proper  only if the governmental body could have had no legitimate reason for its decision.  See, e.g., Minnesota v. Clover Leaf Creamery

-24-

Co., 449 U.S. 456, 464, 101S.Ct. 715, 724, 66 L.Ed.2d 659 (1981);
Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d
171 (1979).

Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, (3rd Cir.), cert denied, U.S., 107 S.Ct.

2482, 96 L.Ed.2d 375 (1987) quoting Shelton v. City of College Station, 780 F.2d 475, 482-83 (5th

Cir.1986) (en banc) (emphasis supplied), cert. denied, --- U.S. ----, 106 S.Ct. 3276, 91 L.Ed.2d 566

(1986) and, --- U.S. ----, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).  See also Kaplan v. Clear Lake City

Water Auth., 794 F.2d 1059 (5th Cir.1986).  The Court in Pace continued:

> The test for determining whether a law comports with substantive due
> process is whether the law is rationally related to a legitimate state
> interest. "[T]he law need not be in every respect logically consistent
> with its aims to be constitutional.  It is enough that there is an evil at
> hand for correction, and that it might be thought that the particular
> legislative measure was a rational way to correct it.
>
> The federal courts largely defer to legislative judgment on such
> matters as zoning regulation "because of the recognition that the
> process of democratic political decisionmaking often entails the
> accommodation of competing interests, and thus necessarily produces
> laws that burden some groups and not others." Id. at 687.  **This court
> will not substitute its judgment about land use policy and thereby
> undermine the legitimacy of democratic decisionmaking unless
> the local legislative judgment is without a plausible rational basis.**
> (Emphasis added).

"A plaintiff making a substantive due process claim in federal court has the burden of

showing that the regulation is arbitrary or irrational." Pace, citing Usury v. Turner Elkhorn Mining

Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Conclusory pleadings do not

suffice to state a claim under 42 U.S.C. § 1983 such as the present one.  Pace, citing Rotolo v.

Borough of Charleroi, 532 F.2d 920 (3d Cir.1976);  Boykins v. Ambridge Area School Dist., 621

F.2d 75 (3d Cir.1980).

As stated in the Introduction to this Memorandum of Law, the only quarry operations in Whitemarsh Township are conducted on Plaintiff's three parcels of ground. Hole #1, which is the subject of this litigation, was formerly an active quarry which has been filled in. Hole #2 is in the process of being filled in. Hole #3 is an active quarry. However, Plaintiff has indicated his desire to rehabilitate the property. In the truest sense of the word, Plaintiff's three properties are "unique" in Whitemarsh Township. As such, any ordinance governing the use of quarry properties both before and after rehabilitation, could affect only the Plaintiff's properties.

Even a cursory review of the Township's Zoning Map reveals that adaptive reuse of the rehabilitated quarries for residences is logical, well-reasoned planning designed to promote the public health, safety and welfare of the community. All of the properties except one surrounding Plaintiff's quarry properties are zoned AAA, AA or A Residential. These Districts provide for minimum lot sizes of one acre (AAA Residential), 30,000 square feet (AA Residential) and 15,000 square feet (A Residential). The only adjacent non-residential property is the KYW property located directly west of Quarry Hole #2. It is zoned HVY-Industrial. That property has a number of radio antennae which have been present since before World War II. (See Affidavit of Robert A. Ford, Exhibit "MM"). Plaintiff's argument that its substantive due process rights are violated because its properties were rezoned and KYW's was not ignores the simple fact that KYW's property never has been used as a quarry and is unlikely to change its use.

Traffic impact studies of the Plaintiff's proposed development of 500,000 square feet of office building and over 2,500 parking spaces on the 56 acre parcel were performed by Valley Forge Laboratories, Inc. (July 13, 2000) and David H. Horner, P.E. of Horner & Cantes Associates (February 19, 2002). The Valley Forge study reflected that traffic by the proposed development

-26-

would nearly double on nearby intersections.  (Exhibit "NN").  This is not surprising given the fact that the existing use is as a quarry and the proposed use is so intense it needs over 2,500 parking spaces.

The rezoning of the property to provide for residences following rehabilitation of the quarry properties is a legitimate use of the Township's zoning power under the Municipalities Planning Code.  As such, the actions of the individual Supervisors and the Board as a whole clearly relate to a legitimate government interest.  Therefore, Plaintiff's cannot establish that the rezoning, in and of itself, does not relate to a legitimate government interest.  Sameric Corporation of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998).

Plaintiff's proffered allegations of improprieties relating to the zoning have no merit.  For example, the Plaintiff alleges that the zoning was improper because it was influenced by Marc Kaplin, Esquire on behalf of his clients, adjacent neighbors to the project.  As stated by this Court in Chantilly Farms, Inc., et al. v. West Pikeland Township, 2001 WL290645 (E.D. Pa. 2001) citizens have the right to inform their representatives and government of their desires with respect to the passage or enforcement of laws.  While the Court in Chantilly Farms was analyzing the Noerr-Pennington doctrine in the context of a motion by private defendants to dismiss claims against them, the constitutional right to petition one's government is unquestioned.  Plaintiff's argument that there is some "improper influence" at work because of Mr. Kaplin's public statements and submissions on behalf of his clients is utterly without merit.

The Plaintiff also argues that the change in zoning is contrary to the Township's Comprehensive Plan and a Planning Commission recommendation.  These arguments ignore the fact that a Comprehensive Plan is only a guide for implementation of a land use plan, including zoning

-27-

and is not binding upon either the enactment or amendment of a zoning ordinance.  Appeal of Langsmaid Lane Homeowners Ass'n, 72, 77 Pa.Cmwlth. 53 (Cmwlth. 1983).  In Pace Resources, Inc. v. Shrewsbury Township, supra, the Court addressed similar allegations in the Complaint that the zoning changes did not conform to the spirit and general guidelines of the comprehensive plan. The Court quickly dispensed with that argument, holding that the Township's enactment of an ordinance contrary to the comprehensive plan shows only a change of legislative position, not irrationality.

It must also be recalled that under the Township's ordinance and in accord with the Municipalities Planning Code, the Planning Commission is an advisory board only and thus has no authority to bind the Board of Supervisors on zoning or land use matters.

    2.    <u>Application For Preliminary Plan Approval</u>

Plaintiff provided a laundry list of items which it claims individually or collectively establishes a violation of Plaintiff's due process rights.  Defendants will address each of these allegations in turn and demonstrate that neither individually or collectively do they amount a violation of Plaintiff's substantive due process rights.

    a.    Plaintiff's Preliminary Plans, Revised Plans And Second Revised Plans Never Complied With The Township's Zoning Ordinance And Subdivision And <u>Land Development Ordinances</u>

In this Circuit, the mere ownership of an interest in real property provides rights which are worthy of due process protection.  DiBlasio, supra.  In Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118 (3d Cir. 2000), the Third Circuit, while acknowledging the foregoing principle, performed an "entitlement" analysis to confirm that a property owner's substantive due process rights had been

-28-

violated. In that case, the landowner's substantive due process rights were held to have been violated where the owner's application for subdivision complied with all of the municipality's applicable ordinances. Thus, the owner was "entitled" to subdivision approval and the municipality's refusal to grant it denied the landowner his substantive due process rights. The logical extension of this analysis is that if the landowner's application does not comply with applicable township ordinances, the owner's substantive due process rights cannot be violated when the township denies his application.

The three review letters of Thomas Zarko, P.E., the Township's consulting engineer, dated October 11, 2001, January 24, 2002 and March 21, 2002 reveal that none of the three plans submitted (original, first revised or second revised) complied with the applicable Township Ordinances. Plaintiff's characterization of its plan as a "by-right" plan is inaccurate because it never complied with the Ordinances. The following items listed in Mr. Zarko's March 21, 2002 review letter are only a few of the many deficiencies in the preliminary plan which demonstrate the substantial non-compliance with the Township's ordinances:

Zoning Ordinance

(i)     Plaintiff proposed to construct a retention basin on the southeastern portion of the Project site. This portion of the property is zoned AA Residential. A retention basin is not a permitted use in an AA Residential District. (Zoning Ordinance §§116-35 and 116-48) (See, Exhibit "JJ", Zarko review letter of 3/21/02, p. 1, item 1.a).

(ii)    Plaintiff determined to construct an on-site sewage treatment plant rather than connect to the public sanitary sewer system. Plaintiff's engineer did not provide details and design

specifications as required by §116-152A.(4) of the Ordinance. (See Exhibit "JJ", p. 1, item 1.b).

(iii)   Plaintiff planned to locate the on-site treatment plant within the 200 foot setback from the AA Residential zone in violation of §116-148B(2) of the Ordinance. (See Exhibit "JJ", p. 2, item 1.d).

SUBDIVISION AND LAND DEVELOPMENT ORDINANCE (SALDO)

(i)   The revised PA DEP Sewage Facilities Planning Module pertaining to the project that was submitted to the Township on March 19, 2002 was incomplete in violation of §105-14.D(2)(e) which requires the applicant to submit the application for planning module for land development to the Manager as part of the preliminary plan application. The application was deficient in 5 specific respects. (See Exhibit "JJ", pp. 2, 3, item 3.a.1-5);

(ii)   sufficient existing features (i.e., buildings, driveways, utilities, drainage facilities, topography, etc.) within 500 feet of and with the site are not shown on the plan in violation of §105-21.B.1.n. (See Exhibit "JJ", p. 5, item 4.g);

(iii)   details concerning the existing "pumped water by-pass system" were not on the plan in violation of §105-21.B.1.n. (See Exhibit "JJ", p. 5, item 4.i);

(iv)   right-of-way information for Stenton Avenue was not included on the plan in violation of §105-21.B.1.m. (See Exhibit "JJ", p. 5, item 4.L);

(v)   numerous design standard deficiencies were evident throughout the plan:

-30-

A.    Geotechnical report (p. 3, item 3.d).

B.    Stormwater management/storm drainage calculations (p.4, item 3.f 1-6).

C.    Grading (4, item 4.b).

D.    Profiles of storm sewer lines (p. 4, item 4.c).

E.    Landscaping (p. 5, item 4.e 1,2).

F.    Construction details (p. 5, item 4.j).

G.    Grading/stormwater management/storm drainage and erosion and sedimentation control (p. 6, item 4.k(1)-(14).

Mr. Zarko's letter references other items which do not comply with the Zoning Ordinance and SALDO.

Plaintiff alleges that the criteria used by the Township engineer and thus the Supervisors in denying the plan on March 21, 2002 are final plan approval criteria and not preliminary plan approval criteria. This argument blatantly ignores the simple fact that under the Municipalities Planning Code, preliminary plan approval sets the bounds for final approval. Once preliminary approval has been granted, the applicant is entitled to final approval in accordance with the terms of the approved preliminary application. 53 P.S. §10508(4); Ryan, Pennsylvania Zoning Law and Practice, §11.2.3. In effect, preliminary plan approval is a misnomer because once preliminary plan approval is given with conditions acceptable to the applicant, the Township cannot change or add conditions without the approval of the applicant. (Exhibit "H"; SALDO, §105-15(B)(1)).

b.    Alleged Lack Of Cooperation Given By Township

Plaintiff claims any technical deficiencies in the plan were caused by the Township's failure to provide cooperation to the developer. The Plaintiff also cites to the Township's lack of

-31-

responsiveness to the type of sewer facility that the Township wanted; i.e., either a sewer connection to public sewer which would flow to Springfield Township and eventually to Philadelphia or an on-site system.  As Mr. Ford's Affidavit (Exhibit "MM") demonstrates, the Township had no preference with regard to the type of sanitary sewer system the Plaintiff wished to use.  However, Plaintiff was forced to opt for an on-site sanitary system because the Philadelphia Cricket Club would not permit a connection through its property.  (Exhibit "OO").  Having decided to proceed with an on-site sanitary system, Plaintiff was obligated to provide complete details of this system.  As Mr. Zarko points out in his review letter of March 21, 2002 (Exhibit "JJ"), Plaintiff did not provide the necessary details.

Plaintiff's argument also ignores all of the pre-submission cooperation provided by the Township both before and during the sketch plan stage (See Facts section of this Memorandum).

### c.    "Short" Notice Of Township's Intent To Take Action On Plan

Plaintiff complains that its substantive due process rights were violated because it was only notified on March 8 that the Board of Supervisors intended to take action on the preliminary plan application at its next publically scheduled meeting on March 21, 2002.  The mere fact that Plaintiff characterizes the notice as "short" does not accurately reflect the situation.

Plaintiff had filed its original preliminary plan application on August 28, 2001.  It filed a revised plan on December 21, 2001.  It had the Township engineer's comments to both plans within approximately one month after their submission.  The second letter was issued by Mr. Zarko on January 24, 2002.  After notification that the Township intended to take action on the plan at its March 21, 2002 meeting, Plaintiff directed its engineer to prepare further revised plans and only submitted them on March 19, 2002 despite the fact that all parties knew that the last date on which

the Township could act on the plans was March 24.  Nevertheless, Plaintiff had sufficient time and

notice to adequately prepare its presentation.  As the transcript of the Board of Supervisors meeting

reflects, the Plaintiff chose only to question the Township's engineer and Township Manager on

their statements.

A developer has a duty to submit revised plans in a reasonable and timely manner so that the

municipality can comply with its duty to act in good faith on subdivision plans within the period of

time fixed by ordinance.  Abarbanel v. Solebury Township, 572 A.2d 862 (Pa.Cmwlth. 1990).  As

stated above, the Municipalities Planning Code obligates the Township to act on a plan within 90

days of the first Planning Commission meeting held after submission of the plan.  53  P.S. §10508.

Nothing in case law or the Municipalities Planning Code obligates a municipality to accept an offer

for an extension of time.  In this case, Whitemarsh Township accepted one offer for a 90 day period

which expired on March 24, 2002.  As such, the Township was obligated to act on the plan by that

date.  Otherwise, it ran the risk that the revised plan, as submitted on March 19, 2002 could be

deemed approved.  53 P.S. §10508.  Many municipalities find their decisions compromised by

developers under the "deemed approval" rule because they misconstrue whether a revised plan is a

"new plan" which resets the 90 day clock.  The Plaintiff and its representatives were well aware of

the Township's concerns.  Rather than provide a revised plan which complied in all respects with

the Township's ordinances, it submitted another deficient plan on March 19, 2002 which deficiencies

and non-compliance are set forth in Mr. Zarko's review letter of March 21, 2002 (Exhibit "JJ").

d.     Nature Of The Proceedings On March 21, 2002

The Plaintiff alleges, in its Complaint, that its revised plans were put "on trial" by the nature

of the proceedings before the Board of Supervisors.  The March 21, 2002 meeting was a regularly

scheduled public meeting of the Board of Supervisors. Because of the public interest in Plaintiff's application, the meeting was held at the Plymouth Whitemarsh High School auditorium to accommodate the large number of citizens who had a legal right to attend and observe the meeting.

Plaintiff further complains that there was a court reporter present who recorded the proceedings and provided a transcript of same. (Exhibit "LL"). Nowhere in the Municipalities Planning Code or elsewhere in Pennsylvania law is there set forth any mandatory rule for how minutes of a public meeting should be recorded except that they must be in writing. 65 Pa. C.S.A. §706. Handwritten notes which are transcribed, computer-generated minutes via word processing and stenographic records are all acceptable methods. Given the highly publicized nature of Plaintiff's proposal and the intense interest and expected attendance by the public, the Supervisors' decision to have a clear, stenographic record of the proceedings was nothing more than common sense and foresight.

At one point in its Complaint, the Plaintiff alleges that the Board of Supervisors did not comment or ask the Plaintiff's attorney any questions following his opening statement and failed to deliberate or discuss before they made their decision. (Exhibit "A", ¶¶ 51, 54). The Municipalities Planning Code, the Township's ordinances and the Sunshine Law do not mandate oral deliberation or discussion before a decision by a Township's governing body is made on an application for preliminary plan approval. The law requires that those discussions and decisions be made at a public meeting, be publicly cast and be recorded. 65 P.S. §701 et seq. Pennsylvania law does not specify the length or breadth of Supervisors' deliberations before reaching a decision. It is apparent that the Township engineer's review letter was of considerable weight to the Supervisors because the denial Resolution incorporated most, if not all, of the comments made by the Township engineer. The

Township engineer's job is to determine compliance of an applicant's plans with the applicable ordinances. That is precisely what Mr. Zarko did in this situation. The fact that the Supervisors followed the engineer's recommendation is evidence only that they performed their duties in accordance with applicable law.

In summary, it is apparent that Plaintiff's selection of individual items in its Complaint to "take the Board of Supervisors and Mr. Zarko to task" ignores the inescapable conclusion that the Plaintiff's second revised plans did not comply with the Township's Zoning Ordinance and Subdivision and Land Development Ordinance. Thus, the denial of the preliminary plan application was entirely appropriate and cannot be construed as a violation of Plaintiff's substantive due process rights.

C.    Plaintiff's Equal Protection Rights Were Not Violated

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). Therefore, in order to state a claim under the Equal Protection Clause, different treatment of those similarly situated, is an indispensable element.

Claims that the defendants violated its right to equal protection under the 14th Amendment is made out when plaintiff proves that it was treated differently from similarly situated landowners without any reasonable basis. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985); Anselma Station v. Pennoni Assocs., 654 A.2d 608, 616 (Pa.Cmwlth.1995); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990). In Rogin v. Bensalem Twp., 616 F.2d 680 (3d Cir. 1980), the Court found that passage of zoning amendments and application of it to developer

-35-

did not so lack rationality that they constituted a constitutionally impermissible denial of equal protection, and that the zoning amendments burdened developer more than they would burden other developers did not, under equal protection analysis, vitiate either reasonableness or legitimacy of restrictions imposed by the amendments.

As stated before, the only quarry properties in Whitemarsh Township are the three properties owned by Plaintiff.  It cannot identify a "similarly situated" property because none exists in the Township.  Its attempt to equate the KYW property to its quarry properties is the proverbial "apples to oranges" comparison.  The KYW property, zoned HVY-Industrial, is not a quarry; it is a radio transmitting station with extremely high antennae.  The property has been used in this fashion since before World War II.  (See Ford Affidavit, Exhibit "MM").  Because of the uniqueness of its properties as active and former quarries, Plaintiff cannot viably argue that its equal protection rights are violated by enactment of a rezoning which changes the adaptive reuses of three properties.

> D.    Punitive Damages Are Not Recoverable Against The Township Or
>        The Board Of Supervisors

Municipalities cannot be held liable for punitive damages in a §1983 civil rights action. Newsport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  The rationale behind this principle is that awarding punitive damages against a governmental entity is against public policy because the taxpayer would bear the brunt of any increase in taxes as a result of such an award.

Similarly, a claim against a municipality's governing body, acting in its official capacity, is the same as a claim against a municipality itself.  Therefore, punitive damages cannot be awarded against the Board of Supervisors acting in their official capacity.  Hightower v. City of Philadelphia,

69 BNA FEP Cas 920, 70 BNA FEP Cas 1002 (E.D. Pa. 1995); <u>Gomez Vasquez v. Diaz Colon</u>, 91 F.Supp.2d 481 (D.C. Puerto Rico, 2000).

IV.    <u>CONCLUSION</u>

Defendants respectfully submit that Plaintiff will not be able to establish that its procedural due process rights, substantive due process rights or equal protection rights have been violated in any respect. Accordingly, Defendants respectfully request that the Court grant its Motion to Dismiss or, alternatively, enter Summary Judgment in their favor and against Plaintiff.

DEASEY, MAHONEY & BENDER, LTD.


BY:_____
        HARRY G. MAHONEY, ESQUIRE
        MICHAEL L. BARBIERO, ESQUIRE
        Attorneys for Defendants, Whitemarsh
        Township, the Board of Supervisors of
        Whitemarsh Township, Ann D. Younglove,
        Ronald J. Derosa, William P. Rimel, Peter P.
        Cornog and Michael A. Zeock


        Attorney I.D. Nos. 19609/82933
        Suite 1300
        1800 John F. Kennedy Boulevard
        Philadelphia, PA 19103-2978
        (215) 587-9400
        (215) 587-9456 - fax
        245.20872

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.            :
                                   :    CIVIL ACTION NO. 02-cv-3212
        v.                         :
                                   :
WHITEMARSH TOWNSHIP, MONTGOMERY    :
COUNTY, PA, et al.                 :

CERTIFICATE OF SERVICE

I, Harry G. Mahoney, Esquire, hereby certify that a true and correct copy of Defendants

Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove,

Ronald J. Derosa, William P. Rimel, Peter P. Cornog and Michael A. Zeock's Motion to Dismiss

Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) or, alternatively, Motion for Summary Judgment

Pursuant to F.R.C.P. 56(b) was served this date, by the manner indicated, on all counsel of record

addressed as follows:

VIA HAND DELIVERY

Michael Sklaroff, Esquire
Walter M. Einhorn, Jr., Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

BY FIRST CLASS MAIL

Bruce D. Lombardo, Esquire
Jonathan K. Hollin, Esquire
Powell, Trachtman, Logan, Carrle,
Bowman & Lombardo, P.C.
475 Allendale Road
Suite 200
King of Prussia, PA 19406

Date:                                   _____
                                        HARRY G. MAHONEY, ESQUIRE