IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGHWAY MATERIALS, INC., : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION NO. 02-3212 |
| WHITEMARSH TOWNSHIP, et al., : | |
| Defendants. : | |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of the Motion to Intervene of Donald and Trina Cohan and Paul and Barbara Henkel, and the response of plaintiff Highway Materials, Inc. thereto, IT IS HEREBY ORDERED that the Motion is DENIED.

_____
Robert F. Kelly, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC., :
:
    Plaintiff, :
:
    v. : CIVIL ACTION NO. 02-3212
:
WHITEMARSH TOWNSHIP, et al., :
:
    Defendants. :
:
:

**MEMORANDUM OF PLAINTIFF HIGHWAY
MATERIALS, INC. IN OPPOSITION TO THE
MOTION TO INTERVENE OF DONALD AND
<u>TRINA COHAN AND PAUL AND BARBARA HENKELS</u>**

## INTRODUCTION

    This action was brought under 42 U.S.C. § 1983 by plaintiff Highway Materials, Inc. ("HMI"), alleging that defendants Whitemarsh Township (the "Township"), its Board of Supervisors (the "Board"), its Board members (the "Board Members") and the Township Engineer violated HMI's constitutional rights when defendants carried out a scheme to deprive HMI of its rights to develop its property in accordance with the applicable zoning. All defendants have moved to dismiss the complaint and/or for summary judgment.

    Four alleged neighbors of HMI's property -- Donald and Trina Cohan and Paul and Barbara Henkels (the "Putative Intervenors") -- have filed a motion "to intervene as defending parties to oppose the equitable relief requested by Plaintiff and to rebut the factual allegations in the Complaint." (Motion to Intervene, p. 2.) The motion is based on the conclusory speculation that: (i) if HMI obtains the equitable relief it seeks, the Putative Intervenors' "property values and quality of life . . . will be substantially diminished;" and (ii) that the existing defendants will not "adequately represent the [Putative] Intervenors personal

private interests in protecting their quality of life and their property values." (Putative Intervenors' Memorandum, pp. 7, 11.)

As discussed in full below, these averments, unsupported by any evidence, do not come close to satisfying the requirements for intervention under Federal Rule of Civil Procedure 24(a). First, they do not establish that the Putative Intervenors have an adequate interest in this litigation; a mere potential for reduced property values is not sufficient under Rule 24(a). Second, and perhaps more importantly, the assertion that the existing defendants will not adequately protect the interests of the Putative Intervenors is almost laughable. As discussed at length in the Complaint and below, the Cohans and their counsel lobbied the Township and the Board long and hard to thwart HMI's development plans, going so far as to submit a proposed rezoning ordinance that was adopted virtually verbatim by defendants and to provide legal advice to defendants. Having successfully cowed the Township and the Board and its members into unconstitutionally destroying HMI's property rights, it is outlandish for the Putative Intervenors to now suggest that the existing defendants will not represent their interests. Finally, the Putative Intervenors have no standing to intervene in this matter. Accordingly, the motion to intervene should be denied.

### THE RELATIONSHIP BETWEEN THE PUTATIVE INTERVENORS AND THE EXISTING DEFENDANTS

As recognized by the Putative Intervenors, the actions of Donald Cohan, the Whitemarsh Township Residents Association ("WTRA", of which Cohan is a member) and the Cohans' and WTRA's counsel, Kaplin Stewart Meloff Reiter & Stein, P.C. (the "Kaplin Firm"), to thwart HMI's development plans are mentioned throughout the Complaint. (Putative Intervenors' Memorandum, pp. 7-8.) For instance, the Complaint alleges that Mr. Cohan and the

WTRA strenuously opposed development of HMI's Property. (Complaint, ¶ ¶ 21-22.) Likewise, the Petition to Intervene filed by the Putative Intervenors in state court details this vociferous opposition. (Petition to Intervene, a copy of which is attached as Exhibit A to the Motion to Intervene, ¶ ¶ 13-15.)

Mr. Cohan and WTRA hired the Kaplin Firm to prevail upon the Township and the Board to stop HMI's development, which the Kaplin Firm did in many ways. (Complaint, ¶ ¶ 23-24.) For instance, in 2001 WTRA and Cohan took the unprecedented action of submitting an application to the Township to rezone HMI's Property, prepared by the Kaplin Firm. (Complaint, ¶ ¶ 26-28.) Remarkably, the Board eventually enacted the proposed ordinance <u>in substantially verbatim form</u>, rezoning HMI's property from a zoning that permitted almost any use but residential and retail sales to a zoning that only permitted single-family homes on one-acre minimum lots. (<u>Id.</u>, ¶ 32.) Even more remarkably, the Kaplin Firm submitted a memorandum of law to the Township and Board (without any notice to HMI or its counsel) to assist them in their scheme to trample HMI's constitutionally-protected rights. (<u>Id.</u>, ¶ 24(i).) (A copy of this memorandum is attached hereto as Exhibit A.)

The intertwined relationship between Cohan, the WTRA, and the Kaplin Firm on the one hand, and defendants, on the other hand, does not end there. In November 2001, two Supervisor seats were up for election. (Complaint, ¶ 25.) Two WTRA members, defendants Cornog and Zeock, campaigned on promises to stop development in the Township, including development of HMI's property. (<u>Id.</u>) Running with WTRA's endorsement, both were elected to the Board, replacing incumbent candidates not endorsed by the WTRA (<u>Id.</u>)

As detailed in the Complaint, the efforts of the Putative Intervenors and their counsel were wildly successful. After defendants illegally rezoned HMI's property, they denied

HMI's pre-existing plans to develop its property, thereby depriving HMI of its vested rights to use the property. Not surprisingly, defendants Cornog and Zeock (the WTRA "appointees") voted in favor of rezoning HMI's property and against approving HMI's development plans.

## ARGUMENT

### A. Standards For Intervention Under Federal Rule of Civil Procedure 24(a)

The standards under Rule 24(a) of the Federal Rules of Civil Procedure are well-settled. To establish a right to intervene, the would-be litigant must establish that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Harris v. Pernsley, 820 F.2d 592, 596 (3d. Cir. 1987) (citations omitted). Although HMI does not challenge the timeliness of the motion to intervene, the Putative Intervenors fail to satisfy the other requirements for intervention.

In addition to satisfying these requirements, a prospective intervenor must also establish that it has standing under Article III of the United States Constitution. In re: Grand Jury, 111 F.3d 1066, 1071 (3d Cir. 1997) (citations omitted). As discussed below, the Putative Intervenors also fail to satisfy this requirement.

### B. The Putative Intervenors Do Not Have A Sufficient Interest That May Be Impaired By This Litigation

According to the Supreme Court, an intervenor's interest must be one that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971). "[T]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987) (citations omitted).

PHL_A #1651651 v1                                4

And, as a general matter, "a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995); see also Southeastern Pennsylvania Transp. Auth. v. Pennsylvania Pub. Util. Comm'n, 2002 WL 1485267 (E.D. Pa. July 12, 2002).

Under these standards, the Putative Intervenors' purported interests in their property values and "way of life" fall woefully short.[1] First of all, the Putative Intervenors offer no evidence that their property values or way of life will in fact be reduced. They simply speculate that that will be the result if HMI develops its property. In addition, this alleged interest in a possible reduction in property value is purely economic, thus falling short of the Mountain Top standard.

Moreover, HMI's requested equitable relief relied upon by the Putative Intervenors to establish their right to intervene will not "affect or impair" any of the alleged interests of the Putative Intervenors. To the contrary, HMI is only requesting that the rezoning of HMI's property be "reversed" and that defendants "fully and fairly" evaluate HMI's Revised Preliminary Plans. (Complaint, p. 21, ¶ ¶ 4-5.) HMI has not requested a ruling ordering defendants to approve their Revised Preliminary Plans. Therefore, even if HMI's requested relief is granted, the Putative Intervenors will still have the opportunity (which they surely will

---

[1] The Putative Intervenors also claim they have the right to intervene to respond to the allegations in the Complaint regarding Cohan and the Kaplin Firm. This purported "interest" should be rejected out of hand. First, the Putative Intervenors offer no authority that a desire to file a response in federal court is in and of itself a sufficient interest under Rule 24(a). Moreover, it has been held that reputation alone is not a sufficient interest under Rule 24(a). See Edmondson v. Nebraska, 383 F.2d 123, 127 (8th Cir. 1967).

take) to make their views known to the defendants when they revisit HMI's plans. Thus, there is simply no "tangible threat" in this litigation to any interest of the Putative Intervenors.

This Court's opinion in <u>Scott v. Snider</u>, 1993 WL 524119 (E.D. Pa. 1993) (Robert F. Kelly, J.) is instructive on the quality of interest required for intervention. There, plaintiffs sued the Commonwealth of Pennsylvania (and others) for certain funding under Title XIX of the Social Security Act. The City of Philadelphia (and others) moved to intervene, claiming a significant interest in that "if Defendants fail to fund the services that are mandated under Title XIX, [the Putative Intervenors] will be forced to provide the funding for these services." <u>Scott</u>, at *2. In finding that the Putative Intervenors lacked a sufficient interest, this Court stated:

> This litigation will determine which services Defendants are required to supply under Title XIX. Once those services are identified, then it is without question that Defendants must provide the necessary funding. Defendants' Brief at 13. Conversely, if it is determined that certain services are not mandated by Title XIX, <u>no amount of advocacy</u> by the Putative Intervenors could obligate Defendants to pay for those services. As such, Putative Intervenors do not have a sufficient interest that would be affected or impaired by disposition of this litigation.

<u>Id.</u> (emphasis added).

This same reasoning applies with equal force here. If it is determined in this litigation that HMI's constitutional rights were not violated, then clearly the Putative Intervenors have no interest in this case's outcome. Conversely, if it is determined that HMI's constitutional rights <u>were</u> violated, then presumably "no amount of advocacy" could change this result.

The cases cited by the Putative Intervenors are largely from other circuit courts and are easily distinguishable. Although the Putative Intervenors cite the 58-year old case of <u>Wolpe v. Poretsky</u>, 144 F.2d 505 (D.C. Cir. 1944), for the proposition that intervenors have a presumed interest in protecting property values that could be affected by an adverse decision, they ignore subsequent caselaw in the District of Columbia Circuit largely rejecting <u>Wolpe</u>. For

instance, in Brawner Bldg., Inc. v. Shehyn, 442 F.2d 847, 854 (D.C. Cir. 1971), the Court rejected a *per se* rule, interpreting Wolpe as requiring that an applicant for intervention must actually establish its interest.  Here, the Putative Intervenors have provided no factual basis to support their claim that the property values will be reduced.

The Putative Intervenors also cite Joseph Skillken and Co. v. City of Toledo, 528 F.2d 867 (6th Cir. 1975), and Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action, 558 F.2d 861 (8th Cir. 1977), as examples of neighboring property owners who were allowed to intervene.  However, in both of these cases, the applicants actually produced evidence of their interest beyond simply asserting that their status as neighboring landowners justified intervention.  In Skillken, the applicants alleged facts supporting their contention that a change in zoning would result in a "serious and substantial diminution of value" of their properties.  528 F.2d at 874.  Similarly, in Planned Parenthood, the Court found that interests in property could form the basis of a Rule 24(a) interest, however, such a finding must be substantiated by evidence in the record that the litigation affects the applicant's property.  See id. at 869 n. 9.  No such evidence is present here.[2]

Finally, if the mere potential for a reduction in property value is enough to satisfy Rule 24(a)'s significant interest test, a virtually limitless supply of potential intervenors would be able to participate in this type of litigation.  First, all neighbors, and presumably some at a relative distance, could move to intervene on the basis of a potential reduction in property value.

---

[2]  The only Third Circuit case cited by the Putative Intervenors is Society Hill Civic Ass'n v. Harris, 632 F.2d 1045 (3d Cir. 1980).  This case has no relevance herein; indeed it does not even involve a motion to intervene.  Furthermore, the Third Circuit notes in its opinion that the same plaintiff civic association had unsuccessfully attempted to intervene in the dispute during an earlier phase of the litigation.  Id. at 1049.

And other developers or owners of office parks in the area could also argue that their property values <u>could be</u> negatively affected by HMI's planned development.  Conversely, Township property owners could seek to intervene on HMI's behalf on a theory that their property values <u>could rise</u> if residential real estate taxes were reduced as a result of tax revenue from HMI's planned development.  Clearly, something more than the possibility of a reduction in property values needs to be shown to intervene under Rule 24(a).

      C.      **The Putative Intervenors' Purported Interests Will Be Adequately Protected By The Township, The Board, And The Board Members**

The sole theory offered by the Putative Intervenors as to why the existing defendants will not adequately protect their interests is that "[i]t cannot be presumed that the present local government defendants will adequately represent the [Putative] Intervenors' personal private interests in protecting their quality of life and their property values." (Putative Intervenors' Memorandum, p. 11.)  This, once again, is pure speculation that is in fact contradicted by the conduct of the Township and the other defendants to date.  Such a half-hearted attempt to establish this critical element of intervention should be rejected by the Court.

This Court has noted that representation is inadequate, <u>inter alia</u>, if the applicant's interests "diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." <u>Scott</u>, at *2 (<u>citing</u> <u>Brody v. Spang</u>, 957 F.2d 1108, 1123 (3d Cir. 1992)).  Importantly, "[t]he burden is on the proposed intervenor to show that his interests are not adequately represented." <u>Delaware Valley Citizens' Council v. Commonwealth of Pennsylvania</u>, 674 F.2d 970, 974 (3d Cir. 1982).

When a governmental unit is involved, special deference is shown to the governmental unit and against intervention:

> [W]here the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required. In a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all of its citizens. Because [the state] is already a party, 'the applicant for intervention must demonstrate that its interest is in fact different from that of the state and that the interest will not be represented by the state.

Hopwood v. State of Texas, 21 F.3d 603, 605 (5th Cir. 1994) (citations omitted) (rejecting student associations' motion to intervene in claim that school admission policy was racially discriminatory). Indeed, the "[s]tate is presumed to represent the interest of all of its citizens." Id. at 605.

Here, there is nothing to suggest that the Township, as well as the other defendants, will not adequately protect the Putative Intervenors' alleged (yet insufficient) interest in their property values and way of life. Quite to the contrary, the defendants have consistently acted to facilitate the Putative Intervenors' desire to thwart HMI's development plans. (See discussion, supra, at pp. 2-4.) For example, defendants acted to rezone HMI's property by passing an ordinance that was taken almost verbatim from a proposal submitted by Mr. Cohan and prepared by the Kaplin Firm. (Complaint, ¶¶ 31-32; Putative Intervenors' Memorandum, pp. 3-4.) Defendants were also provided with a memorandum of law from the Kaplin Firm to bolster their efforts to reject HMI's development plans, which they also did at the urging of Mr. Cohan, the WTRA and the Kaplin Firm. (Complaint, ¶¶ 24, 54.) These actions, although extraordinary, show quite plainly the confluence of interests between the Putative Intervenors and the Township and the other defendants. Any question on this point is removed when it is remembered that two of the five Board members -- Messrs. Zeock and Cornog -- are WTRA members who campaigned on promises to stop development in the Township, including development of HMI's property. (Complaint, ¶ 25.)

The fact that defendants have now been sued for their constitutional violations should not alter their steadfast alliance with the Putative Intervenors. Indeed, defendants have already stated that they were concerned about the potential of a lawsuit by HMI, but acted to deny HMI's plans anyway. (See Memorandum in Support of the Township's Motion to Dismiss or For Summary Judgment, p. 17.)

The two cases cited by the Putative Intervenors to support their argument of inadequate representation are inapposite. For instance, Kleissler v. United States Forest Service, 157 F.3d 964 (3d Cir. 1998), involved a motion to intervene by local governmental agencies and businesses in a lawsuit brought against a federal agency. The Putative Intervenors mischaracterize this case by stating that it stands for the proposition that intervenors in cases involving "governmental parties" have a "comparatively light" burden of showing inadequacy of representation. (Putative Intervenors' Memorandum, p. 11.) To the contrary, the Kleissler Court stated:

> The burden of establishing inadequacy of representation by existing parties varies with each case. A government entity charged by law with representing a national policy is presumed adequate for the task, particularly when the concerns of the proposed intervenor, e.g., a "public interest" group, closely parallel those of the public agency. In that circumstance, the "would-be intervenor [must make] a strong showing of inadequate representation. But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light.

157 F.3d at 972 (emphasis added). Thus, where, as here, the existing defendants are the local (not federal) government, and have already demonstrated their concern for the interests of local property owners, Kleissler actually raises the bar for the Putative Intervenors, requiring a "strong showing of inadequate representation."

Likewise, Planned Parenthood, supra, is of no avail to the Putative Intervenors. There, the Eighth Circuit found sufficient evidence of inadequate representation:

> The record shows that the defendants have presented little evidence to show how the operation of an abortion clinic would affect applicants' important property interests.
>
> &ast;   &ast;   &ast;   &ast;
>
> We, therefore, conclude that <u>the applicants have presented sufficient evidence to show that defendants are not adequate representatives of the applicants' interests</u>.

Id. at 870 (emphasis added). Here, the Putative Intervenors offer no more than speculation that defendants "cannot be presumed" to "adequately represent" their interests. This is clearly not enough to justify intervention.

In sum, to date the existing defendants have consistently acted in lock-step with the interests of the Putative Intervenors. This is hardly surprising given that two of the defendants -- Messrs. Cornog and Zeock -- were WTRA members who were elected to the Board in November 2001 with the endorsement and the significant campaign support of the WTRA. The Putative Intervenors have adduced absolutely no evidence that this unity of interests will change. Thus, the Putative Intervenors have not satisfied their burden of demonstrating that the existing defendants will not adequately address their interests.

### D.  **The Putative Intervenors Do Not Have Standing**

In addition to satisfying the requirements of Federal Rule 24(a), the Putative Intervenors must also have standing in order to intervene. See, e.g., In re: Grand Jury, 111 F.3d 1066 (3d Cir. 1997); Standard Heating and Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 570 (8th Cir. 1998) ("standing is a prerequisite for intervention"); Rio Grande Pipeline

Co. v. Federal Energy Regulatory Comm'n, 178 F.3d 533 (D.C. Cir. 1999) (standing required for intervention).

In In re: Grand Jury, the district court granted a motion to intervene and, on appeal, the parties argued as to whether the intervenors had standing. Id. at 1069. The Third Circuit explained the concept of standing as follows:

> The constitutional requirement of standing ensures that the "irreducible minimum" for Article III federal court jurisdiction, that there be 'a case or controversy' is present. 'Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by favorable decision . . . constitutional standing are injury in fact, causation, and redressability.'

Id. at 1071 (citations omitted). See also Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 389 (3d Cir. 1999) ("Article III requires a party seeking relief to allege personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Those asserting standing must describe a "distinct and palpable" injury and cannot allege harm that is "abstract" or "conjectural" or "hypothetical.").

Private citizens have certain immunities from suit under the Noerr-Pennington doctrine for their actions petitioning the government. As this Court has stated: "[t]he United States Court of Appeals for the Third Circuit . . . 'has expressly applied this [Noerr-Pennington] doctrine to protect citizens from liability for exercising their rights to petition state and local governmental bodies.'" Chantilly Farms, Inc. v. West Pikeland Twp., 2001 WL 290645, at *4 (E.D. Pa. March 23, 2001) (citations omitted) (Robert F. Kelly, J.).

If the Putative Intervenors are immune from suit under Noerr-Pennington for their activities alleged in the Complaint, they certainly have no direct and "palpable" interest in this action, and therefore lack standing. Indeed, if the Putative Intervenors had been sued in this

matter, it is beyond doubt that they would have filed a dispositive motion asserting the Noerr-Pennington doctrine.  In fact, Paragraph 24 of the proposed answer of the Putative Intervenors makes specific reference to the Putative Intervenors' "First Amendment rights to exercise freedom of speech and to petition the government."  (Putative Intervenors' Memorandum, Exhibit B, ¶ 24.)  Simply stated, it would be paradoxical to permit the Putative Intervenors, who may have Noerr-Pennington protections against being sued in this matter, to nonetheless litigate herein under the guise of being intervenors.

Alternatively, if the Court decides that the Putative Intervenors do not enjoy Noerr-Pennington protections and therefore have standing, HMI respectfully requests that the Court permit it to file an amended complaint naming the Putative Intervenors as party-defendants due to their conduct in connection with the denial of HMI's property rights as set forth in the Complaint.  The Putative Intervenors should not be allowed to have it "both ways," i.e., litigate in this case and claim immunity from liability.[3]

---

[3]  One further point militates against permitting intervention.  Counsel for the Putative Intervenors, the Kaplin Firm, was deeply involved in the events leading up to the violation of HMI's constitutional rights.  Both the Complaint and the proposed answer of the Putative Intervenors describes some of that conduct.  (Complaint, ¶¶ 23-24, 26-27, 31-32; Putative Intervenors' Memorandum, Exhibit B, ¶¶ 23-24.)  Moreover, the memorandum submitted by the Putative Intervenors details the conduct by "[t]he Cohans, through their attorneys."  (Id., pp. 3-4, 7.)  Thus, lawyers with the Kaplin firm likely will be witnesses in this litigation, and should not be permitted to appear in this action as intervenors' counsel.

## **CONCLUSION**

For all the foregoing reasons, the motion to intervene should be denied.

Dated: August 5, 2002

_____
Michael Sklaroff
Walter M. Einhorn, Jr.
Ballard Spahr Andrews& Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

Attorneys for Highway Materials, Inc.

## **CERTIFICATE OF SERVICE**

I, Walter M. Einhorn, Jr., hereby certify that, on August 5, 2002, I caused copies of the foregoing Memorandum in Opposition to Motion to Intervene to be served via first-class mail, postage prepaid, upon the following:

>Kevan F. Hirsch, Esquire
>Kaplin Stewart Meloff Reiter & Stein, P.C.
>350 Sentry Parkway, Building 640
>Blue Bell, PA  19422


>Harry G. Mahoney, Esquire
>Deasey Mahoney & Bender Ltd.
>1800 John F. Kennedy Boulevard, Suite 1300
>Philadelphia, PA  19103-2978


>Jonathan K. Hollin, Esquire
>Powell Trachtman Logan Carrle Bowman and
> Lombardo, P.C.
>475 Allendale Road, Suite 200
>King of Prussia, PA  19406

>_____
>Walter M. Einhorn, Jr.