## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.,

      Plaintiff,

      v.

WHITEMARSH TOWNSHIP,
MONTGOMERY COUNTY, PA, <u>et al.</u>,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 02-3212

## ORDER

AND NOW, this      day of      , 2002, upon consideration of Defendants Whitemarsh Township, The Board Of Supervisors Of Whitemarsh Township, Ann D. Younglove, Ronald J. Derosa, William P. Rimel, Peter P. Cornog And Michael A. Zeock's Motion To Dismiss Complaint Pursuant To F.R.C.P. 12(b)(6) Or, Alternatively, Motion For Summary Judgment Pursuant To F.R.C.P. 56(b), and the response of Plaintiff Highway Materials, Inc. thereto, IT IS HEREBY ORDERED that the Motion is DENIED.

BY THE COURT:

_____
Robert F. Kelly, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.,      :
     :
    Plaintiff,      :
     :
    v.      :     CIVIL ACTION NO. 02-3212
     :
WHITEMARSH TOWNSHIP, <u>et al.</u>,      :
     :
    Defendants.      :
     :
     :

**MEMORANDUM OF PLAINTIFF HIGHWAY MATERIALS, INC. IN
OPPOSITION TO THE MOTION OF DEFENDANTS WHITEMARSH
<u>TOWNSHIP AND ITS SUPERVISORS</u>**

Michael Sklaroff
Walter M. Einhorn, Jr.
Arleigh P. Helfer III
Corey Field
I.D. Nos. 03287, 48733, 84427, and 88650
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Plaintiff
Highway Materials, Inc.

Date: September 6, 2002

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTS .......................................................................................................................... 2

    A.    The HMI Property............................................................................................ 2

    B.    HMI's Development Plans Spawn Political Turmoil. ....................................... 3

    C.    Supervisors Improperly Rezone the Property.................................................. 5

    D.    Defendants Reject HMI's Preliminary Plans.................................................. 7

        1.    Defendants Withhold Cooperation On The Preliminary Plans.................... 8

            a.    Sanitary Sewer Requirements. ...................................................... 10

            b.    Surface Water Retention Basin. ..................................................... 10

            c.    Road Improvement Specifications. ................................................ 11

        2.    The Plans Are Prematurely Scheduled "For Action." .............................. 11

        3.    The Planning Commission Denies Approval............................................. 12

        4.    Defendants Put the Plans "On Trial." ...................................................... 13

ARGUMENT ................................................................................................................. 17

    A.    The Motion to Dismiss.................................................................................. 21

        1.    Count I: Denial of Substantive Due Process.......................................... 22

        2.    Count II: Denial of Procedural Due Process............................................ 23

        3.    Count III: Denial of Equal Protection...................................................... 26

    B.    The Motion For Summary Judgment is Premature.......................................... 28

    C.    Even if the Court Considers the Motion for Summary Judgment, It Should Be Denied Because There Are Genuine Issues of Material Fact. ......................... 29

        1.    Count I: Denial of Substantive Due Process.......................................... 30

        2.    Count II: Denial of Procedural Due Process............................................ 34

        3.    Count III: Denial of Equal Protection...................................................... 34

    D.    Rule 56(f) of the Federal Rules of Civil Procedure ...................................... 35

CONCLUSION............................................................................................................... 38

## INTRODUCTION

This action involves a scheme by defendants Whitemarsh Township (the "Township"), its Board of Supervisors (the "Board"), the supervisors themselves (the "Supervisors") and the Township Engineer to stop plaintiff, Highway Materials, Inc. ("HMI"), from developing land in the Township for an office park permitted under applicable zoning. In response to HMI's submission for land development approval, defendants invalidly rezoned HMI's property to prohibit HMI's proposed use and then conspired to deny HMI's approval in an attempt to impose the invalid zoning on the property, to stop development and to deprive HMI of its vested property rights after-the-fact. Throughout, defendants violated HMI's rights to substantive due process, procedural due process and the equal protection of the laws.

The current motion, filed by all defendants except the Township Engineer, is remarkable in the extreme. Although labeled a motion to dismiss, it is no such thing. Indeed, rather than confining their arguments to the four corners of the complaint, defendants have submitted appendices nearly four inches thick, including more than 40 exhibits and an affidavit. Defendants' papers are replete with page after page of unsupported factual averments that for the most part are in dispute. The Court should deny the motion out of hand.

The motion is alternatively labeled as one for summary judgment, but the defendants have no right to this relief either. First, the motion for summary judgment is premature in the extreme. The parties have not even made their initial disclosures pursuant to the Federal Rules, nor has discovery commenced. Simply stated, this action is ripe for discovery, not for judgment.

Even were the Court to entertain a motion for summary judgment at this early stage of the case -- and, respectfully, it should not -- defendants fall far short of satisfying the governing standards. Indeed, as mentioned above, defendants simply trot out one unsupported factual averment after another, rarely citing to any fact not in dispute. Not only are their averments unsupported but, as discussed in full below, in almost every relevant instance they are disputed by HMI. These disputed material facts preclude the granting of summary judgment.[1]

## FACTS[2]

### A.     The HMI Property.

HMI is the owner of a 309-acre tract of land adjacent to Stenton Avenue, Joshua Road and Flourtown Road in Whitemarsh Township, Pennsylvania (the "Property"). The Property consists of three parcels. Each was previously or is currently used for quarrying and concrete and bituminous production. HMI acquired the Property in 1997. (Complaint, ¶ 15.) "Parcel 1" is 54 acres, a former quarry site already filled in when HMI acquired the Property. "Parcel 2", approximately 67 acres, consists largely of a quarry site that is now being filled and a concrete production business. "Parcel 3", a 188-acre tract, contains an active quarry and a bituminous production business. (Complaint, ¶ 16.)

For many years, most of the Property had been zoned HVY-X Industrial. Exceptions are a small corner of Parcel 1 (zoned AA Residential) and about one-third of Parcel 3 (zoned Limited-X or A Residential). (Defendants' Mem., Exhibit B.) The HVY-X Industrial

---

[1]     If the Court has any doubt that HMI has presented "facts essential to justify [HMI's] opposition," HMI requests that it be permitted, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to take discovery.

[2]     These facts are based solely upon HMI's pre-discovery investigation. Additional facts supporting the complaint will undoubtedly be adduced during discovery.

zoning permitted a multitude of productive uses for the Property, except residential use or retail sales, and afforded reasonable opportunity for redevelopment. (Defendants' Mem., Exhibit C.) HMI carefully investigated the uses permitted under the Township ordinances before deciding to acquire the Property. (Complaint, ¶ 17.) After acquisition HMI expended substantial sums in cleaning up Parcel 1, and removed dilapidated structures and other relics of the former quarrying and lime manufacturing operations. (Complaint, ¶ 18.)

Several areas in the Township are zoned HVY Industrial. (Defendants' Mem., Exhibit B.) Among these is the site of a KYW radio transmission facility adjacent to the Property. (Id.) None of the other industrial sites was rezoned. (Complaint, ¶ 34.)

**B.   HMI's Development Plans Spawn Political Turmoil.**

Beginning in 1999, HMI, through its legal, planning and engineering consultants, began to discuss the redevelopment of Parcel 1 with Township officials in order to return it to productive use. (Complaint, ¶ 19.) HMI submitted sketch plans of various proposals to Township officials for their consideration. These plans became known to neighbors and the general public. Public opposition developed. (Complaint, ¶ 20; Affidavit of James J. Garrity, Esquire, attached hereto as Exhibit A, ¶ 4, hereinafter "Garrity Aff.")

Learning that HMI and other owners of large parcels were considering plans to put their properties to productive use, several residents of the Township formed the Whitemarsh Township Residents Association ("WTRA") in Fall 2000. The principal goal was to oppose development in the Township. (Complaint, ¶ 21.) WTRA members (and especially WTRA leadership) expressed public opposition to HMI's as-of-right development of Parcel 1, going so far, on information and belief, as to threaten Supervisors that they would be voted out of office at the next election if they disagreed with WTRA's agenda. (Complaint, ¶ 22.) In any event,

WTRA quickly grew to over 1,500 members, in a Township with approximately 4,400 registered voters. (Complaint, ¶ 22.)

WTRA's opposition to HMI's proposed development was extreme. WTRA retained the law firm of Kaplin Stewart Meloff Reiter & Stein (the "Kaplin Firm"), which also represented a neighbor of the Property, Donald Cohan. Lawyers in the Kaplin Firm, including Marc Kaplin, prevailed upon the Supervisors to use the zoning and development approval process to stop the as-of-right development of the Property. (Complaint, ¶ 23.) The Kaplin Firm's attempts to influence and manipulate the Board included: (i) providing surreptitious legal advice to the Board, orally and by way of confidential memoranda of law, purporting to explain the process of development approval, while inviting denial of HMI's submission and offering a way to conceal the ulterior motive while rejecting the development plans (February 4, 2002 Research Memorandum from the Kaplin Firm to Township Solicitor Ross Weiss, a copy of which is attached hereto as Exhibit B); (ii) making public statements encouraging the Supervisors to deny HMI's plans (Transcript of March 19, 2002 Planning Commission Meeting, a copy of which is attached hereto as Exhibit C, at 28); (iii) submitting a proposed ordinance designed to stop the pending development of the Property (subsequently adopted by the Board virtually verbatim) (July 3, 2001 Letter from Kaplin Firm to Board of Supervisors, a copy of which is attached hereto as Exhibit D); and (iv) making a public offer to assist in the defense of the Township, using Mr. Cohan's money in the event that Township actions resulted in litigation. (Complaint, ¶ 24; Exhibit C at 28.)

Having enlisted a large proportion of the Township residents as members, the WTRA wielded substantial power in the Township. And the WTRA used that power. For example, in November 2001 two seats on the Board were up for election. The candidates

supported by the WTRA, defendants Cornog and Zeock, campaigned on promises to stop development in the Township, including development of the Property. (WTRA Candidate Positions on Open Space from WTRA Web Site, a copy of which is attached hereto as Exhibit E.) Both were elected to the Board, replacing incumbent candidates not endorsed by the WTRA. (Complaint, ¶ 25.)

     **C.**    **Supervisors Improperly Rezone the Property.**

        In July 2001, WTRA and Cohan petitioned the Township to rezone the Property to prohibit all but single-family detached homes on minimum one-acre lots. (Complaint, ¶ 26; Exhibit D.)[3] The petition, signed by 400 people, proposed a draft zoning ordinance prepared by the Kaplin Firm (the "WTRA Ordinance"). (Complaint, ¶¶ 26-27; Exhibit D.) At a Board meeting on July 26, the Supervisors announced that they were submitting a request for proposals for a land-use study of the Property. The Supervisors stated that the proposed ordinance submitted by the WTRA and Cohan would be sent to a land planner to be selected to do the study. (Complaint, ¶ 28; Minutes of July 26, 2001 Board Meeting, a copy of which is attached hereto as Exhibit F.) The minutes of the July 26 meeting disclose that the land use study was to be part of a "<u>process</u> to evaluate the appropriate zoning for the [Property]." (Complaint, ¶ 29; Exhibit F) (emphasis added).

        On September 10, 2001, HMI pursued its plan by filing a preliminary land development submission for an office park to be known as "Creekside Commons" (the "Preliminary Plans"). The Preliminary Plans were consistent with the HVY-X Industrial district

---

[3]    Defendants concede that "the permitted uses would be residential in nature." (Defendants' Mem. at 7.) Technically, however, the Rezoning also permits farming of agricultural or horticultural products. (Whitemarsh Township Zoning Ordinance, excerpts of which are attached hereto as Exhibit Z, at § 116-35.)

regulations and approvable under Township ordinances. (Complaint, ¶ 30; Defendants' Mem., Exhibit AA.) At its meeting on September 20, in what appears to be an act of retaliation for the filing of the Preliminary Plans, the Board repudiated the "process" promised at its July 26 meeting and announced that it was authorizing advertisement of a proposed rezoning of the Property virtually identical to the WTRA Ordinance. (Complaint, ¶ 31; Minutes of September 20, 2001 Board Meeting, a copy of which is attached hereto as Exhibit G.)

With elections but two weeks away, the Board, under immense pressure, rezoned the Property on October 18, 2001 to a new and novel EX-Extraction District (the "Rezoning"), using the very language, with minor deviations, of the WTRA Ordinance. (Exhibit D; Defendants' Mem., Exhibit D.) The Rezoning purported to restrict development of Parcel 1 to single-family detached homes on one-acre minimum lots (and to restrict Parcels 2 and 3 in the same fashion once quarrying ceased). (Complaint, ¶ 32; Defendants' Mem., Exhibits D-G.) That same night, immediately after the Rezoning, the Supervisors hired the firm of Simone Jaffe Collins, Inc. ("Simone") to conduct the land-use study of the Property. (Complaint, ¶ 33; Minutes of October 18, 2001 Board Meeting, a copy of which is attached hereto as Exhibit H.) The Board gave no reason why it had abandoned its "process" and rezoned the Property without benefit of a study. (Complaint, ¶ 33; Exhibit H.) **The Rezoning targeted only the Property.** Neither the KYW transmission facility adjacent to the Property nor any other Township property zoned for industrial use was rezoned. (Complaint, ¶ 34; Defendants' Mem., Exhibits D-G.)

The Rezoning disregarded the Whitemarsh Township Comprehensive Plan (the "Comprehensive Plan"), which designated the Property for heavy industrial uses. (Complaint, ¶ 35; Whitemarsh Township Comprehensive Plan, a copy of which is attached hereto as Exhibit I.) In addition, the Board ignored an Amendment to the Comprehensive Plan proposed

by the Township Planning Commission in June 2001 (the "Draft Comprehensive Plan"), which designated the Property for light industrial and office park development consistent with the proposal for Creekside Commons. (Complaint, ¶ 36; June 2001 Whitemarsh Township Draft Comprehensive Plan, a copy of which is attached hereto as Exhibit J, at 50.)

Rushed and ill-advised, the Rezoning was procedurally defective and had to be re-enacted at the February 28, 2002 Board meeting. (Defendants' Mem. at 7.) Once again, the Board acted before receiving the land-use study it had commissioned on October 18. (Complaint, ¶ 38.) The Simone Quarry Land Use Study, which was ultimately presented at a Board meeting held on July 18, 2002, offered several different alternatives for rezoning the Property, including one for an office park development. (A copy of the Simone Quarry Land Use Study is attached hereto as Exhibit K.) At the meeting, the Simone firm faulted the Rezoning because it "does not encourage flexibility." (Minutes of July 18, 2002 Board Meeting, a copy of which is attached hereto as Exhibit L.) A fair inference from the foregoing is that the Rezoning is arbitrary and capricious and discriminatory, in that it violates comprehensive planning principles, constitutes unlawful special legislation, attempts to stop development ex post facto, and is otherwise ineffective as a land-use control.

**D.    Defendants Reject HMI's Preliminary Plans.**

So long as HMI's submission for land development was proceeding in the ordinary course, the Rezoning, being after-the-fact, was too late to apply to the Property. 53 P.S. § 10508(4)(i). HMI was entitled to have its submission fairly evaluated under the HVY-X Industrial zoning regulations in accordance with the Township's Subdivision and Land

Development Ordinance ("SALDO").[4]  Id.  In accordance with Pennsylvania law, approval of land development plans would protect the Property from inconsistent zoning changes, including the Rezoning, for a period of five years.  53 P.S. § 10508(4)(ii).  Thus, in order to give effect to the scheme -- to prevent redevelopment of the Property for an office park (and other uses consistent with HVY-X regulations and the Comprehensive Plan) -- defendants needed to reject the Preliminary Plans.  Once the Preliminary Plans were denied, HMI's redevelopment of the Property would, barring judicial intervention, be restricted to single-family residential, the only use permitted under the Rezoning.

### 1.    Defendants Withhold Cooperation On The Preliminary Plans.

In the normal course of the preliminary plan approval process, important issues (such as the type and placement of sanitary sewer systems) cannot be addressed effectively without cooperation from Township officials, including the Township Engineer.  (Garrity Aff., ¶ 3.)  And, not surprisingly, under Pennsylvania law municipal officials are under a legal duty to cooperate with landowners in the land development process.  See Raum v. Board of Supervisors of Tredyffrin Township, 370 A.2d 777 (Pa. Commw. Ct. 1977).

The normal and customary process in the Township (and as outlined in the SALDO), reflects this duty of cooperation: (a) the developer submits the plans to the Township Manager for review by the Township Engineer, the Parks and Recreation Department, the Zoning Officer, the Fire Marshal, the Shade Tree Commission and the Township Planner; (b) after review, the Township Manager reports back to the developer any deficiencies in the plan; (c) the developer may revise the plans to address the deficiencies and resubmit the plans to

---

[4]      A copy of the SALDO is attached as Exhibit H to defendants' Memorandum.

the Manager; and (d) the process continues until the preliminary plans are suitable for consideration by the Planning Commission. (Complaint, ¶ 42; Garrity Aff., ¶ 3; Defendants' Mem., Exhibit H at §§ 105-14, et seq.)

Early in the process here, the Township cooperated with HMI in at least a limited respect. Defendants' papers discuss these early interactions.[5] When the opposition of the WTRA began to make itself known, however, and especially after HMI filed the Preliminary Plans, cooperation ceased. (Garrity Aff., ¶¶ 4, 5.)

On numerous occasions HMI communicated with Township officials, but to no avail. HMI proposed to meet with Township Engineer Zarko and Township Solicitor Ross Weiss to discuss the Preliminary Plans and in particular those aspects involving Township input.[6] They refused. This refusal to cooperate is most glaring with respect to sanitary sewer options, surface water runoff and road improvement specifications, the very off-site issues in which the Township would normally have the most at stake. The refusal to engage with HMI on these issues in itself betrays the Township's attempt to shut down the land development approval process.

---

[5]   It must be noted that the "cooperation" relied upon by defendants (Defendants' Mem. at 9-15, 31-32), all occurred before HMI filed the Preliminary Plans in September 2001.

[6]   See, e.g., November 14, 2001 Letter from Woodrow to Gregan and Zarko, a copy of which is attached hereto as Exhibit M; November 27, 2001 Letter from Woodrow to Gregan and Zarko, a copy of which is attached hereto as Exhibit N; December 7, 2001 Letter from Garrity to Gregan and Weiss, a copy of which is attached hereto as Exhibit O; December 21, 2001 Letter from Woodrow to Zarko, a copy of which is attached hereto as Exhibit P; February 15, 2002 Letter from Garrity to Weiss, a copy of which is attached hereto as Exhibit Q; February 18, 2002 Letter from Woodrow to Gregan, a copy of which is attached hereto as Exhibit R; March 4, 2002 Letter from Woodrow to Gregan, a copy of which is attached hereto as Exhibit S; March 19, 2002 Letters from Woodrow to Gregan, copies of which are attached hereto as Exhibits T, U, and V; March 12, 2002 Letter from Garrity to Gregan, a copy of which is attached hereto as Exhibit W; March 21, 2002 Letter from Garrity to Weiss, a copy of which is attached hereto as Exhibit X.

a.    **Sanitary Sewer Requirements.**

The Township's lack of cooperation in connection with the sanitary sewer options for HMI's development is especially noteworthy. HMI identified several alternatives for sanitary sewers, and sought Township direction as to which one the Township preferred. (Garrity Aff., ¶ 13.) Amazingly, the Township refused to provide any guidance and certainly not the direction HMI requested in this respect. (Id., ¶ 16.)[7] Then, having failed to provide the requested guidance, the Township and the Board denied the Preliminary Plans for failing to comply with sanitary sewer requirements. (Defendants' Mem., Exhibit KK at 2.)[8]

b.    **Surface Water Retention Basin.**

Defendants' conduct with respect to the surface water retention basin on Parcel 1 is also glaring in its cravenness. As defendants concede, HMI requested a waiver from certain of the Township's stormwater requirements. (Defendants' Mem. at 10, Exhibit O.) When the request was placed on the agenda at a Board meeting, however, the Township did not even notify HMI. (Garrity Aff., ¶ 24.)[9] The Township subsequently denied the request and provided HMI with several options under which HMI would be in compliance with the ordinance. (Defendants'

---

[7]    Defendants have submitted the Affidavit of Robert A. Ford, Assistant Manager of Whitemarsh Township, which states that: "To my knowledge, the Township communicated to Highway Materials, Inc.'s consultants the Township's position of "no preference" on the type of sanitary system and has never expressed to Highway Materials, Inc. a preference, leaving it to Highway materials [sic] Inc. to decide which system it wanted to use." (Defendants' Mem., Exhibit MM.) This is simply not true.

[8]    Even this denial was bogus because despite defendants' lack of cooperation, HMI was still able to fulfill preliminary plan requirements by including two sanitary sewer options on the plans. (Affidavit of HMI Engineer Timothy P. Woodrow, a copy of which is attached hereto as Exhibit Y, ¶ 12, hereinafter "Woodrow Aff.")

[9]    The Township's assertion on page 11 of its Memorandum that it did notify HMI of the meeting is flat wrong.

Mem. at 11, Exhibits P, Q.) Among those options was one that included a retention basin on the small portion of Parcel 1 that was zoned AA Residential. (Defendants' Mem., Exhibits P, Q.)

Having failed to obtain the waiver, HMI proceeded to comply fully with Township requirements. In part this required the placing of the retention basin on the area zoned AA Residential, as suggested by the Township. (Defendants' Mem., Exhibit P.) Unbelievably, the Township then denied the Preliminary Plans, claiming that placement of the retention pond on the portion of Parcel 1 zoned AA Residential -- the very direction the Township had given -- violated that zoning. (Defendants' Mem., Exhibit KK at 2.)

c.     **Road Improvement Specifications.**

The Township also failed to cooperate with HMI in connection with traffic issues. HMI repeatedly asked for input, including what intersection improvements might be requested by the Township. (Exhibits R, S, W, X.) Remarkably, the Township simply did not respond. (Garrity Aff., ¶ 10.)[10]

2.     **The Plans Are Prematurely Scheduled "For Action."**

On March 8, 2002, HMI received a letter from the Township Manager that the Preliminary Plans were scheduled "for action" by the Township Planning Commission, just eleven days later, on March 19, 2002. (Defendants' Mem., Exhibit GG.) The March 8 letter also stated that the matter was scheduled "for action" by the Board, just thirteen days later on March 21, 2002. Id. The letter did not explain why the Township may have needed to act on

---

[10]     The Township disingenuously states that it retained a consultant to do a traffic study "even though the Township had no obligation to commission a traffic study." (Defendants' Mem. at 10.) In reality, the Township stated it would not even review HMI's plans unless a traffic study was completed at HMI's expense. (Garrity Aff., ¶ 25.) As it turned out, the Township requested, and HMI paid for, two traffic studies. (Woodrow Aff., ¶ 14.)

such short notice, nor why any action at all was then required. (Complaint, ¶ 45; Defendants' Mem., Exhibit GG.)

By letter dated March 12, 2002, HMI counsel James Garrity notified the Board and Township staff that the Preliminary Plans might not be ready "for action" because defendants had withheld the cooperation necessary for the land development process. (Exhibit W.) He offered the Township a formal extension of time under Section 508 of the Municipalities Planning Code ("MPC"), 53 P.S. §§ 10101, et seq., to provide the defendant Supervisors additional time to render their decision on the Preliminary Plans. (Id.) The Township did not respond. (Complaint, ¶ 46; Garrity Aff., ¶ 12.)

The refusal to extend the land development review beyond the March meetings would be inexplicable in and of itself. While it is true that the MPC requires action within a certain time period, municipalities typically request (and developers typically grant) extensions of time to consider development plans. (Garrity Aff., ¶ 11.) It is beyond imagining that Township officials -- as part of a good faith administration of a land development process -- would first withhold cooperation from a developer and then insist on rendering a decision on plans allegedly not yet acceptable, when the developer is willing to grant further extensions of time. (Garrity Aff., ¶¶ 4, 12.)

### 3.    The Planning Commission Denies Approval.

In preparation for the March 19 Planning Commission Meeting and the March 21 Board Meeting, HMI's Engineer Tim Woodrow filed Revised Preliminary Plans (the "Revised Preliminary Plans") with the Township on the afternoon of March 19. (Complaint, ¶ 47; Defendants' Mem., Exhibit II; Woodrow Aff., ¶ 3.) The Township directed Mr. Woodrow immediately to deliver a copy of the Revised Preliminary Plans to Township Engineer Zarko's

office in Doylestown.  (Woodrow Aff., ¶ 3.)  Despite no requirement to do so, HMI caused Mr. Woodrow to deliver the Revised Preliminary Plans to defendant Zarko on the morning of March 20.  (Complaint, ¶ 48; Woodrow Aff., ¶ 3.)

On March 19, in its first public review of the Preliminary Plans in any version since they were filed on September 10, 2001, the Planning Commission recommended denial of the plans.  The Commission did so without specifying even one instance where the plans failed to comply with Township ordinances or, as is customary, advising what steps would be necessary to bring the plans into compliance.  (Complaint, ¶ 49; Garrity Aff., ¶ 18.)  Before the vote, Mr. Garrity had reiterated his written offers of both an extension of time and a "freeze" of all further action on the Revised Preliminary Plans in order to permit the Township to propose, and HMI to make, any changes, modifications or additions that might prove necessary to assure compliance.  (Exhibit C at 7:18-21.)  These offers were ignored by the Planning Commission, just as they had been ignored by the Township.  (Complaint, ¶ 49; Exhibit C.)

### 4.    Defendants Put the Plans "On Trial."

In a sign of things to come, defendant Zarko faxed a seven-page letter describing alleged deficiencies in the Revised Preliminary Plans to HMI's counsel at 5:20 p.m. on March 21, only two hours before the Board meeting.  (Complaint, ¶ 50; Defendants' Mem., Exhibit JJ; Garrity Aff., ¶ 19.)  The Board meeting was anything but ordinary.  First, while Mr. Garrity was afforded time to make a short presentation, the Supervisors had <u>no</u> comments and asked <u>no</u> questions at the conclusion of the presentation.  (Garrity Aff., ¶ 22.)  Rather, the Township had arranged for the presence of a court reporter and proceeded to put the Revised Preliminary Plans "on trial."  (Complaint, ¶ 51; Garrity Aff., ¶ 21.)

With absolutely no notice to HMI, the Township proceeded to call "witnesses" to testify against the Revised Preliminary Plans. (Complaint, ¶ 52; Garrity Aff., ¶ 21.) Township Solicitor Ross Weiss conducted formal, sworn examinations of defendant Zarko and Township Manager Gregan. (Complaint, ¶ 52; Garrity Aff., ¶ 21.) To HMI's knowledge, the Township had never before put preliminary plans "on trial" in a judicial-style administrative proceeding. (Complaint, ¶ 52; Garrity Aff., ¶ 21.) With no notice from the Township, HMI had no reasonable opportunity to call or prepare witnesses or exhibits to rebut the testimony of defendant Zarko and Mr. Gregan in what was to become, in Township Solicitor Weiss's words, a "legal" proceeding. (Complaint, ¶ 53; Garrity Aff., ¶ 21; Defendants' Mem., Exhibit LL at 81:10-11.)[11]

After the "trial" -- and with no deliberation nor discussion whatsoever -- the Board unanimously rejected the Revised Preliminary Plans and passed Resolution 2002-17 (the "Denial Resolution"). The Denial Resolution is taken virtually verbatim from defendant Zarko's March 21 letter, which alleged purported deficiencies in the Revised Preliminary Plans. (Defendants' Mem., Exhibits JJ, KK.) The Denial Resolution is over eight single-spaced pages, had obviously been prepared before the March 21 Meeting and contains numerous pretexts for denying the Revised Preliminary Plans, none of which provides a legal basis for rejection. (Complaint, ¶ 55.)

---

[11]    Outrageously, defendants state that "Plaintiff chose only to question the Township's engineer and Township Manager on their statements." (Defendants' Mem. at 33.) This is hardly surprising since HMI came prepared to make its first public presentation of the Preliminary Plans, not to defend itself in a trial setting (replete with a court reporter and sworn testimony) of which HMI had absolutely no notice. (Garrity Aff., ¶¶ 21, 22.)

As more fully discussed below, the Denial Resolution and defendant Zarko's March 21 letter are arbitrary, capricious, unjustifiable, and contrary to law because, among other things, they apply final plan requirements to HMI's Revised Preliminary Plans. For instance:

a.   In the case of sanitary sewer provisions, the Township ordinances for preliminary plans require only the submission of a one-page planning module application, which was duly filed by Mr. Woodrow. (Woodrow Aff., ¶ 3.) Defendants found HMI's plan deficient based on the lack of a full operational plan, a requirement for final plans. (Defendants' Mem., Exhibit H at §§ 105-22, et seq., Exhibit KK.)

b.   HMI was faulted for not obtaining regulatory agency permits and approvals including water and sanitary sewer service and road improvement permits. (Defendants' Mem., Exhibit KK.) Under the Township ordinances, however, those permits and approvals are normally obtained only after preliminary approval of plans, and frequently are not obtained until after final approval. (Defendants' Mem., Exhibit H at §§ 105-22, et seq.)

c.   HMI was faulted for not submitting fire flow information relating to public water facilities. (Defendants' Mem., Exhibit KK at 3.b.) This is, however, a final plan obligation. (Defendants' Mem., Exhibit H at § 105-76.)

d.   HMI's Revised Preliminary Plans were faulted for not including copies of fully executed easement agreements. (Defendants' Mem., Exhibit KK at 3.c.) However, the preliminary plan process is meant to define what easements are necessary. The execution of easement agreements are final plan requirements. (Defendants' Mem., Exhibit H at § 105-45.)

e.   HMI's Revised Preliminary Plans were faulted for not including detailed construction plans pertaining to the proposed Stenton Avenue roadway improvements. (Defendants' Mem., Exhibit KK at 4.d.) However, once again, detailed construction plans are final plan requirements after Pennsylvania

Department    of    Transportation    approval.
(Defendants' Mem., Exhibit H at § 105-22(B)(5).)

In many respects, the Denial Resolution and Zarko's March 21 letter are just wrong. As mentioned above, one of the stated reasons that the Revised Preliminary Plans were denied was that a retention pond planned for a small piece of land zoned AA Residential did not comply with zoning. (Defendants' Mem., Exhibit KK at 1.a.) Even putting aside the fact that the Township had previously recommended the pond solution (see discussion, supra, at 11-12), the pond does comply with the applicable zoning. (Woodrow Aff., ¶ 5; see also Exhibit Z at §§ 116-34, 116-35, 116-47, 116-48.) Another "reason" for denial was that the plans did not provide for berms and chain link fencing around the perimeter of the site, notwithstanding that the Township ordinances do not require berms and fencing around an office park development. (Complaint, ¶ 57; Woodrow Aff., ¶ 5; Defendants' Mem., Exhibit C at §§ 116-156(B), (C).) Finally, several "reasons" for denial stemmed from the Township's own actions and failures to act. For example, the Township failed to submit the Preliminary Plans to the Montgomery County Conservation District or the Whitemarsh Township Fire Marshall, and yet defendants denied the plans in part for lack of input from those two offices. (Complaint, ¶ 58; Woodrow Aff., ¶ 7; Defendants' Mem., Exhibit H at § 105-15(D)(5).) Egregiously also, defendants denied the Revised Preliminary Plans because HMI failed to obtain a highway occupancy permit from the Pennsylvania Department of Transportation ("PennDOT"). (Defendants' Mem., Exhibit KK at 2.e.) The Township ordinances, however, require that the application to PennDOT not be submitted until after preliminary plan approval. (Complaint, ¶ 59; Woodrow Aff., ¶ 8; Defendants' Mem., Exhibit H at § 105-22(B)(8)(e).)

Taken individually and especially when viewed together, the "reasons" given for denial were but a pretext to stop development and impose the Rezoning on the Property, which itself was the first step in the scheme to stop development.

## ARGUMENT

Defendants' motion falls of its own weight. Insofar as it purports to be a motion to dismiss, it seeks to create its own state of facts way beyond the allegations of the complaint and fails miserably. Insofar as it purports to be a motion for summary judgment, it is premature in the extreme. Even were the Court to decide to entertain the motion for summary judgment, countless genuine issues of material fact preclude judgment. Finally, in the unlikely event the Court were to decide that HMI has not presented facts sufficient to justify its position, HMI should be permitted to pursue further discovery under Federal Rule of Civil Procedure 56(f).

We begin with the local regulatory context and federal oversight. Since the early 1970's trial courts in the Eastern District of Pennsylvania have been receptive to well-founded actions under the Civil Rights Act of 1871 to protect landowners deprived of due process as a result of the unlawful actions of local officials.[12] Actions by local officials depriving landowners of due process under procedures for regulation land-use are, unfortunately, not uncommon. The Civil Rights Act provides a remedy in cases, such as the one at bar, where procedures are

---

[12]     Perhaps the first case, unreported, involved the attempt by officials of Nether Providence Township, Delaware County, to deflect the landmark decision of the Supreme Court of Pennsylvania in Girsh Appeal, 263 A.2d 395 (Pa. 1970), by condemning the property that had given rise to the decision to strike exclusionary zoning from the suburbs. Altman v. Township of Nether Providence, No. Civ. A. 72-917, slip op. (E.D. Pa. 1972). The landowner sued under the Civil Rights Act to stop the condemnation. The township officials moved to dismiss, but then District Court Judge Becker set the case down for trial. Ultimately, the township did not pursue the condemnation and was later ordered by the Supreme Court to grant a building permit. See Casey v. Zoning Hearing Bd. of Warwick Township, 328 A.2d 464 (Pa. 1974).

subverted to deprive landowners of substantive due process, procedural due process and equal protection. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Blanche Road Corp. v. Bensalem Township, 57 F.3d 253 (3d Cir. 1995); DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir. 1995); Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988); Thornbury Noble, Ltd. v. Thornbury Township, No. Civ. A. 99-6460, 2002 WL 442827 (E.D. Pa. Mar. 20, 2002); Kessler Inst. for Rehabilitation, Inc. v. Mayor and Counsel of the Borough of Essex Fells, 876 F. Supp. 641 (D.N.J. 1995); de Botton v. Marple Township, 689 F. Supp. 477 (E.D. Pa. 1988). Central to due process is the principle that a landowner is entitled to a fair hearing under municipal law. Where this right is taken away, a landowner is entitled to federal relief. See, e.g., de Botton, supra.

In the instant matter, the landowner, HMI presented plans to township officials to develop its property for uses permitted by right under long-standing zoning regulations. Private parties organized to oppose the landowner's as-of-right development and persuaded the Supervisors to spot-zone the Property without any planning basis whatsoever in order to stop development. Since the landowner had already begun the process for land development approval under as-of-right zoning, the only way for the defendants to subject the Property to the invalid spot-zoning was to make sure that the landowner failed in obtaining preliminary land development approval. Pennsylvania courts have long recognized the evil of succumbing to the forces seeking to stop development after rights have vested. See, e.g., Yocum v. Power, 157 A.2d 368, 370 (Pa. 1960) ("As nothing can be more unjust in criminal law than an ex post facto law, so nothing is more frowned on in civil law than a procedure which has the effect of making illegal what the law has already recognized as legal.").

A word about the land development process: what it is and what it is not. The land development process is designed to facilitate development of property as zoned in accordance with reasonable standards. See SALDO, § 105-2. The process involves a joint effort between the municipal engineer, the municipal planning commission and the governing body, on the one hand, and the landowner and his professional consultants, on the other, to harmonize the proposed as-of-right development with express standards set forth in the land development regulations. While these regulations have the force of law, they are termed "regulations" in part because the normal process involves waivers and extensions of time. Since the municipality has a direct interest in larger issues, such as storm water management, roadways and sewer treatment -- which may require solutions off-site -- municipal cooperation (and direct involvement) is essential to major land development approvals.

While there is a certain formality, reasonable cooperation and good faith are implicit in the land development process. Here, good faith is not unlike the standard of conduct increasingly required by the courts in arms-length business negotiations. In any event, in this Circuit, good faith, let us say procedural good faith, is a requisite of due process in what may otherwise appear to be a process opaque and impenetrable. See DeBlasio, 53 F.3d at 601 (denying defendant's motion for summary judgment where plaintiff had demonstrated bad faith on behalf of defendant).

What land development is not is an opportunity for the municipality to rethink the underlying zoning classification or to frustrate the landowner in his efforts to produce a plan under as-of-right zoning that satisfies land development requirements. Nor is it the occasion for municipal officials to stop development, deprive a landowner of vested rights under existing zoning or impose new, restrictive and confiscatory regulations upon the landowner.

Normally, the land development process takes place against the background of stable zoning. Zoning classifications of major properties -- here a property comprising over 300 acres -- are not normally in dispute. The zoning or mapping of properties is a deliberative process, within an essential planning component involving not just one parcel, but requiring an overview of large areas of the municipality. The municipal planning commission, the county planning commission and, quite often, professional planning firms engaged for the purpose, evaluate the larger issues that affect neighborhoods, communities and even regions. This process takes time. The end product may involve new zoning classifications and remapping properties for new uses; or there may be no changes.

Where, as here, a property is rezoned without a deliberative process and the zoning action is the product of a highly charged political tidalwave, the result may be unlawful, spot zoning. See Schubach v. Zoning Bd. of Adjustment, 270 A.2d 397 (Pa. 1970); Baker v. Chartiers Township Zoning Hearing Bd., 677 A.2d 1274 (Pa. Commw. Ct. 1996). Municipal officials are not immune from such inundation, but unlike community groups, ad hoc and otherwise, they serve under oath to protect rights of persons under the law and constitutions of Pennsylvania and the United States. It is not in dispute here that the Rezoning -- proposed by opponents of the as-of-right development -- was rushed into law without the normal planning process and in the heat of political uproar.

As a result, the pending land development application took on a new and special meaning. Denial at any stage -- preliminary or final -- would likely expose the Property to controls that were (a) highly restrictive, if not confiscatory; (b) the product of the private initiative of parties having no proprietary interest in the land in question; and (c) designed to frustrate uses available as-of-right.

The role of the Supervisors is key to understanding the Complaint. Supervisors, who compose the governing body under the MPC, are clothed with legislative powers when passing ordinances. No executive need sign a bill. There is no veto. The legislative power is plenary and not normally subject to review.

Decisions made in the context of land development, however, are another thing entirely. Here, supervisors exercise administrative functions under the MPC. Compare de Botton, supra. Defendant Supervisors were obligated to safeguard HMI's rights and make their administrative determination without fear or favor. The essence of due process is that the applicant is entitled to an honest decision. HMI was entitled to a determination how the Property could be developed within the controls of the SALDO and the HVY-X Industrial zoning regulations. The commingling of these functions may result in a denial of due process. See United Artists Theater Circuit, Inc. v. City of Philadelphia, 595 A.2d 6, 8 n.1 (Pa. 1991). That is the crux of this case.

Even though local politics may have tempted the Supervisors to find pretexts to deny preliminary land development approval in order to stop development (by subjecting the Property to new, restrictive zoning), due process precluded their doing so. And this is a question for the fact-finder, not a matter to be decided on the pleadings or on affidavits without an opportunity for plaintiff to pursue discovery.

A.     **The Motion to Dismiss.**

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Simril v. Township of Warwick, No. Civ. A. 00-5668, 2001 WL 910948, at *3 (E.D. Pa. Aug. 13, 2001) (Kelly, J.) (quoting Maio v. Aetna,

Inc., 221 F.3d 472, 482 (3d Cir. 2000)) (emphasis added). In a motion to dismiss, the issue is not who will ultimately prevail but "whether the claimant is entitled to offer evidence to support the claims." Id. A motion to dismiss is only appropriate where "it is certain that no relief could be granted under any set of facts that could be proved." Id. at *3 (citations omitted).

When deciding a motion to dismiss, the test is "whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim." Simril, 2001 WL 910948, at *3 (quoting Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)). Dismissal is "limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." Markowitz v. Northeast Land Co., 906 F.2d 100 (3d Cir. 1990) (citations omitted).

In the Eastern District of Pennsylvania, motions to dismiss are "viewed with disfavor and ... rarely granted." Simril, 2001 WL 910948, at *3 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 321 (2d ed. 1990)). The granting of a Rule 12(b)(6) motion to dismiss "is highly disfavored, and only appropriate 'where it is certain that no relief could be granted under any set of facts that could be proved.'" Id.

### 1.    Count I: Denial of Substantive Due Process.

To state a claim for violation of substantive due process under 42 U.S.C. § 1983, HMI must demonstrate a protected property interest and allege that it was the victim of a "governmental action [that] was arbitrary, irrational, or tainted by improper motive." Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124 (3d Cir. 2000) (quoting Bello, 840 F.2d at 1129). As the Court of Appeals has observed, "one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership." DeBlasio, 53 F.3d at 601. In DeBlasio, the Court held that if a government decision impinges upon a landowner's use and

enjoyment of property, the landowner states a substantive due process claim where he or she

alleges that the decision limiting the intended land use was arbitrarily or irrationally reached:

> We think it consistent with Bello to conclude that ownership is a
> property interest worthy of substantive due process protection.
> Indeed, one would be hard-pressed to find a property interest more
> worthy of substantive due process protection than ownership.
> Thus, in the context of land use regulation, that is, in situations
> where the governmental decision in question impinges upon a
> landowner's use and enjoyment of property, a land-owning
> plaintiff states a substantive due process claim where he or she
> alleges that the decision limiting the intended land use was
> arbitrarily or irrationally reached. Where the plaintiff so alleges,
> the plaintiff has, as a matter of law, impliedly established
> possession of a property interest worthy of substantive due process
> protection.

Id. at 600-01 (footnotes and citations omitted) (emphasis added).

As to HMI's claim for denial of substantive due process, defendants do not even

argue that HMI has failed to state a Section 1983 claim. (Defendants' Mem. at 22-35.) Rather

than accepting as true the facts averred in the Complaint, however, defendants seek to try the

case on papers, using their own versions of the facts. (Id.) Simply stated, if the Court accepts

the allegations in the Complaint as true (as it must), there is no doubt that HMI has stated a claim

for denial of substantive due process. Those facts demonstrate that: (i) HMI had a protected

property interest; and (ii) defendants acted in bad faith and in an arbitrary and capricious manner

to deprive HMI of its rights. See DeBlasio, supra. Defendants do not seriously contend

otherwise, and thus the motion to dismiss must be rejected as to Count I.

### 2.    Count II: Denial of Procedural Due Process.

Defendants contend that HMI's claim for denial of procedural due process should

be dismissed because in their view state court appellate procedures for HMI to challenge

defendants' actions are adequate. (Defendants' Mem. at 20-22.) Defendants misconceive

applicable law. First, defendants do not even dispute HMI's well-pleaded allegations of denial

of procedural due process, including defendants' corruption of the process prescribed in the MPC

and the Township Code relating to preliminary land development approval. (Complaint, ¶¶ 82,

83.) Instead of challenging the sufficiency of these claims, as required for a Rule 12(b)(6)

motion to dismiss, defendants argue that so long as a state provides appellate (*i.e.,* post-

deprivation) procedures to challenge a deprivation of a property interest, there is no procedural

due process violation. (Defendants' Mem. at 20-22.) This is a misstatement of the law in this

Circuit. Post-deprivation remedies in the form of appellate procedures are not adequate in every

circumstance, and are definitely not adequate here.

   To the contrary, post-deprivation remedies are adequate to satisfy due process

"only when the circumstances surrounding the deprivation require quick action by the state, or

when pre-deprivation procedures are impractical." C&M Group, Inc. v. New Britain Township,

No. Civ. A. 90-4375, 1991 WL 25684, at *3 (E.D. Pa. Feb. 14, 1991) (citing Parrett v. Taylor,

451 U.S. 527, 539 (1981)). Clearly, within the context of zoning challenges and land use plan

review, there is no need for quick action by the state, nor are pre-deprivation procedures

impractical. Id. (rejecting argument that post-deprivation appeal to Pennsylvania Common Pleas

Court is adequate due process where pre-deprivation procedures may be provided, such as in the

context of zoning review or the denial of a land-use permit); see also Littlefield v. City of Afton,

785 F.2d 596 (8th Cir. 1986) (overruled on other grounds). Quite simply, HMI's attempt to

develop its Property did not present circumstances in which there was need for "quick action by

the state" or in which it would have been impractical to afford HMI the benefit of meaningful

pre-deprivation procedures.

The mere availability of a post-deprivation remedy was insufficient to satisfy procedural due process requirements in de Botton, supra. There, the township effectively denied the plaintiff's challenge to a zoning ordinance when it failed to conduct a hearing within the period required by the MPC. Id. at 481. Notwithstanding that the plaintiff in de Botton had an appellate process available to it to contest this denial (indeed, plaintiff actually prevailed on appeal), the Court found that plaintiff had stated a claim for denial of its procedural due process rights. Id. at 479, 481.

Under the facts here, the counterpart to the hearing withheld from the plaintiff in de Botton, supra, is the preliminary land development process itself. Just as Mr. de Botton had a right to an administrative hearing before the Board of Commissioners on his claim that the Marple Township Ordinance was unconstitutional, here HMI was entitled to fair consideration in the administrative process in its request for preliminary plan approval. By the time of the formal hearing before the Board, HMI had lost any opportunity for a fair administrative review because of defendants' actions. Simply put, a process that yields denial by pretext is no process at all. The March 21 "hearing", therefore, was no more a "hearing" than that of which Mr. de Botton was deprived.[13]

Finally, even if defendants' argument regarding post-deprivation procedures had merit, there are no statutory appellate procedures in Pennsylvania that permit HMI to challenge

---

[13]    Adding insult to injury, moreover, HMI was not provided with adequate notice of the formal hearing, nor was it ever told that the Township planned to put HMI's plan on trial. (Complaint, ¶¶ 50-54.) Having had no notice of this bizarre procedure and with Zarko's denial letter in hand for only two hours, HMI was not prepared to either cross-examine the Township's witnesses (Township Manager Gregan and Township Engineer Zarko) or to call witnesses of its own. (Id., ¶ 53.) In any event, however, the decision had been pre-ordained -- purporting to rely on Zarko's pretextual denial letter, the Supervisors denied the Revised Preliminary Plans. (Id., ¶¶ 54-55.)

in full measure the specific conduct alleged here. HMI does not merely challenge the denial of its preliminary plans, but rather pleads an overarching scheme to deprive HMI of its property rights that consisted of a wrongful rezoning followed by the rejection of pre-existing plans. (Complaint, ¶¶ 1, 26-64.)  While Pennsylvania provides an appellate procedure in the Court of Common Pleas to challenge the denial of land development approval[14] and a separate procedure in the Zoning Hearing Board to challenge spot zoning,[15] it does not provide a single statutory appeal to challenge in one forum a scheme that incorporates <u>both</u> actions.  Therefore, the post-deprivation procedures defendants rely upon fail to provide adequate process to satisfy due process.

### 3.    Count III:  Denial of Equal Protection.

Defendants concede that where a landowner alleges that it was treated differently from similarly situated landowners without reasonable basis, a claim for denial of equal protection under the 14th Amendment has been stated.  (Defendants' Mem. at 35, citing <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432 (1985).)  Indeed, courts now recognize an equal protection claim brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  The Supreme Court has explained that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  <u>Village of</u>

---

[14]    53 P.S. §§ 11001-A, <u>et seq</u>.

[15]    53 P.S. § 10909.1.

Willowbrook, 528 U.S. at 564 (citations omitted). This Court has also recognized that "[t]he essence of the Equal Protection Clause is that, absent a rational basis for doing otherwise, the state must treat similarly situated persons alike." Marchese v. Umstead, 110 F. Supp. 2d 361 (E.D. Pa. 2000).

Defendants' sole rationale in challenging the sufficiency of HMI's equal protection claim is that HMI's Property is a current or former quarry, and therefore is not situated similarly to other properties in the Township. (Defendants' Mem. at 35-36.) This myopic view of the Complaint must be rejected. The law does not distinguish between quarries and other properties or among uses that are popular and those that are not. All are entitled to fair treatment.

Secondly, as alleged in the Complaint, other land in the Township also zoned for industrial use was wholly unaffected by the Rezoning. (Complaint, ¶ 34.) These industrial properties include the KYW transmission facility immediately adjacent to the Property. Even a cursory view of the zoning map reveals other tracts of land zoned for industrial uses. ("HVY" and "LIM"). (Defendants' Mem., Exhibit B.) That the HMI Property is the only industrial property which is a quarry is without moment. All of the other industrial properties in the Township may remain industrial (with other use permitted in the industrial zones). Only the HMI Property was singled out for severe restrictions.

Finally, defendants ignore that the Complaint sufficiently alleges other specific ways that defendants denied HMI equal protection under the law, for example:

- Defendants withheld normal preliminary land development cooperation only from HMI (Complaint, ¶ 86; Garrity Aff., ¶¶ 4, 10, 11, 13, 16);

- Defendants rejected reasonable offers of extension of time only from HMI (Complaint, ¶ 86; Garrity Aff., ¶ 11);

- Defendants claimed the retention pond shown on the preliminary plans in the corner of the Property zoned AA residential was not allowed (Complaint, ¶ 57), while on information and belief retention ponds in AA residential zoning do exist elsewhere in the township (Woodrow Aff., ¶ 5);

- Defendants made a pretextual denial of <u>only</u> HMI's preliminary plans; and defendants applied a "mock trial" <u>only</u> to HMI (Complaint, ¶ 86; Garrity Aff., ¶¶ 21, 22.)

Accepting the above allegations as true, as the Court must, defendants' motion to dismiss fails as to HMI's claim for denial of equal protection of the laws.

### B.    The Motion For Summary Judgment is Premature.

As the Supreme Court has clearly stated, unless a party has an opportunity for discovery, it may not be "railroaded" by a premature motion for summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). The Supreme Court has also held that "adequate time for discovery" must precede any entry of summary judgment. <u>Id.</u> at 322. Indeed, the very language of the Federal Rules of Civil Procedure makes it clear that summary judgment does not precede discovery, but follows it, being based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c).

Courts in the Eastern District of Pennsylvania also recognize that a plaintiff should not be "'railroaded' by a premature motion for summary judgment." <u>See</u> <u>Silfa v. Meridian Bank</u>, No. Civ. A. 98-4293, 1999 WL 199851, at *3 (E.D. Pa. Apr. 8, 1999) (quoting <u>Celotex Corp.</u>, 477 U.S. at 326). The leading treatises concur. Summary judgment litigants normally have had an opportunity to develop evidence on the issues. <u>See</u> <u>Moore's Federal Practice</u>, § 56.30[3][b] (3d ed. 2002). The Court of Appeals has held that courts are required to give a party opposing a motion for summary judgment adequate time for, and adequate

opportunity to obtain, discovery.  See Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988) (citing Celotex Corp., 477 U.S. at 322).

At this early stage of the case, there has been absolutely no discovery, and therefore defendants' motion for summary judgment is premature.  The Court should defer ruling on the motion until after the parties have had an opportunity to fully develop the facts of this case and can present the "full story" to the Court.

### C. Even if the Court Considers the Motion for Summary Judgment, It Should Be Denied Because There Are Genuine Issues of Material Fact.

Even if the Court were to consider defendants' motion for summary judgment timely, the motion fails because it is does not meet the legal standard which requires that there be no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c) (emphasis added).  Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The movant, the Supreme Court has stated, bears an exceptionally heavy burden.  First, the moving party must prove the absence of any genuine issue of material fact.  See Celotex Corp., 477 U.S. at 321.  Second, inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

In this Circuit, summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Williams v. Borough of West Chester, 891 F.2d 458, 459 (3d Cir. 1990) (citation omitted).  Summary judgment does not require the trial court to make findings of fact,

but only to engage in a threshold inquiry as to whether there is a need for a trial.  See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

### 1.    Count I:  Denial of Substantive Due Process.

Defendants claim that to state a substantive due process claim a plaintiff must show either that (i) the government's actions were not rationally related to a legitimate governmental interest or (ii) that the government's actions were motivated by bias, bad faith or improper motive.  (Defendants' Mem. at 23.)  Here, the Complaint sets out (and the attached exhibits and affidavits clearly confirm) that the Township's actions were intended to thwart development of the Property at all cost, in bad faith and with the improper motives of political and/or personal gain.  (See discussion, supra, at 2-17.)

The initial flaw in defendants' argument is their attempt to justify their actions on a piecemeal basis.  First, they claim that their behavior in rezoning the Property from heavy industrial use to large lot residential was proper.  (Defendants' Mem. at 23-28.)  Defendants then attempt to justify the numerous instances of their misconduct in denying the Preliminary Plans.  (Defendants' Mem. at 28-35.)  But this effort to bifurcate -- and thereby minimize -- the conspiracy misses the mark because HMI alleges one, overarching scheme to deprive it of its constitutionally protected right to use its Property in accordance with applicable zoning.  The Rezoning and subsequent plan denial were tools used by defendants to achieve the desired result.  Thus, this is not just a zoning case (Defendants' Mem. at 24), nor just a case about denial of preliminary plans.  (Defendants' Mem. at 35.)  This case involves the abuse of the land development process to impose invalid spot zoning on a property in violation of constitutional rights.  That is the heart of the due process violation.

In Thornbury Noble, Ltd., supra, the defendants tried a similar tactic, attempting

to treat two decisions of the government as "totally unrelated." 2002 WL 442827, at *3. The

court refused to do so, stating:

> Defendants would have [one] view their decision regarding
> plaintiff's alternate amended plan as if it were completely
> unconnected from plaintiff's prior submissions and interactions
> with the Board. I decline to do so.

Id. at *7 (emphasis added). This Court should similarly reject defendants' attempt to minimize

its wrongful conduct by treating each act as if it were an isolated incident rather than part of an

overall scheme to deprive HMI of its constitutional rights.

More importantly, countless issues of material fact preclude summary judgment.

For instance, while defendants claim the Revised Preliminary Plans failed to comply with

applicable ordinances (Defendants' Mem. at 29-31), HMI contends the plans were in

compliance. (Complaint, ¶¶ 56-60; Woodrow Aff., ¶¶ 4, 5, 7, 8, 11, 13.) Indeed, defendants set

forth many examples of purported non-compliance at pages 29 through 31 of their memorandum

that are all disputed by HMI. For instance:

- Citing to the Township Zoning Ordinance, §§ 116-35 and 116-48, defendants claim that a retention basin is not a permitted use in an AA Residential District. (Defendants' Mem. at 29.) However, §§ 116-35 and 116-48 make no mention whatsoever of retention basins, which on information and belief are used throughout the township. (Woodrow Aff., ¶ 5; Exhibit Z.)

- Citing to § 116-152(A)(4) of the Zoning Ordinance, defendants claim that HMI's plans did not provide the requisite specifications for an on-site sewage treatment plant. (Defendants' Mem. at 29.) That code citation requires plans to be submitted only "prior to the issuance of any building or zoning permit or certificate of occupancy," and this clearly is not a preliminary plan requirement. (Defendants' Mem., Exhibit C at § 116-152(A).)

- Defendants claim that the Sewage Facilities Planning Module was incomplete and deficient. (Defendants' Mem. at 30.)

However, a complete and fully approved module is not required at the preliminary plan stage; the developer need only have submitted an <u>application</u> for the module. (Defendants' Mem., Exhibit H at § 105-22(B)(7).)

- Defendants claim that sufficient and existing features like buildings, driveways, utilities, drainage facilities, topography, are not shown on the plan, in violation of § 105-21(B)(1)(n). (Defendants' Mem. at 30.) However, the Preliminary Plans do meet this statutory standard. (Woodrow Aff., ¶ 13.)

- Defendants claim that right-of-way information for Stenton Avenue was not included on the plan in violation of § 105-21.B.1.m. (Defendants' Mem. at 30.) However, this information <u>was</u> provided. (Defendants' Mem., Exhibit II.)

- Finally, defendants conclusorily list a number of areas in which they contend the Revised Preliminary Plans contained "design standard deficiencies." (Defendants' Mem. at 30-31.) However, none of these items is required under § 105-21 of the SALDO, which set forth the requirements for preliminary plans. (Defendants' Mem., Exhibit H at § 105-21.) Indeed, for most of these purported deficiencies, the Denial Resolution does not even cite to § 105-21 as the basis for the denial. (Defendants' Mem., Exhibit KK.)

In addition, defendants make several assertions, with no support whatsoever, regarding the level of cooperation afforded HMI. First, defendants assert that they followed their standard procedures with respect to HMI's Preliminary Plans. (Defendants' Mem. at 15.) HMI vigorously disputes this point; the total lack of cooperation provided by defendants, their frustration of the process and their insistence on denying the plans on short notice despite an offer of further extension of time were all part of the scheme to stop development of the Property. (Complaint, ¶ 49; Garrity Aff., ¶¶ 4, 10, 11, 13, 16, 17, 23.) Also, defendants submitted an Affidavit stating that they had notified HMI that they had no preference for what sanitary sewer option HMI chose. (Defendants' Mem., Exhibit MM.) HMI contends no such communication occurred. (Garrity Aff., ¶ 16.) Defendants also contend they gave notice to HMI

of the meeting at which HMI's request for a stormwater waiver was considered and denied (Defendants' Mem. at 11), but HMI also denies this. (Garrity Aff., ¶ 24.)

Defendants also contend that the EX-Extraction zoning, to which HMI's Property would now be subject, "permits a broad range of residential uses" (Defendants' Mem. at 7), when in fact it permits only one-acre minimum lot single-family housing. (Defendants' Mem., Exhibits D, E, F, G.) Likewise, while defendants claim (again with no factual basis) that the Rezoning is "logical, well-reasoned planning" (Defendants' Mem. at 26), HMI vigorously disputes this point, as it is inconsistent with the Township Comprehensive Plan, the Draft Comprehensive Plan, and the Township's own recently completed land-use study. (Exhibits I, J, K.) More importantly, the Rezoning itself was a pretext -- a device to stop HMI's plans.

The "trial" at which the Revised Preliminary Plans were denied is also in dispute. Defendants claim that the proceeding, including a court reporter, was conducted as a trial because of "intense" public interest (Defendants' Mem. at 34), yet they also contend that the court reporter was there due to concern over a lawsuit. (Id. at 17.) HMI, on the other hand, contends the proceeding was a one-of-a-kind "set-up," held without prior notice to HMI, solely intended to facilitate (and perhaps later defend) defendants' unconstitutional actions. (Complaint, ¶¶ 50-63; Garrity Aff., ¶¶ 21, 22.) In any event, a fact-finder could certainly conclude that whatever defendants may now claim, the "trial" was part of the scheme to present unlawful actions in a better light.

Perhaps most importantly, however, there is fundamental dispute over the motivation of defendants and whether their actions were willful, malicious, arbitrary and capricious. HMI respectfully submits that the facts averred in the Complaint and in the supporting exhibits and affidavits clearly give rise to an inference (at the very least) that

defendants acted in bad faith, capriciously, and solely for political gain when they denied the plans for Creekside Commons. Even defendants concede that these are normally jury issues (Defendants' Mem. at 23), and they certainly are in this case. Accordingly, summary judgment is not appropriate.

### 2.    Count II:  Denial of Procedural Due Process.

For the reasons set forth above in connection with defendants' motion to dismiss HMI's procedural due process claim, judgment against HMI on this point is clearly inappropriate. (See discussion, supra, at 23-26.)

### 3.    Count III:  Denial of Equal Protection.

As discussed above in connection with defendants' motion to dismiss HMI's equal protection claim and as conceded by defendants, a party's right to due process is violated when it is treated differently from those similarly situated with no rational basis. Here, the facts stated in the Complaint and presented here clearly establish that HMI was singled out for disparate and arbitrary treatment.

First, as discussed above, defendants concede that HMI's Property was the sole object of the Rezoning. The fact that HMI's Property was changed to a restrictive single-family zoning while every other industrial property in the Township was not rezoned is evidence of an equal protection violation which in and of itself would defeat defendants' motion.

But, even now, before any discovery, HMI has been able to identify other instances where it was singled out:

- Defendants withheld normal preliminary land development cooperation only from HMI. (Complaint, ¶ 86; Garrity Aff., ¶¶ 3, 4, 10, 11, 12, 13.)

- Defendants rejected reasonable offers of extension of time <u>only</u> from HMI. (Complaint, ¶ 86; Garrity Aff., ¶ 12.)

- Defendants claimed the retention pond shown on the preliminary plans in the corner of the Property zoned AA residential was not allowed (Complaint, ¶ 57), while on information and belief retention ponds in AA residential zoning do exist elsewhere in the township. (Woodrow Aff., ¶ 5.)

- Defendants made a pretextual denial of <u>only</u> HMI's preliminary plans; and defendants applied a "mock trial" <u>only</u> to HMI. (Complaint, ¶ 86; Garrity Aff., ¶¶ 21, 22.)

Because of the many material issues of fact genuinely in dispute as regards HMI's claims of denial of equal protection, defendants' motion for summary judgment should be denied.

### D.    <u>Rule 56(f) of the Federal Rules of Civil Procedure.</u>

Rule 56(f) of the Federal Rules of Civil Procedure states:

> **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). As the United States Supreme Court has stated, a plaintiff must not be "railroaded" by a premature motion for summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 323. Therefore, the Supreme Court has held that district courts must apply Rule 56(f) if the opposing party has not made full discovery. <u>Id.</u>; <u>see also</u> <u>Dowling</u>, 855 F.2d at 139 (observing that district courts must give a party opposing a motion for summary judgment an adequate opportunity to obtain discovery).

It is well-settled in this circuit that "[d]istrict courts usually grant properly filed Rule 56(f) motions 'as a matter of course.'" <u>St. Surin v. Virgin Islands Daily News, Inc.</u>, 21

F.3d 1309, 1312 (3d Cir. 1994) (citations omitted). The showing required of a party seeking additional time under Rule 56(f) is three-fold: the party opposing summary judgment must submit an affidavit identifying what information it seeks; how, if uncovered, that information might preclude summary judgment; and why it has not previously been obtained. <u>See</u> <u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 71 (3d Cir. 1989); <u>Silfa</u>, 1999 WL 199851, at *4-5.

As argued above, the Court should deny defendants' motion because there are numerous genuine issues of material fact. In the event, however, the Court does not find that HMI has presented evidence sufficient to establish genuine issues of material fact, then HMI requests that the Court permit it to take full discovery in accordance with Rule 56(f).[16]

Because discovery has not even commenced in this action, defendants' motion in the alternative for summary judgment is entirely premature. No party has taken discovery in this case because the parties have not yet had their Rule 26(f) or Rule 16(b) conferences. (Einhorn Aff., ¶ 5.) Specifically, HMI has not had the opportunity to depose the defendants and/or any third parties that may have information related to the allegations in the Complaint. (<u>Id.</u>, ¶ 8.) Likewise, HMI has not received any documents from defendants and/or any third parties. (<u>Id.</u>) These depositions and documents, which will reveal <u>inter alia</u> the numerous communications and discussions among the defendants, will be critical in developing the full parameters of defendants' wrongful actions. (<u>Id.</u>)

For instance, discovery will reveal the contours of defendants' motivations for the Rezoning and the denial of the Revised Preliminary Plans, which directly relate to HMI's substantive due process claims. (Einhorn Aff., ¶ 9.) Additionally, HMI will explore defendants'

---

[16]    In compliance with the requirements of Rule 56(f), HMI submits the Affidavit of Walter M. Einhorn, Jr. ("Einhorn Aff."), attached hereto as Exhibit AA.

discriminatory treatment of HMI's property and its development plans, such as how the treatment of HMI differed from the way other landowners have been treated. (Id.) This discovery, including discovery of third parties, is likely to reveal additional evidence of how defendants singled out HMI for bad faith treatment, and these facts material to HMI's equal protection claims. (Id.) Discovery will also reveal the full depth of defendants' procedural due process violations, such as why defendants staged a unique "mock trial" to deny the Revised Preliminary Plans, why they gave HMI no notice of the "mock trial" and why they refused HMI's numerous offers of an extension of time to resolve any perceived problems. (Id., ¶ 10.)

Accordingly, it would be inappropriate for the Court to grant summary judgment in favor of defendants. See Dowling, 855 F.2d at 139. At a minimum, the Court should enter an order permitting HMI to complete full discovery -- without limitation to the issues raised as examples in this argument -- before HMI must respond to any summary judgment motion filed by defendants. See, e.g., Silfa, 1999 WL 199851, at *4-5 (denying motion for summary judgment as unripe where discovery had not commenced and granting leave to renew following the close of discovery). An order to this effect would guarantee HMI a full and fair opportunity to develop a response to any motion for summary judgment filed by defendants.[17]

---

[17]     Defendants contend that no punitive damages can be awarded against the Township and the Board of Supervisors in their official capacities. (Defendants' Mem. at 36-37.) They do not contend, however, nor could they, that punitive damages are unavailable against the Supervisors in their individual capacities. Accordingly, although HMI does not oppose dismissal of the punitive damage claims against the Township and against the Supervisors in their official capacities, the punitive damage claims against the Supervisors in their individual capacities must remain.

## CONCLUSION

Defendants have failed to meet the legal standards for a motion to dismiss or a motion for summary judgment. For the reasons set forth above, HMI respectfully requests that the Court deny defendants' motion.

_____
Michael Sklaroff
Walter M. Einhorn, Jr.
Arleigh P. Helfer III
Corey Field
I.D. Nos. 03287, 48733, 84427, and 88650
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Plaintiff
Highway Materials, Inc.

Date: September 6, 2002

## CERTIFICATE OF SERVICE

I, Walter M. Einhorn, Jr., hereby certify that, on September 6, 2002, I caused

copies of the foregoing Memorandum Of Plaintiff Highway Materials, Inc. In Opposition To The

Motion Of Defendants Whitemarsh Township And Its Supervisors to be served via first-class

mail, postage prepaid, upon the following:


Harry G. Mahoney, Esquire
Deasey Mahoney & Bender Ltd.
1800 John F. Kennedy Boulevard, Suite 1300
Philadelphia, PA 19103-2978


Jonathan K. Hollin, Esquire
Powell Trachtman Logan Carrle Bowman and
 Lombardo, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406


_____
Walter M. Einhorn, Jr.