UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIGHWAY MATERIALS, INC. | : | |
| | : | CIVIL ACTION NO. 02-cv-3212 |
| v. | : | |
| | : | |
| WHITEMARSH TOWNSHIP, MONTGOMERY COUNTY, PA, et al. | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of Defendants' Response to Motion of Plaintiff Highway Materials, Inc. to Compel Answers to Questions Propounded During Depositions upon Oral Examination, it is hereby

**ORDERED**

that the Motion is **DENIED**.

BY THE COURT:

_____
J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGHWAY MATERIALS, INC. | : |
| | :  CIVIL ACTION NO. 02-cv-3212 |
| v. | : |
| | : |
| WHITEMARSH TOWNSHIP, MONTGOMERY COUNTY, PA, et al. | : |
| | : |

**DEFENDANTS' RESPONSE TO MOTION OF PLAINTIFF,
HIGHWAY MATERIALS, INC. TO COMPEL ANSWERS TO QUESTIONS
PROPOUNDED DURING DEPOSITIONS UPON ORAL EXAMINATION**

Defendants, Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and Thomas F. Zarko (hereinafter, "Defendants"), herewith answer the Motion of Plaintiff Highway Materials, Inc. to Compel Answers to Questions Propounded during Depositions upon Oral Examination. For the reasons set forth in the attached Memorandum of Law, which is incorporated herein by reference, Answering Defendants respectfully request that Plaintiff's Motion be denied.

DEASEY, MAHONEY & BENDER, LTD.


BY:_____
HARRY G. MAHONEY, ESQUIRE
MICHAEL L. BARBIERO, ESQUIRE
CRAIG M. STRAW, ESQUIRE
Attorneys for Defendants, Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and Thomas F. Zarko

Attorney I.D. Nos. 19609/82933/78212
Suite 1300
1800 John F. Kennedy Boulevard
Philadelphia, PA 19103-2978
(215) 587-9400

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIGHWAY MATERIALS, INC. | : | |
| | : | CIVIL ACTION NO. 02-cv-3212 |
| v. | : | |
| | : | |
| WHITEMARSH TOWNSHIP, MONTGOMERY COUNTY, PA, et al. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW CONTRA TO MOTION OF PLAINTIFF, HIGHWAY MATERIALS, INC. TO COMPEL ANSWERS TO QUESTIONS PROPOUNDED DURING DEPOSITIONS UPON ORAL EXAMINATION**

**I.   INTRODUCTION**

Defendants properly invoked the attorney-client privilege in response to Plaintiff, Highway Materials, Inc.'s ("HMI"), questions concerning confidential communications between named Defendants who are Supervisors in Whitemarsh Township and the Township's solicitor, Ross Weiss, Esquire. Counsel for Defendants made timely objections, which clearly set forth the attorney-client privilege. During the depositions of the three Supervisors, counsel for Defendants instructed the deponents not to answer questions, which sought communications protected by the attorney-client privilege. HMI's counsel posed questions which clearly sought information beyond the general nature of the Solicitor's role. In fact, those questions, when placed in context, clearly show that Plaintiff's counsel was delving into privileged communications.

**II.   FACTS**

Plaintiff, HMI, brought this action pursuant to 42 U.S.C. Section 1983, alleging various violations of its due process and equal protection rights in connection with Plaintiff's application for preliminary plan approval of a 54 acre parcel of ground located in Whitemarsh Township. Plaintiff operates a quarry which consists of three separate quarry holes. Hole number one has been filled in and Plaintiff sought Township approval for a 500,000 square foot office complex. The Plaintiff's

plans were denied by a resolution passed at a public meeting on March 21, 2002. At an earlier meeting, on February 28, 2002, the Board of Supervisors adopted ordinances creating a new zoning district and rezoning Plaintiff's property.

While Plaintiff's counsel has, for the most part, accurately recounted those portions of the depositions of William Rimel and Ronald DeRosa at which the dispute over attorney-client communications occurred, there is one portion of the Rimel deposition which was omitted. Also, Plaintiff's counsel did not have the transcript of Ann Younglove when he filed his Motion. In order to place the questions and answers of the three Defendants in proper context, Defendants will set forth more of the Rimel deposition and provide the actual questions and answers from the Younglove deposition.

    1.    <u>William Rimel - Deposition on March 21, 2003</u> (Exhibit "A")

    BY MR. EINHORN:

Q. What role does the township engineer play in the zoning and rezoning process?
A. It's an advisory role. I don't think he really interprets the legal aspects of it. It would be an advisory role as to perhaps whether it would be relatively safe or unsafe or engineeringly feasible to do what's being proposed.
Q. Did Mr. Zarko play that role in this particular rezoning? I mean -
A. I don't recall him being involved in this.
Q. In the rezoning part?
A. Yes.
Q. You mentioned that Mr. Weiss, the solicitor, plays a role. What role does the solicitor play?
A. Well, he would advise us on the legality of it. He would, obviously, construct the actual ordinance itself as our solicitor.
Q. I don't want you to tell me what Mr. Weiss told you, but you can tell me if he did play that role in this particular process.

>MR. MAHONEY: Objection. I'm not sure that he can tell you that. You're asking him generally what the solicitor does with regard to a rezoning - any communication with regard to what he actually did I think is privileged. So. I would instruct you not to answer that question.
>
>BY MR. EINHORN:
>
>Q. Let me put it this way: Did Mr. Weiss play a role in the rezoning of the DePaul property?
>
>MR. MAHONEY: Same objection. You're just going about it in a different way. Instruct you not to answer that question.
>
>MR. EINHORN I'm not asking him for attorney-client communication. I'm asking whether Mr. Weiss played a role in this process, and you're instructing him not to answer?
>
>MR. MAHONEY: If he played a role in this process, by the very definition of what he said he did, it would necessarily involve divulging that he did give instructions to this Board in terms of whether something was legal or not legal. So by that very definition, you are inquiring into what communications Mr. Weiss gave to the Board.
>
>MR. EINHORN: I totally disagree with that. Are you going to refuse to answer that question , sir?
>
>MR. MAHONEY: No, I'm instructing him not to answer the question.
>
>BY MR. EINHORN:
>
>Q. Are you going to follow -
>
>A. Based on my lawyer's instructions, I will not answer.

Rimel deposition, p. 28, l. 24 to p. 31, l. 10.

>BY MR. EINHORN:
>
>Q. Do you believe that half acre lots, residential zoning, would be appropriate if they would be compatible with the area?

A.  I don't know.

Q.  Do you recall in connection with the rezoning whether the Board of Supervisors requested any input from the township engineer?

A.  I do not recall.

Q.  How about the solicitor?

MR. MAHONEY:  Objection. Whether the Board of Supervisors requested input from the solicitor?

MR. EINHORN:  Right.

MR. MAHONEY:  Objection. Instruct the witness not to answer.

THE WITNESS:  I beg you pardon.

MR. MAHONEY:  I instruct the witness not to answer.

THE WITNESS:  Thank you.

MR. EINHORN:  On the basis of the attorney-client privilege?

MR. MAHONEY:  Yes.

MR. EINHORN:  You and I have a difference of opinion about what the attorney-client privilege protects.

MR. MAHONEY:  We very well might.

BY MR. EINHORN:

Q.  Did the township solicitor assist in the process that ended up with the rezoning of this property?

MR. MAHONEY:  Objection. The only assistance the township solicitor can give is his advice.

MR. EINHORN:  Okay.

MR. MAHONEY:  Therefore, it's an inappropriate question.

-4-

    MR. EINHORN:    I'm not asking for what the advice was. I'm asking whether you asked for or received advice.

    MR. MAHONEY:    The way you frame the question, given the definition of what a solicitor does, it invites going into what the solicitor said.

BY MR. EINHORN:

    Q.    Did the Board of Supervisors ask the solicitor to provide legal advice in connection with this rezoning process?

    MR. MAHONEY:    Objection. Instruct the witness not to answer.

BY MR. EINHORN:

    Q.    Did the solicitor provide legal advice in connection with the process of rezoning this property?

    MR. MAHONEY:    Objection. Instruct the witness not to answer.

Rimel deposition, p. 95, l. 8 to p. 97, l. 14.

    2.    <u>Ronald DeRosa - Deposition on March 26, 2003</u> (Exhibit "B")

BY MR. EINHORN:

    Q.    Now, we talked about discussions relating to the denial of the plans. Did you have any discussions with regard to the rezoning of the property, other than discussions at public meetings?

    MR. MAHONEY:    And other than discussions with counsel?

    MR. EINHORN:    Again, you can - - I believe that if he had discussion with counsel about this topic that I'm entitled to know that. I may not be entitled to know what was discussed, but I believe that I'm entitled to know about the existence of a discussion.

    MR. MAHONEY:    If he won't clarify the question, I will. The question being put to you, as far as I understand, is if there are discussions which you have had outside of the presence of counsel

regarding that issue, you can answer it. If it's with counsel, I'm instructing you not to answer.

MR. EINHORN: And I'll take what I can get now, and we'll deal with that later.

BY MR. EINHORN:

Q. Can you answer it?

A. Well, that's the question.

Q. I thought Mr. Mahoney said it pretty well. We'll exclude counsel for the time being. So the record is clear, I don't agree with that, but I'll exclude counsel for the time being. Did you have any discussions about the rezoning outside of public meetings?

A. No.

Q. Nothing in executive session, outside the presence of counsel? Well, strike that. Anything in the executive sessions?

MR. MAHONEY: Excuse me. If discussions in executive session included the solicitor, I'm instructing you not to answer it.

BY MR. EINHORN:

Q. Well, were there any discussions in executive session?

A. Can I answer?

MR. MAHONEY: Go ahead and answer that.

THE WITNESS: I just said, I can't – if discussions include the executive and include counsel, I can't answer it.

BY MR. EINHORN:

Q. All right. Did you ever seek the assistance of counsel in connection with this rezoning process of the township solicitor?

-6-

MR. MAHONEY: Seek the assistance of counsel? That is, solicit his opinion?

MR. EINHORN: Did he ever go to the township solicitor to ask for his help in this matter?

THE WITNESS: Did I? No.

BY MR. EINHORN:

Q. Do you know if the supervisors did?

MR. MAHONEY: Objection. To divulge anything like that would divulge attorney-client communication. I will instruct the witness not to answer.

MR. EINHORN: All right. It's your position that the existence of discussions is privileged?

MR. MAHONEY: No. What I'm saying to you is there's executive sessions. The solicitor is present at the executive session. You know that. So all the discussions in the executive session relating to this matter are privileged. By the very nature of your question, you're asking him to divulge if there were communications specifically relating to either, one, rezoning or land development or however you phrased the question. So by the very nature of the question, you're asking him to divulge the subject matter of those communications, and that's why I'm objecting.

MR. EINHORN: I couldn't disagree more. Is your position that any executive session discussions are privileged just because the solicitor is there?

MR. MAHONEY: If the solicitor is there and he is expressing any opinions whatsoever, if he is having a discussion with his client, i.e., the township, then those discussions are privileged, yes.

BY MR. EINHORN:

Q. Were there any discussions in executive session in which counsel was not involved relating to the rezoning?

A. Not that I can recall.

DeRosa Deposition, p. 95, l.1 to p. 98, l. 15.

    3.    <u>Ann Younglove - Deposition on April 18, 2003</u> (Exhibit "C")

BY MR. EINHORN:

Q.    Does the solicitor play a role in the rezoning process?

MR. MAHONEY:    Excuse me a second. When you say, "Does the solicitor play a role," any role whatsoever?

MR. EINHORN:    Yeah.

THE WITNESS:    Advising, an advisory role.

BY MR. EINHORN:

Q.    Did the solicitor play an advisory role in connection with the DePaul zoning?

MR. MAHONEY:    Objection. Instruct the witness not to answer.

MR. EINHORN:    I guess we're going to the judge after all.

MR. MAHONEY:    I guess we're going to have to.

BY MR. EINHORN:

Q.    Did you ever seek the assistance of the solicitor in connection with the DePaul rezoning?

MR. MAHONEY:    Objection. Instruct the witness not to answer.

BY MR. EINHORN:

Q.    Did you ever seek any legal advice from the solicitor in connection with the rezoning?

MR. MAHONEY:    Any rezoning?

MR. EINHORN:    With the DePaul rezoning.

MR. MAHONEY:    Objection. Instruct the witness not to answer.

BY MR. EINHORN:

Q.	What about the role of the township engineer, does he play any – let me back up to the solicitor. Other than the advisory role, does he play any other role?

MR. MAHONEY:	Generally.

THE WITNESS:	None that I can think of.

BY MR. EINHORN:

Q.	Okay. How about the engineer, does he play any role in the rezoning process?

A.	Generally not.

Q.	Well, do you recall any instance when he did?

A.	Not that I recall.

Q.	Do you recall any instance in which the solicitor played a role in the rezoning process?

MR. MAHONEY:	Any rezoning process?

MR. EINHORN:	Yeah.

MR. MAHONEY:	Go ahead and answer that.

THE WITNESS:	Other than advisory.

BY MR. EINHORN:

Q.	In which properties did he provide an advisory role?

MR. MAHONEY:    Objection. A specific property. I'm going to instruct her not to answer. Generally speaking, it's fine; but specific properties, no.

MR. EINHORN:    Just so the record is clear on that, I disagree with Mr. Mahoney's interpretation of the attorney-client privilege, and we will be seeking Court relief on that one and an order bringing

-9-

back these witnesses who have been instructed not to answer questions in which there was no, in my opinion, valid basis to do so. And if you could also just mark that page for –

MR. MAHONEY:   That would be fine.  I would join in that request that you mark that page.  Just so it's clearly understood, we've had a discussion about this before.  In fact, you sent me some correspondence and cited the case, and I don't agree with your interpretation that the questions you've asked, specifically with regard to this project, don't impinge upon the attorney-client privilege.  So on that basis, I've instructed this witness and the previous witnesses not to answer those specific questions, and we'll have to take it up with the Court, if necessary.

Younglove Deposition, p. 45, l. 23 to p. 49, l. 2.

BY MR. EINHORN:

Q. Was there an executive session meeting prior to that – immediately prior to that March 21st meeting?

A. I think there was.

Q. But you don't know what was discussed at that meeting?

A. I don't recall specifically what was discussed at that meeting.

Q. Well, do you recall anything about what was discussed.

A. I don't think I do.

Q. This is March – this is one year and one month ago?

A. Uh-huh.  I don't know – I don't have any specific recall.

Q. I take it, then, you don't recall ever seeking any input from the solicitor on this issue, on this issue, on the plans in any way, shape or form?

MR. MAHONEY:   Objection.  Instruct the witness not to answer.

BY MR. EINHORN:

> Q. Did you ever seek any advice from Mr. Weiss in connection with Mr. DePaul's plans?
>
> MR. MAHONEY: Objection. Instruct the witness not to answer.
>
> BY MR. EINHORN:
>
> Q. Did you ever have any discussions with Mr. Weiss about Mr. DePaul's plans?
>
> MR. MAHONEY: Objection. Instruct the witness not to answer.
>
> BY MR. EINHORN:
>
> Q. Do you recall any discussions at any time after the denial of the plans about the potential of litigation arising out of that decision?
>
> A. Not that I can recall.
>
> Q. How about before the decision to deny the plans?
>
> A. Not that I can recall.
>
> Q. Did you meet with Mr. Mahoney to prepare for this deposition today?
>
> A. Yes.
>
> Q. And how long did you meet with him?
>
> MR. MAHONEY: Excuse me a second. No, I'm not going to allow that question. Instruct the witness not to answer.

Younglove deposition, p. 113, l. 23 to p. 115, l. 18.

Defendants' counsel, throughout these depositions, attempted to be consistent. He did not object to the general nature of the duties of Ross Weiss, the Township solicitor or his employment as solicitor. However, whenever Plaintiff's counsel asked a question which required disclosure of communications from the Supervisors to the solicitor (e.g. did you/Township seek advice/assistance

-11-

from the solicitor on the DePaul rezoning/land development), counsel objected. Similarly, if questions were asked which requested the disclosure of communications in the nature of advice from Mr. Weiss to his client, defense counsel also objected.

### III. ARGUMENT

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). In Pennsylvania the attorney-client privilege in civil matters has been codified. 42 Pa.C.S.A. §5928, provides as follows:

> "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial of the client"

The traditional elements of the attorney-client privilege that identify communications that may be protected from disclosure in discovery have been set forth by the Courts of this Commonwealth, as follows:

> "1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either **(i) an opinion of law or (ii) legal services** or (iii) assistance in some legal proceedings, and (d) not for the purpose of committing a crime or tort; and 4) the privilege has been (a) claimed and (b) not waived by the client."(emphasis supplied).

Rhone-Poulenc Rohrer, Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir. 1994); See also, In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979).

The attorney-client privilege is intended to foster candid communications between legal counsel and the client so that counsel can provide legal advice based upon the most complete information possible from the client. Joe v. Prison Health Services, Inc., 782 A.2d 24, 31 (Pa. Commw. 2001). Further, the attorney-client privilege extends to governmental entities, and such entities may claim the privilege for communications between their attorney and their agents or employees who are authorized to act on behalf of the entities. Com., Dept. of General Services v. United States Mineral Products Co., 809 A.2d 1000, 1028 (Pa. Commw. 2002).

The law in Pennsylvania is well settled that the protected communication must be for the purpose of obtaining or securing legal advice. In re Ford Motor Company, 110 F.3d 954, 965 (3d Cir. 1997); See also, Rhone Poulenc, *supra*. In Upjohn, *supra*, the Court narrowed the scope of the attorney-client privilege as follows:

> "The protection of the privilege extends only to the communications and not to the facts. A fact is an entirely different thing. The client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Upjohn, 449 U.S. at 395-96 (1981); citing, Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (D.C. Pa. 1962).

Further, the attorney-client privilege precludes disclosure of communications between attorney and client and does not protect against disclosure of "peripheral" facts of the communication or the attorney-client relationship in general. Valenti v. Allstate Insurance Co., 243 F.Supp2d 200, 218 (M.D. Pa. 2003). Even when the underlying communication itself may be privileged, the general nature of the privileged matter, the occasion and circumstances of any communications and actual circumstances of the attorney-client relationship remain discoverable. Valenti, *supra*, citing, Stabilus

v. Haynsworth, Baldwin, Johnson and Greaves, 144 F.R.D. 258, 268 (E.D. Pa 1992)(observing the fact that communications with counsel in past disputes is not privileged communications).

In the instant case, HMI's inquiries, as to securing and obtaining legal advice by named Defendants, specifically as to the rezoning and land development, which are the subject of this litigation, clearly infringe upon the attorney-client privilege regarding confidential communications between the named Defendants and the Township solicitor. Specifically, HMI's inquiries, as to the involvement of the Township solicitor in the rezoning or consideration of HMI's development plans and whether the deponents had sought or received advice from the Township solicitor with respect to the rezoning and development plans, are inextricably intertwined with the substance and contents of confidential communications between attorney and client.

Plaintiff's counsel repeatedly went beyond the general nature of communications between Mr. Ross and his Township clients. For example, on page 29 of Mr. Rimel's deposition (Exhibit "A"), Mr. Rimel testified generally that Mr. Weiss, in his role as solicitor, would advise the Board on the legality of rezoning. Having the witnesses' statement as a predicate, he then asked Mr. Rimel if Mr. Weiss played that role in the process (i.e., advising on the legality of the rezoning of the HMI property). This question clearly sought information about a specific communication between the solicitor and his clients concerning the HMI rezoning.

Plaintiff's counsel seems to make the argument that as long as he does not ask what the solicitor or the clients said, he is not infringing on the attorney-client privilege. Following that reasoning to its logical conclusion, the following are likely follow-up questions if defense counsel had not objected.

    Q.    Did he play that role in this particular process?

      A.     Yes.

* * *

      Q.     So without telling me what he said, he advised you on the legality of the ordinance which created the EX-Extraction District?

      Q.     And he advised the other Supervisors as well?

      Q.     And he advised the Township Manager?

      Q.     So he advised all of you that this rezoning was legal or illegal?

      Q.     And he advised you on the legality of changing the zoning of the HMI property?

      Q.     So he advised you that the ordinance, changing the zoning of the HMI property was legal or illegal?

      Q.     Did you follow his advice?

      Q.     Without telling me what he said, did he advise you on the legal consequences of passing a resolution denying HMI's application for land development after you rezoned the property?

      Q.     So, he advised you that it was either legal or illegal?

The same sort of questioning would surely follow with each Township Supervisor or employee and clearly would be designed to divulge privileged communications. The fact that Plaintiff has not specifically listed the questions he would expect to ask in follow-up speaks volumes regarding his intentions.

      The general nature of the privileged matter at issue in this case is that of rezoning and land development. Thus, any questions pertaining to named Defendants seeking advice from the Township solicitor in regard to rezoning issues and land developments, in general, are not protected.

-15-

However, when Plaintiff's counsel, using prior answers of the witness, asks about communications on HMI's rezoning or HMI's land development plans, such communications are protected. When the named Defendants were asked general questions pertaining to the Township solicitor's role in rezoning and land development issues involving the municipality, the deponent answered without objection of counsel. Counsel for Defendants agree that HMI's inquiries as to general rezoning and land development issues and the general nature of the relationship between Defendants and Township solicitor do not fall within the purview of the attorney-client privilege. Plaintiff's questions, as phrased regarding the particular rezoning and HMI's plans, clearly went beyond general information and sought privileged communications.

Defendants have not asserted the affirmative defense of advice of counsel and as such any advice sought is not relevant to this matter. In addition, any such advice or opinions is clearly protected by the attorney-client privilege. Defendants have not taken any action to waive the attorney-client privilege as pertains to this matter. Rhone Poulenc, *supra* at 862.

Since the applicability of the attorney-client privilege turns on the facts of each case and determining the scope of protection in each case is a question of law, Defendants in the alternative request the following remedy. Upjohn, *supra*. If this court should find that the objections of counsel for Defendants were not appropriate, Defendants request that HMI submit to this Court a list of questions that it proposes to ask of recalled deponents and for this Court to rule on the applicability of the attorney-client privilege prior to reconvening depositions of said deponents. Alternatively, the witnesses could simply answer, in writing, any such pre-approved questions. Thus, the parties will not be infringing on the time of this Court in resolving any future conflicts pertaining to protections of the attorney-client privilege.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that Plaintiff's Motion be denied.

        Respectfully submitted,

        DEASEY, MAHONEY & BENDER, LTD.

BY:_____
    HARRY G. MAHONEY, ESQUIRE
    MICHAEL L. BARBIERO, ESQUIRE
    CRAIG M. STRAW, ESQUIRE
    Attorneys for Defendants, Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and Thomas F. Zarko

    Attorney I.D. Nos. 19609/82933/78212
    Suite 1300
    1800 John F. Kennedy Boulevard
    Philadelphia, PA 19103-2978
    (215) 587-9400

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.            :
                                   :    CIVIL ACTION NO. 02-cv-3212
        v.                         :
                                   :
WHITEMARSH TOWNSHIP, MONTGOMERY    :
COUNTY, PA, et al.                 :

## CERTIFICATE OF SERVICE

I, CRAIG M. STRAW, Esquire, hereby certify that a true and correct copy of Defendants' Response to Motion of Plaintiff to Compel Answers to Questions Propounded During Depositions upon Oral Examination was served this date, by first-class mail, on all counsel of record addressed as follows:

> Walter M. Einhorn, Jr., Esquire
> Ballard, Spahr, Andrews & Ingersoll, LLP
> 1735 Market Street, 51st Floor
> Philadelphia, PA 19103
>
> Kevan F. Hirsch, Esquire
> Kaplin, Stewart, Meloff, Reiter & Stein, P.C.
> 350 Sentry Parkway
> Building 640
> Blue Bell, PA 19422

Date: _____              _____
                                   CRAIG M. STRAW, ESQUIRE