UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.            :
                                   :     CIVIL ACTION NO. 02-cv-3212
        v.                         :
                                   :
WHITEMARSH TOWNSHIP, MONTGOMERY    :
COUNTY, PA, et al.                 :

ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of Defendants' Motion for Protective Order/Response to Plaintiff's Motion to Compel and any answer thereto, it is hereby

ORDERED

that Plaintiff's Motion to Compel is hereby DENIED and Defendants' Motion for Protective Order is GRANTED.  It is further

ORDERED

that Plaintiff shall return the August 7, 2001 Memorandum authored by Lawrence Gregan and all copies thereof to Defendants within five days of the date of this Order.  Further, Plaintiff shall be prohibited from utilizing any information obtained from the August 7, 2001 Memorandum authored by Lawrence Gregan and/or making any reference to this Memorandum during depositions or at trial in this matter.

BY THE COURT:

_____
ROBERT F. KELLY, J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.              :
                                        :     CIVIL ACTION NO. 02-cv-3212
       v.                             :
                                          :
WHITEMARSH TOWNSHIP, MONTGOMERY : 
COUNTY, PA, et al.                    :

DEFENDANTS' MOTION FOR PROTECTIVE ORDER/RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL DEPOSITION WITNESS LAWRENCE GREGAN TO ANSWER
QUESTIONS CONCERNING THE GREGAN MEMORANDUM

Defendants, Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann

D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and

Thomas F. Zarko, by their attorneys, herewith move this Honorable Court to compel the return of

the August 7, 2001 Memorandum authored by Lawrence Gregan as a privileged attorney-client

communication and, in support thereof, aver as follows:

          1.        On November 18, 2003, Plaintiff, Highway Materials, Inc. ("HMI"), deposed Mr.

Lawrence Gregan. (*See* relevant portions of Gregan Deposition Transcript attached hereto as Exhibit

"A").    Mr. Gregan is and was, during the relevant time period, the Township Manager of

Whitemarsh Township.

          2.        At Mr. Gregan's deposition, HMI attempted to ask questions concerning a

memorandum dated August 7, 2001 authored by Lawrence Gregan ("Gregan Memorandum"). (*See*

Exhibit "A").

          3.        Up until the deposition of Mr. Gregan, counsel for the Defendants was unaware that

HMI possessed this privileged and confidential document. Counsel for the Defendants vehemently

opposed and objected to HMI's line of questioning of Lawrence Gregan, which addressed the Gregan

Memorandum. (*See* Exhibit "A", pp. 82-95).

      4.     Specifically, counsel for HMI and the Defendants had the following exchange:

By Mr. Einhorn: (addressed to the witness)
Q.     Do you have any explanation why this was not produced to us in connection with the township's production of documents?

Mr. Mahoney: Objection.  Are you saying this was not produced?

Mr. Einhorn: Yes.

Mr. Mahoney: I don't necessarily agree with that, and this appears to be an attorney-client privilege matter because it does reference discussions, Ross [sic] meeting the manager, then it shouldn't have been disclosed, and if we held it back it was because it was attorney-client privilege, it is on the log.

Mr. Einhorn: I do not think it was.

...

Mr. Mahoney: At this particular point I think we are going to have to wait until we see the privilege log, number 1, and I would like to know where you got the document because it does appear to be an attorney-client privileged document.

Mr. Einhorn: I don't think it is my obligation at this point to tell you where we received the document.  I am producing it to you now.  You did not produce it to me for reasons that I don't quite understand.  Memos that look like this were produced throughout this litigation.

Mr. Mahoney: Let's reiterate my position on this.  In the second paragraph of this particular document there is a reference to a discussion between the solicitor and Mr. Gregan.  How you came upon this document I don't know, if it was produced by somebody else's working file I don't know that as well because as you remember Mr. Zarko was being represented by some other counsel before I got involved with Mr. Zarko, whether it was produced out of his file, I don't know.

     All I am telling you is this [is] an attorney-client privileged communication and it shouldn't have been delivered to you.

-2-

Mr. Einhorn: I disagree that this is not something that should be in the public record, but that being so, sir.

By Mr. Einhorn: (addressed to the witness)
Q. Do you have any explanation as to why this was not produced to us?

Mr. Mahoney: Other than the fact that it is an attorney-client communication, there is no other explanation, and I am going to direct the witness not to answer that.

(*See* Exhibit "A", pp. 82-85).

5.      After reviewing the transcript, it is clear that the transcript does not adequately reflect the exchange between counsel for HMI, Walter Einhorn, and counsel for Defendants regarding the acquisition of the privileged document. Specifically, when Mr. Einhorn was initially requested to provide counsel for Defendant with information as to how he had received the privileged document, Mr. Einhorn visibly bristled, squirmed and hesitated before responding in the following obstructive manner:

Mr. Mahoney: ...I would like to know where you got the document because it does appear to be an attorney-client privileged document.

Mr. Einhorn: I don't think it is my obligation at this point to tell you where we received the document. I am producing it to you now. You did not produce it to me for reasons that I don't quite understand. Memos that look like this were produced throughout this litigation.

(See Exhibit "A", p. 84).

6.      It was only after further debate that Mr. Einhorn offered the following explanation of where and how the privileged document was obtained.

Mr. Einhorn: I will tell you where it came from, it was in the files, in the township files back in 2001, and it was reviewed by Mr. Garrity's office in connection with the initial appeal of the zoning that was found to be deficient.

Mr. Mahoney: So you are telling me Mr. Garrity came upon an attorney-client privileged document, and despite the fact that it is clear on its face what it is and he made a copy of it.

(*See* Exhibit "A", p. 86).

7.    On March 14, 2003, Defendants, via hand-delivery, served HMI with a privilege log in the above-captioned matter. The Gregan Memorandum was not only privileged, but was purposely withheld from production of documents and identified on the Defendants' privilege log. (*See* Defendants' privilege log attached hereto as Exhibit "B", No. 1).

8.    The Gregan Memorandum was clearly identified as Number 1 on Defendants' privilege log, which, unlike HMI's privilege log provided to counsel for Defendants on November 20, 2003, was provided within weeks of service of written objections and actual production of documents. (*See* Exhibit "B").

9.    As indicated in the privilege log, the Gregan Memorandum was clearly identified as a privileged attorney-client communication. (*See* Exhibit "B", No. 1).

10.    Specifically, the Gregan Memorandum deals with a confidential communication that Mr. Gregan, as a client, had with Ross Weiss, Township Solicitor, for the purpose of securing legal advice on a possible course of action, which could or could not be taken by the Board of Supervisors. (See Exhibit "A", pp. 82-83). Commonwealth v. DuPont, 730 A.2d 970, 976 (Pa.Super. 1999), *petition for allowance of appeal denied*, 749 A.2d 466 (Pa. 2000); Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (3d Cir. 1994).

11.    On November 21, 2003, Defendants formally requested that Plaintiff and Plaintiff's counsel return the Gregan Memorandum and any copies in their possession to the Defendants immediately. (*See* Correspondence dated November 21, 2003 attached hereto as Exhibit "C").

-4-

12.    In addition, Defendants demanded that should HMI choose to disregard their request, a detailed description be provided, setting forth how, when and where HMI obtained this privileged document. (*See* Exhibit "C").

13.    In response to Defendants' November 21, 2003 correspondence and apparently upon direction of this Court to brief the matter, HMI filed with this Honorable Court and served Defendants with a Motion to Compel Deposition Witness Lawrence Gregan To Answer Questions Concerning The Gregan Memorandum ("HMI's Motion").

14.    As set forth in HMI's Motion to Compel, Mr. Bagley, counsel for HMI, acquired the Gregan Memorandum during a review of the Township's files regarding the zoning ordinance and zoning map amendments passed on October 18, 2001, which were part of the rezoning process. (*See* HMI's Motion, Ex. G).

15.    Mr. Joseph M. Bagley, Esquire, is an experienced attorney, who is a partner in the law firm of Wisler, Pearlstine, Talone, Craig, Garrity & Potash, L.L.P. and has been admitted to practice law in Pennsylvania since 1987. (*See* Martindale-Hubbell listing of Joseph M. Bagley, Esquire, attached hereto as Exhibit "D").

16.    Mr. Bagley's review of the Township files admittedly occurred at the Whitemarsh Township Building. (*See* HMI's Motion, Ex. H).

17.    During the review of the Township's file at the Township Building, Mr. Bagley "flagged" the Gregan Memorandum and any other relevant documents for photocopying. (*See* HMI's Motion, Ex. H).

18.    Admittedly, counsel for HMI was provided access to the Township's file for review while at the Township Building so that relevant documents could be identified and tabbed for

-5-

copying. There can be no dispute that counsel for HMI, Mr. Bagley, knew exactly what documents that he was receiving at the time of the review.

19.     This review of the Township's files was to accommodate HMI's intention to challenge the procedural validity of the Township's purported rezoning of HMI's property. (*See* HMI's Motion, Ex. H).

20.     Counsel for HMI admits that the Gregan Memorandum has remained in their file since its production on October 29, 2001. (*See* Exhibit "D", Bagley Affidavit). Despite having possession of this privileged document since October 29, 2001, HMI failed to identify the Gregan Memorandum in Plaintiff's Initial Disclosure or produce it in their discovery responses. (*See* HMI's Self-Executing Disclosure attached hereto as Exhibit "E").

21.     Pursuant to Rule 26(a), a party must provide to other parties:

> (B) a copy of, or a description by category and location of, all documents, ... that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses... F.R.Civ.P. 26(a)(1)(B).

22.     HMI, through their own admissions, intended to utilize the Gregan Memorandum in support of their claims against Defendants. However, despite their clear intention to utilize the Gregan Memorandum, HMI failed to produce the document in response to Defendants' discovery requests. (*See* HMI's Motion, pp. 8-14).

23.     In fact, HMI failed to challenge the identification of the Gregan Memorandum as a privileged document, despite clear knowledge that Defendants had asserted protection of this document pursuant to the attorney-client privilege. (*See* Exhibit "B", No. 1).

24.     Counsel for HMI crossed the line of aggressive advocacy for their client and undertook unprofessional and unethical tactics, when they laid this trap. Specifically, HMI failed to identify the Gregan Memorandum in its Initial Disclosures and Responses to discovery requests, failed to introduce or utilize this alleged "crucial document" at the depositions of Township representatives, which preceded the deposition of Mr. Gregan, and failed to attack the classification of this document as privileged despite clearly being identified in Defendants' privilege log.

25.     Mr. Bagley and his partner, James Garrity, Esquire, lead counsel for Plaintiff HMI during the rezoning and land development, are solicitors of other Townships, including Springfield Township, Lower Gwynned Township and Cheltenham Township and thus are experienced and knowledgeable about legal representation of municipalities.

26.     Upon Mr. Bagley, an experienced attorney's, initial observation of the Gregan Memorandum, Mr. Bagley, counsel for HMI, had an ethical and professional duty and obligation to notify the Township immediately and return the Gregan Memorandum, which on its face is clearly identifiable as a confidential communication subject to the protections of a privileged document.

27.     Specifically, attorneys who receive "materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the materials were not intended for the receiving lawyer" are subject to ethical responsibilities pursuant to the American Bar Association Standing Committee on Ethics and Professional Responsibility. Herman Goldner Company, Inc. v. Cimco Lewis Industries, 58 Pa.D&C.4th 173 (2002); Sampson Fire Sales, Inc. v. Jerrell Oaks, et al, 201 F.R.D. 351 (M.D. Pa 2001); *citing* ABA Form Op. 92-368 (Nov. 11, 1992).

28.     However, after receiving the Gregan Memorandum, a confidential communication, counsel for HMI admittedly and purposely did not notify the Township or counsel for the Township of the inadvertent disclosure or their possession of this privileged document. (*See* HMI's Motion).

29.     In addition to the ethical and professional obligation to notify and return the Gregan Memorandum upon initial receipt, counsel for HMI, upon notification that the document was designated and clearly identified as a privileged communication in Defendants' privilege log, had a duty to inform counsel for Defendants that they were in possession of this document so that the issue could be properly raised and decided at an earlier point in time during discovery.

30.     Since counsel for Defendant, upon notification of HMI's possession of the privileged communication [Gregan Memorandum], asserted its objection to the use of the privileged communication and requested the return of the privileged communication, the inadvertent disclosure of the privileged communication does not warrant waiver of any privilege.

31.     In the interests of justice, HMI should not be able to avail itself of evidence that its counsel obtained in contravention of ethical and professional obligations.

WHEREFORE, Defendants Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog , Michael A. Zeock and Thomas F. Zarko pray that this Honorable Court enter a Protective Order compelling Plaintiff to return any and all copies of the Gregan Memorandum and prohibiting Plaintiff from making any use or reference to this document in depositions or at trial as reflected in the attached Order.

DEASEY, MAHONEY & BENDER, LTD.


BY:_____
  HARRY G. MAHONEY, ESQUIRE
  MICHAEL L. BARBIERO, ESQUIRE
  CRAIG M. STRAW, ESQUIRE
  Attorneys for Defendants, Whitemarsh
  Township, the Board of Supervisors of
  Whitemarsh Township, Ann D.
  Younglove, Ronald J. Derosa, William P.
  Rimel, Peter P. Cornog and Michael A. Zeock

  Attorney I.D. Nos. 19609/82933/78212
  Suite 1300
  1800 John F. Kennedy Boulevard
  Philadelphia, PA 19103-2978
  (215) 587-9400

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIGHWAY MATERIALS, INC. | : | |
| | : | CIVIL ACTION NO. 02-cv-3212 |
| v. | : | |
| | : | |
| WHITEMARSH TOWNSHIP, MONTGOMERY | : | |
| COUNTY, PA, et al. | : | |

BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR PROTECTIVE ORDER/RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL

## I.    FACTS

The facts are adequately set forth in the accompanying Motion for Protective Order/Response to Motion to Compel and need not be repeated here.

## II.    ARGUMENT

### A.    The Gregan Memorandum is a communication clearly afforded the protection of the attorney-client privilege.

Federal Rule of Evidence 501 specifies that state law applies on the issue of whether a privilege is applicable in any given instance. It is axiomatic, under Pennsylvania law, that the application of the attorney-client privilege requires confidential communications made in connection with providing legal services. Commonwealth v. DuPont, 730 A.2d 970, 976 (Pa.Super. 1999), *petition for allowance of appeal denied*, 749 A.2d 466 (Pa. 2000). The attorney-client privilege exists to promote the attorney-client relationship by safeguarding the client's confidential disclosures and the attorney's advice. The party asserting the privilege has the initial burden to prove it is properly invoked and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege. Joyner v. Southeastern Pennsylvania Trans., 736 A.2d 35, 38 (Pa.Commw. 1999); Joe v. Prison Health Services, Inc., 782 A.2d 24, 31 (Pa.Commw. 2001).

The necessary elements of the attorney-client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a)is a member of the bar of a court, or his or her subordinate, and (b) in connection with his communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. <u>Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.</u>, 32 F.3d 851, 862 (3d Cir. 1994).

### 1.    Attorney-Client Relationship

It cannot be disputed that Mr. Gregan, as the Township Manager, the Board of Supervisors for Whitemarsh Township, the Assistant Township Manager and the Township Engineer have an attorney-client relationship with the Township Solicitor, Ross Weiss.  HMI's Motion to Compel ignores the privileged substance of the Gregan Memorandum and mischaracterizes the Defendants' assertion of privilege as merely being the assertion of the privilege based on sending the document to an attorney. (*See* HMI's Motion, p. 7).  This was not the position asserted by counsel for Defendants at Mr. Gregan's deposition (*See* Exhibit "A", pp. 82-95), nor is it Defendants' position now.  HMI fails to recognize that the Gregan Memorandum explicitly denotes a conversation that Mr. Gregan, Township Manager, had with Ross Weiss, Township Solicitor, for the purposes of obtaining legal consultation and advice and contains the actual advice of the attorney.  Thus, it is self-evident that the Gregan Memorandum on its face is a privileged document.

### 2.     Privileged Communication

Specifically, the document references a discussion between the Township Solicitor and Mr. Gregan and a possible course of action regarding the rezoning of a property, which could or could not be taken by the Board of Supervisors. (*See* Exhibits "A", p. 84 and "C").  This communication is clearly privileged.  The Gregan Memorandum relates this discussion to other persons who share the privilege and to whom disclosure is reasonably necessary to further the purpose of the legal advice and was not voluntarily disclosed to third parties. *See* <u>Ins. Co. of North America v. Superior Court for the County of Los Angeles</u>, 108 Cal.App.3d 758, 766 (1980).  HMI's contention that the Gregan Memorandum was written to the Board of Supervisors to solicit legal advice is a clear misrepresentation of the document.  Specifically, the Board of Supervisors, Assistant Township Manager and Township Engineer, as clients of the Township Solicitor, Ross Weiss, are instrumental in accomplishing the purpose for which the Township Solicitor was consulted by Mr. Gregan, i.e. rezoning of property.  This type of communication between clients and their counsel rests at the very heart of the attorney-client privilege.

In addition, the Gregan Memorandum directly addresses a communication between a client and attorney for the purpose of securing legal advice as to a possible course of action that could or could not be taken by the Board of Supervisors in regards to the rezoning of property.  HMI cannot dispute that the possible course of action, i.e. rezoning of property, involved all clients listed on the Gregan Memorandum.  As such, the communication directly relates to the legal advice set forth by counsel for the Township.  Therefore, the legal advice of the Township Solicitor as set forth in the Gregan Memorandum was properly identified in Defendants' privilege log as an attorney-client communication protected by the attorney-client privilege.

### 3.     Assertion of Attorney-Client Privilege

Lastly, HMI cannot dispute the fact that Defendants at the early stages of discovery in this action specifically designated the Gregan Memorandum as an attorney-client communication subject to the protection of a privileged document. (*See* Exhibit "B", No. 1).  At the time HMI discovered that the Gregan Memorandum was listed as Document Number 1 of Defendants' privilege log, it was incumbent on HMI's counsel to disclose the fact that they had received a copy of this document.  In addition, HMI's counsel, who cannot dispute that they had prior knowledge of the Defendants' assertion of privilege, should have properly brought this issue to the attention of Defendants and this Honorable Court when they initially   received Defendants' privilege log on March 14, 2003.  However, HMI's counsel made a conscious decision to withhold this information from Defendants until the deposition of Mr. Gregan, which was conducted on November 18, 2003, which was in clear violation of their ethical and professional obligations.

### B.     HMI had an ethical and professional obligation to inform Defendants of the receipt of the privileged communication and return the privileged communication in compliance with Defendants' request.

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The privilege is intended to garner "full and frank communication between attorneys and their clients and therefore promote broader public interest in the observance of law and the administration of justice." Id.

It is well-settled in Pennsylvania that an attorney receiving confidential documents has ethical and professional obligations that may surpass the limitations implicated by the attorney-client privilege and that apply regardless of whether the documents in question retain their privileged status. Herman Goldner Company, Inc. v. Cimco Lewis Industries, 58 Pa.D&C.4th 173 (2002);

Sampson Fire Sales, Inc. v. Jerrell Oaks, et al, 201 F.R.D. 351 (M.D. Pa 2001).  Attorneys who

receive "materials that on their face appear to be subject to the attorney-client privilege or otherwise

confidential, under circumstances where it is clear that they were not intended for the receiving

lawyer" are subject to ethical responsibilities pursuant to the American Bar Association Standing

Committee on Ethics and Professional Responsibility. Sampson, 201 F.R.D. at 359; *citing* ABA

Form Op. 92-368 (Nov. 11, 1992).  Specifically,

> It is the view of the Committee that the receiving lawyer, as a matter
> of ethical conduct contemplated by the precepts underlying the Model
> Rules, (a) should not examine the materials once the inadvertence is
> discovered, (b) should notify the sending lawyer of their receipt and
> (c) should abide by the sending lawyer's instructions as to their
> disposition.

ABA Form Op. 92-368 (Nov. 11, 1992).  Further , the court in Sampson held

> [t]his court's opinion, heightens the level of civility and respect
> among lawyers, and establishes a professional courtesy which is
> compatible with vigorous advocacy and zealous representation.  In
> this regard, information that is clearly identified as confidential in
> nature or appears on its face to be subject to the attorney-client
> privilege under circumstances that make it clear it was not intended
> for the receiving lawyer, should not be examined.  The receiving
> lawyer should immediately notify the sending lawyer and abide by his
> instructions with respect to inadvertently disclosed privileged
> material.

In the instant matter, the confidential nature of the Gregan Memorandum, on its face,  should

have been easily ascertainable by counsel for HMI.  Specifically, the Gregan Memorandum identifies

a confidential communication between the Township Solicitor, Ross Weiss, and the Township

Manager, Lawrence Gregan.  After seeking legal consultation with the Township Solicitor, Mr.

Gregan disbursed the information solely to Township personnel, who share the attorney-client

relationship with the Township Solicitor, as discussed *supra*.  Since the Gregan Memorandum on

its face is clearly identifiable as a confidential communication pertaining to a possible course of action that could or could not be taken by the Board of Supervisors, counsel for HMI was obligated to notify the Township of its inadvertent disclosure.

Specifically, Mr. Joseph Bagley, Esquire, an experienced attorney, who has been practicing law in Pennsylvania for over fifteen years, conducted a document-by-document review of the Township's files relating to the newly-adopted zoning ordinance and the new zoning district created thereby. (See HMI's Motion, Ex. H). The Township did not simply provide HMI with a copy of all documents, but instead provided counsel for HMI access to the records for the purpose of conducting a thorough review. Upon reviewing the files, Mr. Bagley "flagged" the Gregan Memorandum for photocopying. At that time, Mr. Bagley knew exactly what he was getting and failed to notify the Township of the inclusion of this privileged document in the record review. As an experienced and knowledgeable attorney, Mr. Bagley, upon discovery of the clearly confidential communication, had an ethical and professional obligation to immediately take the document to Mr. Robert Ford, Assistant Township Manager, and notify him of the inadvertent disclosure of the privileged document. Clearly, this would not have been onerous or burdensome to Mr. Bagley since the record review was being conducted at the Township Building. Based on the affidavits provided by HMI, counsel for HMI completely or blatantly ignored their obligations and are now attempting to utilize evidence that should not properly be in their possession.

Despite having possession of this privileged document since October 29, 2001, and intending to utilize the document in support of their claims, counsel for HMI failed to identify the Gregan Memorandum in Plaintiff's Initial Disclosure pursuant to Federal Rule of Civil Procedure 26. (*See* Exhibit "E" and HMI's Motion). In addition, counsel for HMI failed to produce the document in

response to Defendants' discovery requests.  Further, counsel for HMI cannot dispute that, as of March 14, 2003, it knew that Defendants were asserting that the Gregan Memorandum was a privileged communication protected by the attorney-client privilege. (*See* Exhibit "B").  Despite counsel for HMI's awareness of the inadvertent disclosure of the privileged document, they failed to notify counsel for Defendants as to the disclosure or the facts surrounding the inadvertent disclosure of the privileged communication [Gregan Memorandum] and failed to attack the classification of this document as privileged pursuant to Defendants' privilege log in clear violation of their ethical and professional obligations.  In fact, counsel for HMI deliberately withheld from counsel for Defendants their acquisition and intention to utilize this clearly identified privileged document prior to Mr. Gregan's deposition on November 18, 2003.  It is apparent that HMI intentionally withheld this privileged document until the deposition testimony of Mr. Gregan in an unethical attempt to discredit Mr. Gregan.

Counsel for HMI crossed the line of aggressive advocacy for their client and undertook unprofessional and unethical tactics, when they laid this trap.  Specifically, counsel for HMI acquired the Gregan Memorandum through unethical and unprofessional means,  failed to identify the Gregan Memorandum in its Initial Disclosures and Responses to discovery requests, failed to introduce or utilize this alleged "crucial document" at the depositions of Township representatives, which preceded the deposition of Mr. Gregan, and  failed to attack the classification of this document as privileged despite clearly being identified in Defendants' privilege log.  Based on the above, the actions of counsel for HMI, Walter Einhorn, Esquire, and counsel for HMI in the rezoning and land development process, were questionable, at best, and unethical, at worst.  For these reasons and in the interests of justice, HMI should not be allowed to benefit from their failure to comply with

ethical and professional obligations, which protect the privileged communications that occur between an attorney and his client.

**C.    The inadvertent disclosure of the Gregan Memorandum did not waive the attorney-client privilege.**

Once the attorney-client communication has been voluntarily disclosed to a third party, the privilege is deemed waived.  Commonwealth v. Chmiel, 738 A.2d 406 (Pa. 1999), Joe v. Prison Health Services, Inc., et al., 782 A2d 24 (Pa.Commw. 2001).  However, the courts have made exceptions  when the disclosure of a privileged communication is inadvertent.

Courts in the Eastern District of Pennsylvania have endorsed a five-part balancing test to determine whether a party has waived the attorney-client privilege through inadvertent disclosure of confidential information.  Murray v. Gemplus, 217 F.R.D. 362, 365 (E.D. Pa. 2003).  Some courts hold that this rule "best reconciles the principles underlying the attorney-client privilege with the realities of document production in complex litigation," Bank Brussels Lambert v. Credit Lyonnais, 160 F.R.D. 437, 443 (S.D.NY. 1995).  Further, "[i]t accounts for the errors that inevitably occur in modern, document intensive litigation, but treats carelessness with privileged material as an indication of waiver."  Gray v. Bicknell, 86 F.3d 1472, 1484 (C.A.8 1996).

Nonetheless, courts in the Eastern District of Pennsylvania consistently engage in a multi-factor analysis to judge whether a party acted reasonably to safeguard the privilege or so recklessly that waiver should be implied.  In making this determination, a court must consider the following five factors: (1) reasonableness of the precautions taken to prevent the inadvertent disclosure in view of the extent of document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) any delay and measures taken to rectify the disclosure; (5) whether the overriding

-8-

interests of justice would or would not be served by relieving the party of its errors. *See* <u>Fidelity and Deposit Co. of Maryland v. McCulloch</u>, 168 F.R.D. 516 (E.D. Pa. 1996); <u>McGreevy v. CSS Indus, Inc.</u>, No. 95-CV-8063, 1996 WL 412813 (E.D. Pa. July 17, 1996);  <u>Rotelli v. 7-Up Bottling Co.</u>, Civ.A.No. 93-6957, 1995 WL 234171 at *2 (E.D. Pa. Apr. 19, 1995); <u>Advanced Medical, Inc. v. Arden Medical Sys., Inc.</u>, No. 87-3059, 1988 WL 76128 (E.D. Pa. July 18, 198); <u>ICI Americas Inc. v. John Wanamaker of Philadelphia</u>, No. 88-1346, 1989 WL 38647 (E.D. Pa. April 18, 1989).

Although the Third Circuit has not explicitly adopted the balancing test, there is case law that implies that it would adopt this approach.  In <u>Redland Soccer Club, Inc. v. Department of the Army of the United States</u>, 55 F.3d 827, 856 (3d Cir. 1995), the Court held that the district court did not err when it held the plaintiff's disclosure of five documents was inadvertent, but did not constitute a waiver of the attorney-client privilege.  In so holding, the court stated that  "[t]he importance of documents is relevant to the balancing of interests." <u>Id.</u>  In addition, the court in <u>Westinghouse Electric Corp. v. Republic of the Philippines</u>, 951 F.2d 1414 (3d Cir. 1991), stated, in dicta, that "when the disclosure is . . .  inadvertent . . . it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials." <u>Id.</u> at 1431.  Thus, <u>Redland Soccer</u> and <u>Westinghouse</u> imply that the Third Circuit would adopt the balancing test to determine whether an inadvertent disclosure of privileged attorney-client information constitutes a waiver.

In determining whether reasonable precautions were undertaken by Defendants to avoid inadvertent disclosures, the court should consider the circumstances surrounding the document review and the actions of counsel for HMI. The reasonableness of the precautions taken is determined in light of the total document production burden. Clearly a large number of inadvertent

-9-

disclosures in comparison to a small number of documents reviewed or produced will weigh in favor of waiver as it is evidence of "lax, carelessness and inadequate procedures." <u>Prebilt</u>, 1988 WL 99713 at *4. In addition, a tight discovery schedule, which creates time pressures, weighs against finding waiver. *See* <u>United States v. Keystone Sanitation Co.</u>, 885 F. Supp. 672, 676 (M.D. Pa. 1994).

When addressing the extent of the disclosures, the court must consider whether the opposing party has already had the opportunity to digest the privileged information or has merely "glanced at an open file drawer or designated documents for filing." <u>McGreevy</u>, 1996 WL 412813 at *2 (*citing* <u>Advanced Medical</u>, 1988 WL 76128, at *3). In other words, if the opposing party has learned the "gist" of the document's contents, the court will be more inclined to find a waiver of the privilege. The rationale is that "when disclosure is complete, a court order cannot restore confidentiality, and, at best, can only attempt to restrain further erosion." <u>Advanced Medical</u>, 1988 WL 76128 at *3. For example, the court in <u>McCulloch</u> recognized minimal disclosure when an inadvertently produced document revealed only the nature of some of the services performed by counsel and did not disclose any "significant facts concerning the substance of any legal opinion." <u>McCulloch</u>, 168 F.R.D. at 522.

Next, a party's prompt attempt to reclaim, or block use of inadvertently produced materials is critical in ascertaining the intent to waive under the reasonable precautions test. The response time is the interval between knowledge of the breach in confidentiality, and the request for relief, normally in the form of a motion for protective order. It is generally recognized that the more prompt the response, then the less amount of reliance the adversary may put on the materials. *See* A. Rodgers, New Insights on Waiver and the Inadvertent Disclosure of Privileged Materials: Attorney Responsibility as the Governing Precept, 47 Fla. L. Rev. 159, 174 (1995). While there is no set time limit before a court will deem a waiver to have been made, courts are more inclined to

find a waiver when the attorney knows that the adversary is in possession of privileged documents and does nothing for an extended period of time. *See* <u>Manufacturers & Traders</u>, 522 N.Y.S.2d at 1005 (noting that protective order sought two business days after the inadvertent disclosure was discovered reasonable); <u>Advanced Medical</u>, 1988 WL 76128 at *3 (holding 2 ½ month delay reasonable).

Lastly, the court must consider whether the overriding interests of justice would or would not be served by relieving the party of its errors. The final factor is a "catch-all" and allows a court to consider any "special circumstances" that would justify relieving the producing party of their error. One such special circumstance is the recipient's reliance on the privileged material. Thus, if the recipient has used the privileged information as a cornerstone of its litigation or discovery strategy, the courts are less likely to uphold the privilege. *See* <u>Bud Antle, Inc. v. Grow-Tech Inc.</u>, 131 F.R.D. 179 (N.D. Cal. 1990) (waiving privilege in light of fact that defendants indicated a strong reliance on inadvertently produced document in support of their defense in patent infringement action).

### 1.    Reasonable Precautions Limited the Number and Extent of Disclosures

In the instant matter, upon request of counsel for HMI to review all files regarding the zoning ordinance and zoning map amendments passed on October 18, 2001, the Township, in an attempt to accommodate counsel for HMI, made those documents readily available for review. Specifically, on October 25, 2001, counsel for HMI made their request to review the documents. Without delay, the Township made the documents available to counsel for HMI on October 29, 2001. Upon counsel for HMI's discovery of the Gregan Memorandum during the document and record review, counsel for HMI had a duty to immediately notify Defendants of their discovery and discontinue their

examination of that document. <u>Sampson</u>, 201 F.R.D. at 359; *citing* ABA Form Op. 92-368 (Nov. 11, 1992); *see also*, Argument B, *supra*. However in contravention of their obligation, counsel for HMI readily admits that the Gregan Memorandum was identified for photocopying purposes and subsequently placed in their file, without notification to counsel for Defendants. Further, the Gregan Memorandum was the only privileged document inadvertently disclosed at the October 29, 2001 document review as asserted by counsel for Defendant in the March 14, 2003 privilege log. Lastly, counsel for HMI cannot dispute that no attempt was made to utilize the Gregan Memorandum, a privileged document, which was in the possession of HMI since October 29, 2001, until the November 18, 2003 Deposition of Mr. Gregan. Based on the extremely limited number of inadvertently disclosed privileged documents [one], the failure of HMI to make any attempt to utilize the privileged document and the number of documents being made readily available for counsel's review, the first three factors weigh heavily toward a finding of non-waiver of privilege.

### 2. Delay and Measures Taken to Rectify Inadvertent Disclosure

Counsel for Defendants did not become aware of HMI's possession of the Gregan Memorandum until the deposition of Mr. Gregan on November 18, 2003. This delay is directly attributed to the actions or inaction of counsel for HMI. Specifically, counsel for HMI asserts that they acquired the Gregan Memorandum on October 29, 2001, in response to their potential challenge of the Township's rezoning of HMI property, and that the document has been in their file since that date. (*See* HMI's Motion, Ex. H). Despite having possession of this privileged document since October 29, 2001, and intending to utilize the document in support of their claims, HMI failed to identify the Gregan Memorandum in Plaintiff's Initial Disclosure pursuant to Federal Rule of Civil

Procedure 26. (*See* Exhibit "E" and HMI's Motion, pp. 8-14).  In addition, HMI failed to produce the document in response to Defendants' discovery requests.  Lastly, counsel for HMI clearly had possession of this document when counsel for Defendants served their privilege log on March 14, 2003, which clearly identified the Gregan Memorandum as Document Number 1. (*See* Exhibit "B").  Despite counsel for HMI having clear possession of the Gregan Memorandum at the time of receiving Defendants' privilege log, counsel for HMI failed to assert a challenge as to the privileged status of the document and failed to notify counsel for Defendants that they were already in possession of this confidential and privileged document.  Based on counsel for HMI's failure to notify Defendants of their possession of the Gregan Memorandum, counsel for Defendants was unaware of this fact until the time of Mr. Gregan's deposition.

At Mr. Gregan's deposition, counsel for Defendants vehemently objected to the introduction of the Gregan Memorandum based on the document's classification as a privileged document. (*See* Exhibit "A").  In addition to the objections raised at Mr. Gregan's deposition, counsel for Defendants made an immediate attempt to reclaim the privileged document by correspondence to counsel for HMI dated November 21, 2003. (*See* Exhibit "C").  In response to Defendants' attempt to reclaim the privileged document, counsel for HMI filed a Motion to Compel, which is being addressed by Defendants in the within Motion for Protective Order. (*See* HMI's Motion).  Therefore, despite counsel for HMI's obstructions, ethically and professionally, counsel for Defendants have undertaken immediate actions to reclaim the privileged document.

### 3.    Interests of Justice

Counsel for HMI has admitted that the Gregan Memorandum has been in their file since October 29, 2001. (*See* HMI's Motion, Ex. H).  Despite having possession of this privileged

document and its alleged importance to the claims, counsel for Plaintiff has failed to utilize this "crucial document" until the November 18, 2003 deposition of Mr. Gregan. In addition, counsel for HMI alleges that this "crucial document" contradicts the sworn testimony of three Supervisors and Mr. Gregan, himself. (*See* HMI's Motion, p. 14). Although counsel for HMI stresses the importance of this document to their case and to the assistance it will lend to the jury in determining the facts in this matter and credibility of the Defendants, HMI's actions contradict their assertion since they failed to question Supervisors Rimel, Younglove and DeRosa about the Gregan Memorandum directly.

Despite the obstructive nature of HMI's actions, counsel for Defendants clearly undertook all reasonable precautions to prevent the inadvertent disclosure and utilization of the privileged communication identified as the Gregan Memorandum. Specifically, the Gregan Memorandum was clearly identified as Document Number 1 of Defendants' privilege log, counsel for Defendants, upon notification, took immediate action to prevent the use of the Gregan Memorandum at Mr. Gregan's deposition, counsel for Defendants made an immediate effort to reclaim the Gregan Memorandum from HMI, and HMI failed to comply with any ethical and professional obligations in a direct attempt to discredit Defendants. For these reasons and in the interests of justice, Defendants have maintained the attorney-client privilege as to the Gregan Memorandum.

III.    <u>**CONCLUSION**</u>

Defendants respectfully request that the Court enter an Order in the form attached requiring

Plaintiff to return any and all copies of the requested document and prohibiting the use and/or any

references pertaining to the privileged document.

DEASEY, MAHONEY & BENDER, LTD.


BY:_____
        HARRY G. MAHONEY, ESQUIRE
        MICHAEL L. BARBIERO, ESQUIRE
        CRAIG M. STRAW, ESQUIRE
        Attorneys for Defendants, Whitemarsh
        Township, the Board of Supervisors of
        Whitemarsh Township, Ann D. Younglove,
        Ronald J. Derosa, William P. Rimel, Peter P.
        Cornog and Michael A. Zeock

        Attorney I.D. Nos. 19609/82933/78212
        Suite 1300
        1800 John F. Kennedy Boulevard
        Philadelphia, PA 19103-2978
        (215) 587-9400

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.                        :
                                               :        CIVIL ACTION NO. 02-cv-3212
        v.                                     :
                                               :
WHITEMARSH TOWNSHIP, MONTGOMERY                :
COUNTY, PA, et al.                             :

CERTIFICATE OF SERVICE

I, Harry G. Mahoney, Esquire, hereby certify that Defendants Whitemarsh Township, the

Board of Supervisors of Whitemarsh Township, Ann D. Younglove, Ronald J. Derosa, William P.

Rimel, Peter P. Cornog, Michael A. Zeock and Thomas F. Zarko's Motion for Protective

Order/Response to Plaintiff's Motion to Compel was served this date on all counsel of record

addressed as follows in the manner indicated::

BY HAND DELIVERY

Walter M. Einhorn, Jr., Esquire
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

BY FIRST CLASS MAIL

Kevan F. Hirsch, Esquire
Kaplin, Stewart, Meloff, Reiter & Stein, P.C.
350 Sentry Parkway
Building 640
Blue Bell, PA 19422

Date:                                          _____
                                               HARRY G. MAHONEY, ESQUIRE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.                    :
                                           :        CIVIL ACTION NO. 02-cv-3212
        v.                                 :
                                           :
WHITEMARSH TOWNSHIP, MONTGOMERY            :
COUNTY, PA, et al.                         :

CERTIFICATION OF GOOD FAITH

Pursuant to L.R.C.P. 26.1(f), the undersigned, counsel for moving Defendants, hereby certifies and attests that he has communicated with counsel for Plaintiff regarding the discovery matter contained in the foregoing discovery motion in an effort to resolve the specific discovery dispute at issue, and further, despite all counsels' good faith attempts to resolve the dispute, he has been unable to do so.


CERTIFIED TO THE COURT BY:


_____
HARRY G. MAHONEY, ESQUIRE

DATE: