

 **TOWNSHIP**

616 GERMANTOWN PIKE · LAFAYETTE HILL, PA 19444-1821
TEL: 610-825-3535          FAX: 610-825-9416

SS36
**BOARD of SUPERVISORS**

William E. Kramer - Chairman
Ann Younglove - Vice Chairman
William P. Rimel, III
Elizabeth W. Graf
Ronald J. DeRosa

**TOWNSHIP MANAGER**

Lawrence J. Gregan

## FAX TRANSMITTAL

| DATE:  August 1, 2001 | Page 1 of 23 |
|---|---|

FAX TO:    Ross Weiss, Esq., Township Solicitor
Cozen & O'Connor
Auto #1

FAX TO:    Thomas F. Zarko, P.E., Township Engineer
CKS Engineers, Inc.
Auto #2

FROM:    Lawrence J. Gregan, Township Manager

RE:    **Ex-Extraction District Zoning Proposal**

| | | |
|---|---|---|
| PLEASE CALL | | FOR YOUR APPROVAL |
| X   FOR YOUR INFORMATION | | X   YOUR COMMENTS, PLEASE |
| PLEASE REPLY | | PLEASE MAIL SIGNED COPY |

Larry is out of the office but asked me to send this to you today.

Lenore


EXHIBIT
P-80
12/8/03  FK

IF ALL PAGES HAVE NOT BEEN RECEIVED, PLEASE CALL OR FAX US.

c:\my documents-ln\faxes\rw-tz.doc

*"A GREAT PLACE TO LIVE AND WORK"*

WHITEMARSH TOWNSHIP
## MEMORANDUM

August 1, 2001

To:     Robert A. Ford, Assistant Township Manager
        Ross Weiss, Esq , Township Solicitor
        Thomas F. Zarko, P.E . Township Engineer

From:   Lawrence J. Gregan, Township Manager

Re:     **EX-Extraction District Zoning Proposal**

---

Attached are draft revisions to the Zoning Code regarding establishment of an EX-Extraction District, including:

✓ 1.     Draft zoning provisions for an EX-Extraction District;

✓ 2.     Draft revisions to LIM/LIM-X District regulations to delete the LIM-X District and extraction use; and

✓ 3.     Draft revisions to the Heavy/Heavy-X zoning regulations to delete the Heavy-X District, the extraction use and the additional regulations related to extraction.

In conjunction with creating the new EX-Extraction District and eliminating the LIM-X and Heavy-X Districts, we would need to consider the following zoning changes:

✓ 1.     Rezoning Heavy-X District to EX-Extraction; and

✓ 2.     Rezoning the LIM-X District to EX-Extraction.

Further, we should retain the A-Residential Zoning District along Flourtown Road and consider whether or not to rezone the KYW property which is currently zoned Heavy Industrial to a residential district. ↳ *I THOUGHT YOU WANTED THIS EX.*

Please review this material and let me have your comments so that we can prepare the appropriate documents for the Board's consideration. Thank you.

LJG:lf
Enclosures

c:\my documents-lf\memos\ford.doc

*8/2*
*Larry — my Comments are as noted.*

TFZ-00234

§ 116-145. Legislative intent.

In expansion of the declaration of legislative intent contained in § 116-2, it is hereby declared to be the intent of this Article with respect to industrial zones to establish reasonable standards for the height and size of buildings, the area and dimensions of yards and open spaces, and the provisions of facilities and operation of industries to minimize traffic congestion, noise, glare, vibration, air pollution, water pollution and fire and safety hazard in EX Extraction District. It is the further intent to provide for the rehabilitation of extractive uses when completed.

§ 116-146. Authorization of map amendments; scope.

The Board of Supervisors may authorize as an amendment to the Zoning Map the designation of an area as an EX Extraction District. In an EX Extraction District, the following regulations shall apply.

§ 116-147. District area.

No Extractive district shall be less than 20 acres.

§ 116-154. Permitted Uses. *[handwritten: 148]*

In an EX Extraction district, a building may be erected altered or used and a lot may be erected, altered or used, and a lot may be used or occupied for any to the following purposes and no other:

A. Extraction of mineral deposit, stockpiling, the processing of the removed materials and on-site operations appurtenant to mineral extraction as set for the in article XXI, S 116-156.

B. Any use permitted in Article V, § 116-35, following Rehabilitation, as defined in §116-157.4 *[handwritten: /56]*

116-149. Use Regulations - Extractive uses.

A. Lot area. No EX Extraction district lot size shall be less than twenty acres.

*[handwritten in circle: District AREA converted 20AC lot size 2AC]*

B. Lot area coverage and yard regulations.

(1) Principal and accessory buildings shall not cover more than 40% of the lot area.

(2) No building or structure may be erected closer than 200 feet to any residential district; open areas shall be landscaped, in accordance with a landscape plan showing the location, species and size of trees and shrubs and other proposed landscaping, which plan shall include proposals for screening adjacent residential areas and shall be submitted to and approved by the Shade Tree Commission prior to issuance of a building permit.

(3) No side or rear yard shall be required for the side or rear of a building or structure abutting on an existing railroad right-of-way except as provided in Subsection B(2) above.

impenetrable living fence, such as multiflora rose, may be substituted for chain link fence. Appropriate warning signs shall be mounted or posted along the fence at intervals of not more than 100 feet.

D.     Internal circulation. An adequate internal circulation pattern of streets shall be maintained between excavation and processing areas. Use of public streets shall not be permitted for hauling between extractive and processing areas except where required in connection with such pattern or for access to vehicular traffic originating from or destined to points beyond the limits of such excavation site and processing areas.

E.     Slope of excavation. No slope shall be maintained exceeding the normal limiting angle of repose of the material in which the excavations or extraction is being made. No undercutting shall be permitted within the setback area except for tunnels to provide transportation of materials between extractive and processing areas.

F.     Lateral support. All operations shall be conducted with sufficient lateral support to be safe with respect to hazard to persons, physical damage to adjacent lands or improvements, or damage to any street, sidewalk, parking area or utility, by reason of slides, sinking or collapse.

G.     Stockpiles. Stockpiles shall not exceed 75 feet in height and shall not be located closer than 150 feet from any district boundary line or from the center line of any street, except where a railroad is the district boundary line or where the contiguous district is a district in which extraction is permitted. All reasonable precautions shall be taken to prevent any materials or wastes deposited upon any stockpile from being washed, blown or otherwise transferred off the site by normal causes or forces.

H.     Drainage. All drainage from the site of extractive operations shall be controlled by dikes, barriers or drainage structures sufficient to prevent any silt, debris or other loose materials from filling any existing drainage course or encroaching on streets or adjacent properties.

I.     Control of vibration. No ground vibration caused by blasting or machinery shall exceed the limits established by the Act of July 10, 1957, P.L. 685, as amended, 73 P.S. §§ 164-168, and the rules and regulations adopted thereunder, with the exception that no blasting shall cause a peak particle velocity greater than 1:0 inch per second, measured at any property line or at the center line of any street.

J.     Reports. The owner shall submit and maintain on a current basis a list of all reports, except financial reports, filed with federal, state, regional or county officials, including dates and agency with which filed. Copies of any reports of records, except financial reports, required to be submitted to federal, state, regional or county officials or agencies pursuant to any laws or regulations shall be made available to the township upon request.

116-15 Rehabilitation and conservation requirements. The following provisions shall apply to all extractive operations:

A.     The owner shall, within two years from the date of this chapter  submit a plan which shall include descriptions and plans for after-use for all of the land affected.

*too vague ?*

B.     Plans for rehabilitation uses may include, without limitation, the following after-uses among others:

(1)     Open areas suitably graded and covered with suitable shrubs, grasses or trees.

(2)     Recreation lands, ponds and lakes.

(3)     Agriculture of any type.

(4)     Sites for residential uses in accordance with the applicable provision of Article VII (AAA Residential District), SS116-43 et.seq.

C.     Rehabilitation, except residential use, shall commence within one year following the completion or the discontinuance for a period of one year of an extractive operation (or the completion of the excavation of a portion of an entire operation which can feasibly be restored separately from other portions of the operation and which is not necessary to the operation). Such rehabilitation shall be completed within five years from the date the rehabilitation commenced, except where a longer period of time is specifically authorized as part of the rehabilitation program.

D.     Rehabilitation shall include, without limitation:

(1) removal of all debris, temporary structures and stockpiles.

(2) A layer of arable soil of sufficient depth to sustain grass, shrubs and trees shall be provided in those parts of the operation where feasible to do so.

(3) Grass, shrubs and trees shall be planted thereon within six months after the providing of arable soil.

(4) where the excavation cannot reasonably be drained by gravity flow, provided that adequate provision shall be made to avoid stagnation, pollution and the danger of improperly controlled release of such water from the site.

ADEQUATE provisions for their Drainage flow from the sites, which shall not DETRIMENTALLY impact adjoining property.

E.     Upon receipt of the rehabilitation plans, the township shall review the plans to ensure compliance with all provisions of the Zoning Ordinance. Upon approval thereof, the township shall issue a certificate indicating approval of the plans as submitted or amended, and the approved plan shall be permanently filed in the official records of the township.

F.     Plans may be amended from time to time by approval of the township upon application by the owner.

TFZ-00237

G.   Final rehabilitation shall conform to zoning regulations at the time of implementation.

H.   Where applicable federal, state, regional or county regulations are more restrictive than the foregoing, such regulations shall apply in addition to the requirements of the township.

116-157 Application and review proceedure.   No extraction shall commence in a district in which extraction is permitted but which has not been previously quarried unless a use and occupancy permit is issued. Application to the township for such permit shall include:

A   Detailed plans of the proposed operation, including engineering, landscaping, screening, traffic and circulation, parking and architectural designs for the facilities to be used; these plans shall provide for control of water, light, noise, water pollution, air pollution, waste disposal and any other hazards.

B 2   A contour plat, drawn to the scale of 100 feet to the inch and a contour interval of 10 feet, showing current field topography, including location of water courses, of the tract intended for the proposed operation and estimated thickness of overburden and mineral bearing strata in the tract intended for proposed operation.

C.   The rehabilitation and conservation plans described in Section 116-156

D.   Bonds. A performance bond may be required by the township in an amount determined by the township to be sufficient to insure rehabilitation in accordance with the provisions of the plan of rehabilitation as submitted pursuant to this chapter. With the approval of the township and for such period or periods as may be specified, an owner may be permitted to post its own bond without corporate surety.

TFZ-00238

*AMEND TO HVY INDUSTRIAL*
*Delete HVY + X*

**§ 116-145. Legislative intent.**

In expansion of the declaration of legislative intent contained in § 116-2, it is hereby declared to be the intent of this Article with respect to industrial zones to establish reasonable standards for the height and size of buildings, the area and dimensions of yards and open spaces, and the provisions of facilities and operation of industries to minimize traffic congestion, noise, glare, vibration, air pollution, water pollution and fire and safety hazard in HVY and HVY-X Industrial Districts. It is the further intent to provide for the rehabilitation of extractive uses when completed.

**§ 116-146. Authorization of map amendments; scope.**

The Board of Supervisors may authorize as an amendment to the Zoning Map the designation of an area as an HVY Industrial District or as an HVY-X Industrial District for the location of an industrial development. In an HVY or HVY-X Industrial District, the following regulations shall apply.

**§ 116-147. District area.**

No industrial district shall be less than 20 acres.

**§ 116-148. Dimensional requirements; additional standards.**

A.   Lot area. No industrial lot size shall be less than two acres.

B.   Lot area coverage and yard regulations.

(1)   Principal and accessory buildings shall not cover more than 40% of the lot area.

(2)   No building or structure may be erected closer than 200 feet to any residential district; open areas shall be landscaped, in accordance with a landscape plan showing the location, species and size of trees and shrubs and other proposed landscaping, which plan shall include proposals for screening adjacent residential areas and shall be submitted to and approved by the Shade Tree Commission prior to issuance of a building permit.

(3)   No side or rear yard shall be required for the side or rear of a building or structure abutting on an existing railroad right-of-way except as provided in Subsection B(2) above.

(4)   Front yard. There shall be a front yard on each lot, located across from an industrial or commercial zone of not less than 20 feet in depth except as provided in § 116-153.

(5)   Side yards. On each interior lot there shall be two side yards having an aggregate width of not less than 40 feet, neither side yard having a width of less than 15 feet, except as provided in Subsection B(2) and (3) above and in § 116-153.

(6)   On each corner lot, there shall be two side yards having an aggregate width of not less than 40 feet, the side yards abutting the street having the width of not less than 25 feet and the side yard not abutting the street having a width of not less than 15 feet, except as provided in Subsection B(2) and (3) hereof, and in § 116-153.

(7)   Rear yards. There shall be a rear yard on each lot, the depth of which shall not be less than 20 feet, except as provided in Subsection B(2) and (3) hereof and in § 116-153.

C.   Maximum height of buildings. No building shall exceed one foot in height for each one foot of setback from the property line or ultimate right-of-way line, whichever is closer to the building, and no building shall exceed 120 feet in height exclusive of equipment, devices and appurtenances, such as stacks, tanks, silos, elevators or air-pollution control equipment.

D.   Control of dust, dirt, smoke, vapors and gases. No emission shall be made which can cause any damage to health, to animals or to vegetation or to other form of property

or which can cause any detrimental soiling at any point outside the operations. Table I, Chapter V, Industrial Hygiene Standards, Maximum Allowable Concentrations, Air Pollution Abatement Manual, Manufacturing Chemists Association, 1951, Washington, D.C. shall be used as a guide in determining what is a toxic gas.

E.     Control of radioactivity or electrical disturbances. There shall be no activities which emit dangerous or harmful radioactivity or electrical disturbance on or beyond the lot line.

F.     Control of odors. There shall be no emission of odorous gases or other odorous matter in such quantities as to be offensive on or beyond the lot line or which exceeds the standards of Table III (odor threshold), Chapter V, Industrial Hygiene Standards, Maximum Allowable Concentrations, Air Pollution Abatement Manual, Manufacturing Chemists Association, 1951, Washington, D.C. Any process which may involve the creation or emission of any odors shall be provided with a secondary safeguard system, so that control will be maintained if the primary safeguard system should fail.

G.     Control of glare and heat. Any operation producing intense glare or heat shall be performed within an enclosed building or behind a solid fence in such a manner as to be completely imperceptible from any point on or beyond the lot line.

H.     Control of noises. At no point on or beyond the boundary of a residential or commercial district shall the sound-pressure level of any operation exceed the maximum of that permitted.

Sound Levels

Maximum Permitted Sound Level
(decibels)

| Octave Band (cycles per second) | Along Residential District Boundaries (Re: 0.0002 microbars) | At Any Other Point on Lot Boundary (Re: 0.0002 microbars) |
|---|---|---|
| 0 to 75 | 72 | 79 |
| 75 to 150 | 67 | 74 |
| 150 to 300 | 59 | 66 |
| 300 to 600 | 52 | 59 |
| 600 to 1,200 | 46 | 53 |
| 1,200 to 2,400 | 40 | 47 |
| 2,400 to 4,800 | 34 | 41 |
| Above 4,800 | 32 | 39 |

I.     Conformity to federal, state, regional and local standards. Any use permitted under the provisions of this chapter shall conform to appropriate federal, state, regional and local standards relative to water or air pollution, particle emission, noise, electrical disturbances, waste disposal, light, glare, heat, vibration, radioactivity and outdoor storage of materials.

§ 116-149. Traffic to and from streets.

Provision shall be made for safe and efficient ingress and egress to and from streets and highways serving the site. All means of access to any tract in an HVY ~~or HVY-X~~ Industrial District shall be so located and designed as to minimize the effect on existing traffic and adjacent land uses. All access and internal circulation streets shall be constructed or treated so as to be substantially dust-free and mud-free. A traffic circulation and control plan shall be prepared and filed with the township for approval. The township may require the owners in an HVY ~~or HVY-X~~ District to provide traffic control by various means when vehicles are entering or crossing streets for the safe movement of vehicular and pedestrian traffic.

§ 116-150. Signs.

Signs in an industrial district shall be regulated in accordance with Article XXVIII of the Whitemarsh Township Code, as amended.

§ 116-151. Off-street parking and loading.

Adequate off-street parking and loading shall be provided at all times, but requirements for same shall not be less than those specified in Article XXVI, relating to off-street parking and loading, as contained in the Whitemarsh Township Code (Chapter 116). No parking area shall be permitted within the required minimum front yard of any lot in an industrial district, nor closer than 100 feet to a residential district.

§ 116-152. Application and review by Planning Commission; approval or disapproval by Board of Supervisors.

A.      Plans for any use in an industrial district shall be submitted to the Planning Commission prior to the issuance of any building or zoning permit or certificate of occupancy, as provided in Article XXVI and such plans shall include, among other things, the following:

(1)     A plot plan of the lot showing the location of all present and proposed buildings, drives, parking lots, waste disposal facilities and other constructional features on the lot; and all buildings, streets, alleys, highways, streams and other topographical features of the lot and within 200 feet of any lot line.

(2)     Architectural plans for any proposed building and/or addition.

(3)     A description of the industrial operations proposed in sufficient detail to indicate the effects of those operations in producing traffic congestion, noise, glare, air pollution, water pollution, fire hazards or safety hazards.

(4)     Engineering and architectural plans for the handling and disposal of sewage and industrial waste.

(5)     Engineering and architectural plans for the handling of any excess traffic congestion, noise, glare, air pollution, water pollution, fire hazard or safety hazard.

(6)     Designation of the fuel proposed to be used and any necessary architectural and engineering plans for controlling smoke.

(7)     The proposed number of shifts to be worked and the maximum number of employees on each shift.

(8)     Landscaping plan for all front yards, side yards and rear yards which shall show the location, species and size of trees and shrubs and area to be in lawn, and which plan shall be submitted to the Shade Tree Commission for approval prior to the issuance of any permit.

(9)     Any other data that the Planning Commission may require.

B.     The Planning Commission shall review all such plans and data submitted to them and shall submit such plans and data with its recommendations thereon to the Board of Supervisors for final approval.

C.     Upon receipt of such plans and data, and recommendations thereon by the Planning Commission, the Board of Supervisors shall have the power of approval or disapproval of such plans. The Secretary of the Board of Supervisors shall notify, in writing, the Zoning Officer of its final decision and any special conditions of its approval.

D.     As a guide for recommendations by the Planning Commission, and for the final approval or disapproval by the Township Supervisors, the following provisions shall be considered:

(1)     The plan is consistent with the Comprehensive Plan for the orderly development of the township with the purpose of this chapter to promote the health, safety, morals and the general welfare of the township.

(2)     The appropriate use of the property adjacent to the area included in the plan will be safeguarded.

(3)     The development will consist of a harmonious grouping of buildings, service and parking area circulation and open spaces, planned as a single unit, in such manner as to constitute a safe, efficient and convenient industrial site.

(4)     The uses to be included will be limited to those permitted in § 116-155 of this article.

(5)     There is adequate provision made for safe and efficient pedestrian and vehicular traffic circulation within the boundaries of the site.

(6)     Provision is made for safe and efficient ingress and egress to and from public streets and highways serving the site without undue congestion to or interference with normal traffic flow within the township.

(7)     Adequate off-street parking and loading space will be provided in accordance with Article XXVI and §§ 116-149 and 116-151 and as an integral part of the plan.

(8)     All buildings within the development shall be served by a central sanitary sewage disposal system.

(9)     If the development is to be carried out in progressive stages, each stage shall be so planned that the foregoing requirements and intent of this chapter shall be fully complied with by the development at the completion of any stage.

§ 116-152 Expansion.

Where any business or industry existing in an industrial district is made nonconforming by adoption of this chapter, by reason of existing lot coverage or by reason of any one or more of the following: existing front, rear, side yard or setbacks, then the provisions of Article XXVII regulating nonconforming uses shall not apply, and in that event, such business or industry may expand in any one or more directions to the ultimate right-of-way line of any street and to the property line of property held in single and separate ownership and zoned "industrial" at the time of enactment of this chapter, except where such street or property line is a residential district boundary line, expansion or change of a nonconforming use within the setback area shall be permitted only under the provisions of a special exception.

§ 116-154. Right to continue or expand.

Nothing herein shall be interpreted or construed to restrict any industry or business existing within an HVY or HVY X Industrial District at the adoption of this chapter from

continuing or expanding, subject to the provisions of this chapter, within such district or within such new industrial districts as may be created from time to time.

§ 116-155. Use regulations.

A.    A building may be erected, altered or used, and a lot or premises may be used for any lawful purpose; however, the following shall not be permitted except as an accessory use customarily incidental to a permitted use:

Abattoirs

Acetylene gas manufacture

Ammonia, bleaching powder and chlorine manufacture

Arsenal

Automobile dismantling or junk establishment, unless carried on in an enclosed building

Bakery, wholesale

Beryllium processing

Blast furnace

Brewing

Celluloid manufacture

Coke oven

Commercial advertising on billboards, except advertising of a business or industry conducted on the premises

Creosote treatment or manufacture

Distillation of bones, coal, wood, petroleum, refuse or grain

Dwellings, except such as are for the residence of a caretaker, watchman or custodian on the same lot with the principal use to which it is accessory, and are located at least 10 feet from any such building

Dyestuff manufacture

Fat rendering

Fireworks or explosive manufacture

Fish smoking and curing

Glue, size or gelatin manufacture

Incineration, reduction, storage or dumping of slaughterhouse refuse, rancid fats, garbage, dead animals or offal

Lampblack manufacture

Oil cloth or linoleum manufacture

Oiled goods manufacture

Oil, turpentine or varnish manufacture

Organic fertilizer manufacture

Petroleum or asphalt refining

Plating works

Printing ink manufacture

Pyroxylin manufacture

Retail commercial

Soda and soda compound manufacture

Steel mill

Stockyard and piggery

Sulphuric, nitric or hydrochloric acid manufacture

TFZ-00243

Tallow, grease or lard manufacture or refining, tanning, curing or storage of leather, rawhide or skins

Tar distillation or manufacture

Vinegar manufacture

Wool pulling or scouring

Yeast plant

Any other use which is or may be, in comparable degree to any of the foregoing, noxious or offensive by reason of odor, dust, fumes, smoke, gas, vibration, illumination or noise, or which is or may be dangerous to the public health, welfare, safety or which constitutes or may constitute a public nuisance or hazard, whether by fire, explosion or otherwise

B.      Extraction of mineral deposits, stockpiling, the processing of the removed materials and on-site operations appurtenant to mineral extraction shall not be permitted uses in an HVY Industrial District, but shall be permitted in an HVY-X District as hereafter set forth in § 116-156.

C.      Private-use heliport, subject to the provisions of § 116-33.1, shall be permitted, when authorized as a special exception. [Added 11-17-1983 by Ord. No. 481]

§ 116-156. Additional regulations.

In an HVY-X Industrial District the following additional regulations shall apply:

A.      Setback. No extraction shall be conducted closer than 200 feet to the boundary of any district other than a district in which extraction is permitted or to the center line of any street, whichever is closer to the extraction, nor closer than 400 feet to the point of intersection of the center line of two streets. The setback area shall not be used for any other use in conjunction with extraction except access streets (pursuant to Subsection D of this section), berms, screening, directional signs, public notice signs identifying the excavation, business signs (in conformity with Article XXVII of this chapter and identifying the occupant) and structures in conformity with the provisions of § 116-148B.

B.      Landscaping and screening. Except where a railroad is a district boundary line, there shall be a berm of a minimum height of 15 feet and maximum height of 50 feet. Slope of sides of the berm shall not exceed a ratio of 1:1. Berms shall be planted and dust and erosion control measures shall be taken as may be approved by the United States Soil Conservation Service. There shall also be planting sufficient to screen the extractive industry operation. Planting and berm shall begin at a point not closer to the street than the ultimate right-of-way line. No berm shall be constructed closer than 50 feet to a district in which extraction is not permitted.

C.      Fencing. Chain link fences at least six feet in height, surmounted by three strands of barbed wire, shall be required within the setback area at a point not closer than the ultimate right-of-way line, to be maintained in a constant state of good repair. An impenetrable living fence, such as multiflora rose, may be substituted for chain link fence. Appropriate warning signs shall be mounted or posted along the fence at intervals of not more than 100 feet.

D.      Internal circulation. An adequate internal circulation pattern of streets shall be maintained between excavation and processing areas. Use of public streets shall not be permitted for hauling between extractive and processing areas except where required in connection with such pattern or for access to vehicular traffic originating from or destined to points beyond the limits of such excavation site and processing areas.

TFZ-00244

E. — Slope of excavation. No slope shall be maintained exceeding the normal limiting angle of repose of the material in which the excavations or extraction is being made. No undercutting shall be permitted within the setback area except for tunnels to provide transportation of materials between extractive and processing areas.

F.     Lateral support. All operations shall be conducted with sufficient lateral support to be safe with respect to hazard to persons, physical damage to adjacent lands or improvements, or damage to any street, sidewalk, parking area or utility, by reason of slides, sinking or collapse.

G.     Stockpiles. Stockpiles shall not exceed 75 feet in height and shall not be located closer than 150 feet from any district boundary line or from the center line of any street, except where a railroad is the district boundary line or where the contiguous district is a district in which extraction is permitted. All reasonable precautions shall be taken to prevent any materials or wastes deposited upon any stockpile from being washed, blown or otherwise transferred off the site by normal causes or forces.

H.     Drainage. All drainage from the site of extractive operations shall be controlled by dikes, barriers or drainage structures sufficient to prevent any silt, debris or other loose materials from filling any existing drainage course or encroaching on streets or adjacent properties.

I.     Control of vibration. No ground vibration caused by blasting or machinery shall exceed the limits established by the Act of July 10, 1957, P.L. 685, as amended, 73 P.S. §§ 164-168, and the rules and regulations adopted thereunder, with the exception that no blasting shall cause a peak particle velocity greater than 1:0 inch per second, measured at any property line or at the center line of any street.

J.     Reports. The owner shall submit and maintain on a current basis a list of all reports, except financial reports, filed with federal, state, regional or county officials. including dates and agency with which filed. Copies of any reports of records, except financial reports, required to be submitted to federal, state, regional or county officials or agencies pursuant to any laws or regulations shall be made available to the township upon request.

K.     Rehabilitation and conservation requirements. The following provisions shall apply to all extractive operations:

(1)     The owner shall, within two years from the date of this chapter or at the time of application for a use and occupancy permit for any proposed extractive use in a district in which extraction has not previously been conducted, submit a plan which shall include descriptions and plans for suitable after conditions or after-uses for all of the land affected.

(2)     Plans for rehabilitation uses may include. without limitation, the following after-uses, among others:

(a)     Open areas suitably graded and covered with suitable shrubs, grasses or trees.

(b)     Recreation lands, ponds and lakes.

(c)     Agriculture of any type.

(d)     Sites for residential, commercial, industrial and public uses.

(3)     Rehabilitation shall commence within one year following the completion or the discontinuance for a period of one year of an extractive operation (or the completion of the excavation of a portion of an entire operation which can feasibly be restored separately from other portions of the operation and which is not necessary to the

TFZ-00245

operation). Such rehabilitation shall be completed within five years from the date the rehabilitation commenced, except where a longer period of time is specifically authorized as part of the rehabilitation program.

(4) Rehabilitation shall include, without limitation, removal of all debris, temporary structures and stockpiles.

(5) A layer of arable soil of sufficient depth to sustain grass, shrubs and trees shall be provided in those parts of the operation where feasible to do so. Grass, shrubs and trees shall be planted thereon within six months after the providing of arable soil.

(6) Water accumulating upon the site may be retained after the completion of such operation where the excavation cannot reasonably be drained by gravity flow, provided that adequate provision shall be made to avoid stagnation, pollution and the danger of improperly controlled release of such water from the site.

(7) Upon receipt of the rehabilitation plans, the township shall review the plans to ensure compliance with all provisions of the Zoning Ordinance. Upon approval thereof, the township shall issue a certificate indicating approval of the plans as submitted or amended, and the approved plan shall be permanently filed in the official records of the township.

(8) Plans may be amended from time to time by approval of the township upon application by the owner.

(9) Final rehabilitation shall conform to zoning regulations at the time of implementation.

(10) Where applicable federal, state, regional or county regulations are more restrictive than the foregoing, such regulations shall apply in addition to the requirements of the township.

L. Application and review procedures. No extraction shall commence in a district in which extraction is permitted but which has not been previously quarried unless a use and occupancy permit is issued. Application to the township for such permit shall include:

(1) Detailed plans of the proposed operation, including engineering, landscaping, screening, traffic and circulation, parking and architectural designs for the facilities to be used; these plans shall provide for control of water, light, noise, water pollution, air pollution, waste disposal and any other hazards.

(2) A contour plat, drawn to the scale of 100 feet to the inch and a contour interval of 10 feet, showing current field topography, including location of water courses, of the tract intended for the proposed operation and estimated thickness of overburden and mineral bearing strata in the tract intended for proposed operation.

(3) The rehabilitation and conservation plans described in Subsection K.

M. Bonds. A performance bond may be required by the township in an amount determined by the township to be sufficient to insure rehabilitation in accordance with the provisions of the plan of rehabilitation as submitted pursuant to this chapter. With the approval of the township and for such period or periods as may be specified, an owner may be permitted to post its own bond without corporate surety.

§ 116-157. Time for compliance.

All provisions of § 116-158 shall apply immediately except where otherwise specifically provided, and for Subsection B and C, which shall be applicable within one year along or within 400 feet of any street and within three years along any other district boundary line.

ARTICLE XX, LIM and LIM-X Limited Industrial Districts

§ 116-134. Legislative intent.

In expansion of the declaration of legislative intent contained in § 116-2 of the Zoning Ordinance, it is hereby declared to be the intent of this article with respect to industrial zones to establish reasonable standards for the height and size of buildings, the area and dimensions of yards and open spaces, and the provision of facilities and operation of industries to minimize traffic congestion, noise, glare, vibration, air pollution, water pollution and fire and safety hazard in LIM and LIM-X Industrial Districts. It is the further intent to provide for the rehabilitation of extractive uses when completed.

§ 116-135. Authorization of map amendments; scope.

The Board of Supervisors may authorize as an amendment to the Zoning Map the designation of an area as a LIM Limited Industrial District or as a LIM-X Limited Industrial District for the location of an industrial development. In a LIM or LIM-X Limited Industrial District, the following regulations shall apply.

§ 116-136. District area.

No Limited Industrial District shall be less than 10 acres.

§ 116-137. Dimensional requirements; additional standards.

A.       No industrial lot size shall be less than four acres.

B.       Lot area coverage and yard regulations.

(1)      Principal and accessory buildings shall not cover more than 50% of the lot area.

(2)      No building or structure may be erected closer than 200 feet to any residential district; open areas shall be landscaped, in accordance with a landscape plan showing the location, species and size of trees and shrubs and other proposed landscaping, which plan shall include proposals for screening adjacent residential areas and shall be submitted to and approved by the Shade Tree Commission prior to issuance of a building permit.

(3)      No side or rear yard shall be required for the side or rear of a building or structure abutting on an existing railroad right-of-way except as provided in Subsection B(2) above.

(4)      Front yard. The required minimum depth of a front yard shall be 50 feet except as provided in Subsection B(2) above.

(5)      Side yard. On each interior lot, there shall be two side yards each having a width of not less than 50 feet, except as provided in Subsection B(2) and (3) above.

(6)      On each corner lot, there shall be two side yards, each having a width of not less than 50 feet, the side yards abutting the street having the width of not less than 50 feet and the side yard not abutting the street having a width of not less than 50 feet, except as provided in Subsection B(2) and (3) hereof.

(7)      Rear yards. There shall be a rear yard on each lot, the depth of which shall not be less than 50 feet, except as provided in Subsection B(2) and (3) hereof.

C.       Height regulations.

(1)      The maximum height of buildings and other structures erected in this district measured at the building line of all required yards shall be 35 feet, but any portion of a building erected above such height limit shall be erected within a recession at the rate of one foot of recession for each one foot of additional height, provided that a height of 40 feet or more shall require a special exception, with no structure to be erected over 65 feet.

(2)     The following appurtenances of buildings may be erected above the recession plane, provided that such structure shall not reduce the width or depth of a court or yard to less than the minimum required:

(a)     Chimneys and stacks.

(b)     Penthouses (not more than one story).

(c)     Tanks and tank towers.

(d)     Flagpoles and aerials.

D.     Control of dust, dirt, smoke, vapors and gases. No emission shall be made which can cause any damage to health, to animals, or to vegetation or to other form of property or which can cause any detrimental soiling at any point outside the operations. Table I, Chapter V, Industrial Hygiene Standards, Maximum Allowable Concentrations, Air Pollution Abatement Manual, Manufacturing Chemists Association, 1951, Washington, D.C., shall be used as a guide in determining what is a toxic gas.

E.     Control of radioactivity or electrical distrubances. There shall be no activities which emit dangerous or harmful radioactivity or electrical disturbances on or beyond the lot line.

F.     Control of odors. There shall be no emission of odorous gases or other odorous matter in such quantities as to be offensive at or beyond the lot line or which exceeds the standards of Table III (odor threshold) Chapter V, Industrial Hygiene Standards, Maximum Allowable Concentrations, Air Pollution Abatement Manual, Manufacturing Chemists Association, 1951, Washington, D.C. Any process which may involve the creation or emission of any odors shall be provided with a secondary safeguard system, so that control will be maintained if the primary safeguard system should fail.

G.     Control of glare and heat. Any operation producing intense glare or heat shall be performed within an enclosed building or behind a solid fence in such a manner as to be completely imperceptible from any point on or beyond the lot lines.

H.     Control of noises. At no point on or beyond the boundary of a residential or commercial district shall the sound-pressure level of any operation exceed the maximum of that permitted.

Sound Levels

Maximum Permitted Sound Level
(decibels)

| Octave Band (cycles per second) | Along Residential District Boundaries (Re: 0.0002 microbars) | At Any Other Point on Lot Boundary (Re: 0.0002 microbars) |
|---|---|---|
| 0 to 75 | 72 | 79 |
| 75 to 150 | 67 | 74 |
| 150 to 300 | 59 | 66 |
| 300 to 600 | 52 | 59 |
| 600 to 1,200 | 46 | 53 |
| 1,200 to 2,400 | 40 | 47 |

(5)    There is adequate provision made for safe and efficient pedestrian and vehicular traffic circulation within the boundaries of the site.

(6)    Provision is made for safe and efficient ingress and egress to and from public streets and highways serving the site without undue congestion to or interference with normal traffic flow within the township.

(7)    Adequate off-street parking and loading space will be provided in accordance with Article XXVI and §§ 116-138 and 116-140 of this article as an integral part of the plan.

(8)    All buildings within the development shall be served by a central sanitary sewage disposal system.

(9)    If the development is to be carried out in progressive stages, each stage shall be so planned that the foregoing requirements and intent of this chapter shall be fully complied with by the development at the completion of any stage.

§ 116-144 Use regulations.

A.    A building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and no other:

(1)    Cinema, radio and television productions.

(2)    Distribution plant for small parcels (capable of being hand delivered), cold storage plants and bottling plants.

(3)    Electric transforming substations, or other necessary public service uses.

(4)    Laboratories, experimental manufacturing and research.

(5)    Manufacture, compounding, assembly or treatment of articles or merchandise from the following previously prepared materials: bone, cellophane, canvas, cloth, cork, rope, cord and twine, plastics, natural and synthetic rubber, feathers, felt, fiber, fur, glass, hair, horn, leather, paper, plaster, metals, precious or semiprecious stones, shell, tobacco, textiles, wood (excluding planing mill), yarns.

(6)    Manufacturing, compounding, processing, packaging or treatment of such products as candy, cosmetics, dairy products, drugs, perfume, pharmaceuticals and toiletries.

(7)    Manufacture of ceramic products, using only previously pulverized clay.

(8)    Manufacture and assembly of electrical or electronic devices, home commercial and industrial appliances and instruments; including the manufacture of accessory parts or assemblies.

(9)    Manufacture of musical instruments, toys and novelties.

(10)    Manufacture of textiles or textile products, including spinning and weaving, but not including wool pulling or scouring, or jute or burlap processing or reconditioning.

(11)    Manufacture of paper or cardboard boxes, containers and novelties from previously prepared paper or cardboard.

(12)    Offices and office record storage.

(13)    Printing, publishing, lithographing, binding and kindred arts.

(14)    Parking or garage, for pleasure or commercial vehicles.

(15)    Warehouse as an accessory use to a manufacturing process.

(16)    Office buildings.

(17)    Banking facilities.

(18)    Medical facilities.

(19)    Restaurants.

(20)    Accessory uses on the same lot with and customarily incidental to any specific permitted use.

(21)    Any industrial use not hereinafter specifically excluded, which meets the provisions of §§ 116-136 through 116-142 inclusive, of this Article when authorized as a special exception. 142

(22)    Any use permitted in Institutional District. [Added 10-21-1982 by Ord. No. 442]

(23)    Private-use heliport, subject to the provisions of § 116-33.1, when authorized as a special exception. [Added 11-17-1983 by Ord. No. 481]

B.    ~~Uses not permitted in industrial districts pursuant to the provisions of Article XXI, § 116-155, shall not be permitted in any limited industrial district.~~

C.    Extraction of mineral deposits and removal of same shall not be permitted in an LIM District but ~~shall~~ be permitted in an LIM-X District in strict compliance with further requirements of §§ 116-155 and 116-157 of the Whitemarsh Township Code, but no ~~stockpiles shall be permitted except stockpiles of topsoil or overburden not exceeding 50 feet in height.~~

B   ~~D.~~    Any permitted use shall be conducted wholly within a completely enclosed building or in a court, enclosed on all sides by buildings, except for on-site parking, loading and storage incidental thereto.

TFZ-00250

Gloria Ann
Gynecology
5850-525-W

Morrielli

TFZ-00251



 TOWNSHIP

616 GERMANTOWN PIKE - LAFAYETTE HILL, PA 19444-1821
TEL: 610-825-3535        FAX: 610-825-9416

5400-77

**BOARD of SUPERVISORS**

William E. Kramer - Chairman
Ann Younglove - Vice-Chairman
William P. Rimel, III
Elizabeth W. Graf
Ronald J. DeRosa

**TOWNSHIP MANAGER**
Lawrence J. Gregan

## FAX TRANSMITTAL

| DATE: August 6, 2001 | Page 1 of 6 |
|---|---|

FAX TO:   Robert A. Ford, Assistant Township Manager

Ross Weiss, Esq., Township Solicitor
Auto #1

Thomas F. Zarko, P.E., Township Engineer
Auto #2

FROM:    Lawrence J. Gregan, Township Manager

RE:      **Ex-Extraction District Ordinances**

EXHIBIT
*P-83*
12/8/03 FK

| PLEASE CALL | FOR YOUR APPROVAL |
|---|---|
| x  FOR YOUR INFORMATION | YOUR COMMENTS, PLEASE |
| PLEASE REPLY | PLEASE MAIL SIGNED COPY |

Attached are two revised Ordinances for review.  Section 3 establishing the Ex-Extraction District has been modified per discussions with Ross.  Major changes are in Section 117-249.A:

Please review the Ordinances so that we can discuss them.  Thank you.

IF ALL PAGES HAVE NOT BEEN RECEIVED, PLEASE CALL OR FAX US.

c:\my documents-1f\memos\ford-zarko.doc

*"A GREAT PLACE TO LIVE AND WORK"*

TFZ-00978

# ORDINANCE NO. _____

AN ORDINANCE AMENDING CHAPTER 116 OF THE CODE OF THE TOWNSHIP OF WHITEMARSH, MONTGOMERY COUNTY, PENNSYLVANIA, BY CREATING A NEW EX-EXTRACTION DISTRICT.

AND NOW, the Board of Supervisors of Whitemarsh Township hereby enacts and ordains, and it is hereby ENACTED and ORDAINED as follows:

## SECTION 1.

Chapter 116 of the Whitemarsh Township Code (the "Zoning Ordinance") is hereby amended to add a new district which shall be designated as the "EX-Extraction District" ("EX District").

## SECTION 2.

Article III. Enumeration and Boundaries of District; Maps; Applicability, §116.12. Enumeration of districts of Chapter 116 of the Whitemarsh Township Code, as amended, is hereby amended to add to the list of zoning districts the Ex-Extraction District.

## SECTION 3.

A new Article XXXIII "Ex-Extraction District" is hereby added to the Zoning Ordinance which shall contain the following:

§116-248. Legislative intent.

In expansion of the declaration of legislative intend contained in §116-2, it is hereby declared to be the intent of this Article with respect to the uses permitted herein to establish reasonable standards for the height and size of buildings, the area and dimensions of yards and open spaces, and the provisions of facilities and operation of industries to minimize traffic congestion, noise, glare, vibration, air pollution, water pollution and fire and safety hazard in the Ex-Extraction District. It is the further intent of this Article to promote the redevelopment of areas formally used for extraction uses for residential uses compatible with neighboring property, as defined herein. *no such* vehicle _  ⎿ *rehabilitate*

§116-249. Authorization of map amendments; scope.

The Board of Supervisors may authorize as an amendment to the Zoning Map the designation of an area as an Ex-Extraction District for the location of

extractive uses and residential uses following rehabilitation of the area of extraction. In an Ex-Extraction District, the following regulations shall apply.

§116-249. Use regulations.

In an Ex-Extraction District, a building may be erected, altered or used and a lot may be used or occupied for any of the following purposes and no other.

    A.    Extraction of mineral deposits, stockpiling, the processing of the removed materials and on-site operations appurtenant to mineral extraction ~~are in accordance with the provisions of set forth in~~ Article XXI, §116-147 District Area, §116-148 Dimensional Requirements; Additional Standards, §116-149 Traffic To and From Streets, §116-150 Signs, §116-151 Off-Street Parking and Loading, §116-152 Application and Review by Planning Commission; Approval or Disapproval by Board of Supervisors, §116-153 Expansion, and §116-156 Additional Regulations.

    B.    Any use permitted in Article V, §116-35. Following Rehabilitation, as defined in §§116-156.K.-M.

§116-250. Extractive use standards.

Extractive use standards shall be those provisions set forth in Article XXI, §116-156.

§116.251. Residential use standards.

Residential use standards shall be those applicable provisions in Article VII (AAA Residential District), §116-43 et seq.

## SECTION 4.

Except as specifically hereby amended, the Zoning Ordinance is hereby ratified and confirmed in its entirety.

## SECTION 5. SEVERABILITY

It is hereby declared to be the legislative intent that if a court of competent jurisdiction declares any provision of this Ordinance to be invalid or ineffective in whole or in part, the effect of such decision shall be limited to those provisions which are expressly stated in the decision to be invalid or ineffective, and all other provisions of this Ordinance shall continue to be separately and fully effective.

2

TFZ-00980

## SECTION 6. EFFECTIVE DATE

The provisions of this Ordinance shall become effective immediately upon enactment.

ORDAINED and ENACTED this _____ day of _____, 2001.

SEAL

WHITEMARSH TOWNSHIP
BOARD OF SUPERVISORS

_____
LAWRENCE J. GREGAN, Secretary

_____
WILLIAM E. KRAMER, Chairman

c:\my documents-1f\ordinanc\zoning district 1.doc

3

TFZ-00981

## ORDINANCE NO. _____

AN ORDINANCE CHANGING THE ZONING MAP CLASSIFICATION OF CERTAIN PROPERTIES WITHIN THE HVY-X HEAVY INDUSTRIAL DISTRICT AND THE LIM-X LIMITED INDUSTRIAL DISTRICT TO THE EX-EXTRACTION DISTRICT, INCLUDING BUT NOT LIMITED TO THE CERTAIN TRACTS/PARCELS/LOTS/DESCRIBED HEREIN.

AND NOW, the Board of Supervisors of Whitemarsh Township hereby enacts and ordains, and it is hereby ENACTED and ORDAINED as follows:

### SECTION 1.

Article III. Enumeration and Boundaries of Districts; Maps; Applicability, §116-13 Zoning Map of Chapter 116 of the Whitemarsh Township Code, as amended, and all the notations, references and other data shown thereon re hereby amended to change the zoning Map classification of the following properties from the ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮   *[handwritten: ? LIM- EX?]*

*[handwritten: WILL HAVR TO REVISE/ CONSISTNY w/ DESCRIPT]*

Whitemarsh Township Tax Map Block 044A, Unit No. 001, Parcel No. 65-00-03886-009 (see legal description attached hereto as Exhibit A).

Whitemarsh Township Tax Map Block 044A, Unit No. 006, Parcel No. 65-00-03886-009 (see legal description attached hereto as Exhibit B).

### SECTION 2.

Except as specifically hereby amended, Chapter 116 of the Whitemarsh Township Code and the Zoning Map are hereby ratified and confirmed in their entirety.

### SECTION 3. SEVERABILITY

It is hereby declared to be the legislative intent that if a court of competent jurisdiction declares any provision of this Ordinance to be invalid or ineffective in whole or in part, the effect of such decision shall be limited to those provisions which are expressly stated in the decision to be invalid or ineffective, and all other provisions of this Ordinance shall continue to be separately and fully effective.

### SECTION 4. EFFECTIVE DATE

The provisions of this Ordinance shall become effective immediately upon enactment.

ORDAINED and ENACTED this _____ day of _____, 2001.

SEAL

                       WHITEMARSH TOWNSHIP
                       BOARD OF SUPERVISORS

_____      _____
LAWRENCE J. GREGAN, Secretary        WILLIAM E. KRAMER, Chairman

c:\my documents-t\\ordinanc\zoning district 2.doc

2

TFZ-00983



 TOWNSHIP

$400-77

**BOARD of SUPERVISORS**

William E. Kramer - Chairman
Ann Younglove - Vice Chairman
William P. Rimel, III
Elizabeth W. Graf
Ronald J. DeRosa

616 GERMANTOWN PIKE - LAFAYETTE HILL, PA 19444-1821
TEL: 610-825-3535          FAX: 610-825-9416

**TOWNSHIP MANAGER**
Lawrence J. Gregan

## FAX TRANSMITTAL

| DATE: August 7, 2001 | Page 1 of 6 |

FAX TO:    Robert A. Ford, Assistant Township Manager

Ross Weiss, Esq., Township Solicitor
Auto #1

Thomas F. Zarko, P.E., Township Engineer
Auto #2

FROM:    Lawrence J. Gregan, Township Manager

RE:    **Ex-Extraction District Ordinances**

| PLEASE CALL | FOR YOUR APPROVAL |
|---|---|
| x  FOR YOUR INFORMATION | YOUR COMMENTS, PLEASE |
| PLEASE REPLY | PLEASE MAIL SIGNED COPY |

Attached are further revisions to the draft Ex-Extraction District Ordinances.  Please review and advise of any comments.

Thank you.



EXHIBIT
P-84
12/8/03 fk

IF ALL PAGES HAVE NOT BEEN RECEIVED, PLEASE CALL OR FAX US.

c:\my documents-lf\memos\ford-zarko.doc

*"A GREAT PLACE TO LIVE AND WORK"*

TFZ-00985

# ORDINANCE NO. _____

AN ORDINANCE AMENDING CHAPTER 116 OF THE CODE OF THE TOWNSHIP OF WHITEMARSH, MONTGOMERY COUNTY, PENNSYLVANIA, BY CREATING A NEW EX-EXTRACTION DISTRICT.

AND NOW, the Board of Supervisors of Whitemarsh Township hereby enacts and ordains, and it is hereby ENACTED and ORDAINED as follows:

## SECTION 1.

Chapter 116 of the Whitemarsh Township Code (the "Zoning Ordinance") is hereby amended to add a new district which shall be designated as the "EX-Extraction District" ("EX District").

## SECTION 2.

Article III entitled "Enumeration and Boundaries of District; Maps; Applicability", §116,12. Enumeration of districts of Chapter 116 of the Whitemarsh Township Code, as amended, is hereby amended to add to the list of zoning districts the Ex-Extraction District.

## SECTION 3.

A new Article XXXIII "Ex-Extraction District" is hereby added to the Zoning Ordinance which shall contain the following:

§116-248. Legislative intent.

In expansion of the declaration of legislative intent contained in §116-2, it is hereby declared to be the intent of this Article with respect to the uses permitted herein to establish reasonable standards for the height and size of buildings, the area and dimensions of yards and open spaces, and the provision of facilities and operation of industries to minimize traffic congestion, noise, glare, vibration, air pollution, water pollution and fire and safety hazard in the Ex-Extraction District. It is the further intent of this Article to promote the redevelopment of areas formally used for extraction uses for residential uses compatible with neighboring property, as defined herein.    rehabilitation

§116-249. Authorization of map amendments; scope.

The Board of Supervisors may authorize as an amendment to the Zoning Map the designation of an area as an Ex-Extraction District for the location of extractive uses and residential uses following rehabilitation of the area of extraction. In an Ex-Extraction District, the following regulations shall apply.

§116-250.  Use regulations.

In an Ex-Extraction District, a building may be erected, altered or used and a lot may be used or occupied for any of the following purposes and no other:

    A.    Extraction of mineral deposits, stockpiling, the processing of the removed materials and on-site operations appurtenant to mineral extraction as set forth in Article XXI, ~~§116-147 District Area, §116-148 Dimensional Requirements; Additional Standards, §116-149 Traffic To and From Streets, §116-150 Signs, §116-151 Off-Street Parking and Loading, §116-152 Application and Review by Planning Commission, Approval or Disapproval by Board of Supervisors, §116-153 Expansion,~~ and §116-156 Additional Regulations, _¶'s A-M inclusive._ [handwritten: Devoted or to moving.]

    B.    ~~Any use permitted~~ in Article V, §116-35, Following Rehabilitation, as defined in §§116-156.K.-M.

§116-251.  Site Development and Extractive use standards.

    A.    Site development standards shall be those provisions set forth in Article XXI, §116-147 District Area, §116-148 Dimensional Requirements; Additional Standards, §116-149 Traffic To and From Streets, §116-150 Signs, §116-151 Off-Street Parking and Loading, §116-152 Application and Review by Planning Commission; Approval or Disapproval by Board of Supervisors and §116-153 Expansion. [handwritten: NEW]

    B.    Extractive use standards shall be those provisions set forth in Article XXI, §116-156, _¶'s A-M inclusive_

§116.252.  ~~Residential use standards.~~

Residential use standards shall be those applicable provisions in Article VII (AAA Residential District), §116-43 et seq.

## SECTION 4.

Except as specifically hereby amended, the Zoning Ordinance is hereby ratified and confirmed in its entirety.

2

TFZ-00987

## SECTION 5.  SEVERABILITY

It is hereby declared to be the legislative intent that if a court of competent jurisdiction declares any provision of this Ordinance to be invalid or ineffective in whole or in part, the effect of such decision shall be limited to those provisions which are expressly stated in the decision to be invalid or ineffective, and all other provisions of this Ordinance shall continue to be separately and fully effective.

## SECTION 6.  EFFECTIVE DATE

The provisions of this Ordinance shall become effective immediately upon enactment.

ORDAINED and ENACTED this _____ day of _____, 2001.

SEAL

WHITEMARSH TOWNSHIP
BOARD OF SUPERVISORS

_____          _____
LAWRENCE J. GREGAN, Secretary               WILLIAM E. KRAMER, Chairman

c:\my documents-lf\ordinanc\zoning district 1.doc

3

TFZ-00988

# ORDINANCE NO. _____

AN ORDINANCE CHANGING THE ZONING MAP CLASSIFICATION OF CERTAIN PROPERTIES WITHIN THE HVY-X HEAVY INDUSTRIAL DISTRICT AND THE LIM-X LIMITED INDUSTRIAL DISTRICT TO THE EX-EXTRACTION DISTRICT, INCLUDING BUT NOT LIMITED TO THE CERTAIN TRACTS/PARCELS/LOTS/DESCRIBED HEREIN.

AND NOW, the Board of Supervisors of Whitemarsh Township hereby enacts and ordains, and it is hereby ENACTED and ORDAINED as follows:

## SECTION 1.

Article III entitled "Enumeration and Boundaries of Districts; Maps; Applicability", §116-13 Zoning Map of Chapter 116 of the Whitemarsh Township Code, as amended, and all the notations, references and other data shown thereon are hereby amended to change the zoning Map classification of the following property from the HVY-X District to the Ex-Extraction District.   *ADD DESCRIPTION*

## SECTION 2.

Article III entitled "Enumeration and Boundaries of Districts; Maps; Applicability", §116-13 Zoning Map of Chapter 116 of the Whitemarsh Township Code, as amended, and all the notations, references and other data shown thereon are hereby amended to change the zoning Map classification of the following property from the LIM-X District to the Ex-Extraction District.   *ADD DESCRIPTION*

## SECTION 3.

Except as specifically hereby amended, Chapter 116 of the Whitemarsh Township Code and the Zoning Map are hereby ratified and confirmed in their entirety.

## SECTION 4. SEVERABILITY

It is hereby declared to be the legislative intent that if a court of competent jurisdiction declares any provision of this Ordinance to be invalid or ineffective in whole or in part, the effect of such decision shall be limited to those provisions which are expressly stated in the decision to be invalid or ineffective, and all other provisions of this Ordinance shall continue to be separately and fully effective.

## SECTION 5. EFFECTIVE DATE

The provisions of this Ordinance shall become effective immediately upon enactment.

ORDAINED and ENACTED this _____ day of _____, 2001.

SEAL

WHITEMARSH TOWNSHIP
BOARD OF SUPERVISORS

_____
LAWRENCE J. GREGAN, Secretary

_____
WILLIAM E. KRAMER, Chairman

c:\my documents-lf\ordinanc\zoning district 2.doc

TFZ-00990