**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HIGHWAY MATERIALS, INC.,          :
                                  :
          Plaintiff,          :
                                  :
          v.          :          CIVIL ACTION NO. 02-3212
                                  :
WHITEMARSH TOWNSHIP *et al*,      :
                                  :
          Defendants.          :
                                  :

## ORDER

      AND NOW, this ___ day of _____, 200__, it is hereby ORDERED that Defendants' Motion to Compel Production Of Documents Listed On Woodrow & Associates' Privilege Log And Plaintiff's Privilege Log is DENIED.


                                         _____
                                         Robert F. Kelly, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HIGHWAY MATERIALS, INC.,         :
                        :
         Plaintiff,          :
                        :
         v.                 :     CIVIL ACTION NO. 02-3212
                        :
WHITEMARSH TOWNSHIP *et al*,    :
                        :
         Defendants.       :
                        :

**MEMORANDUM OF PLAINTIFF HIGHWAY MATERIALS, INC. IN**
**OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION**
**OF DOCUMENTS LISTED IN WOODROW & ASSOCIATES'**
**PRIVILEGE LOG AND PLAINTIFF'S PRIVILEGE LOG**

Plaintiff Highway Materials, Inc. ("HMI") respectfully submits this memorandum in opposition to the defendants' Motion to Compel Production Of Documents Listed On Woodrow & Associates' Privilege Log And Plaintiff's Privilege Log.

Out of the 97 documents that are the subject of the defendants' motion, only 46 are still in dispute. Plaintiff has produced the other 51 documents. *See* Exhibit A attached hereto, a list of every document sought in defendants' motion and reflecting the current status of the documents. (Out of these 51 documents, HMI produced 25 of them before defendants even filed their motion to compel. HMI produced the remaining 26 documents following its good faith review of the documents at issue in defendants' motion.)

For the reasons stated in this Memorandum, the 46 documents that remain at issue are privileged communications, or are protected by the work product doctrine, or both. Plaintiff should not be required to produce those documents.

## I.   FACTS

Following the Township's denial of HMI's preliminary plan application on March 21, 2002, HMI filed a state court action challenging the denial of the plans and an action pursuant to 42 U.S.C. § 1983 in this Court.

On May 5, 2003, in response to defendants' document requests to HMI and to HMI's engineering consultant, Woodrow & Associates, HMI's counsel produced documents for defendants' inspection. (*See* Declaration of Arleigh P. Helfer III, ¶ 2 ("Helfer Decl."), attached hereto as Exhibit B.)[1] Before defendants' counsel left that day for another appointment, HMI's counsel told him that HMI was working on a privilege log to reflect documents withheld from the production. (*Id.*, ¶ 3.)[2]

Two such logs were in fact prepared in May 2003 and HMI's counsel believed that they had been sent to defendants at that time. (*Id.*, ¶ 4.) Defendants' counsel had been told to expect the logs, and never asked about them. (*Id.*, ¶ 6.) However, on November 20, 2003, it came to counsel's attention that the privilege logs may not have been sent to defendants in May 2003 as was intended. (*Id.*, ¶ 5.) As soon as plaintiff's counsel realized that there was a question as to whether the logs had been transmitted to defendants, counsel acted promptly and

---

[1]   The fact that plaintiff's counsel responded on Woodrow's behalf to the subpoena demonstrates that Woodrow was closely involved in plaintiff's legal representation.

[2]   Moreover, HMI's responses to the defendants' document requests expressly state a general objection to the defendants' requests to the extent that they call for the "disclosure of information and documents protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection under the Federal Rules of Civil Procedure or applicable law." *See* Responses and Objections of Plaintiff Highway Materials, Inc. to Defendants' Document Requests (First Set), a copy of which is attached hereto as Exhibit C. In addition, in response to no fewer than 28 of defendants' requests, HMI expressly stated that it would produce "responsive, **non-privileged documents** at a time and place mutually convenient to counsel." (*Id.*) (emphasis added).

transmitted a copy of plaintiff's privilege logs. (*Id.*, ¶ 6.) Any delay in producing the privilege logs was the result of an inadvertent oversight and was in no way, as defendants allege, a gambit to frustrate discovery in this matter. (*Id.*, ¶ 7.)

## II.     ARGUMENT

Because the documents sought by defendants' motion that remain in issue are either privileged communications between plaintiff, its counsel, and its engineering consultant, or are clearly work product generated in anticipation of (or, in many instances, during the course of) litigation, or are both, defendants' motion should be denied.

### A.     Documents Reflecting Communications From Woodrow & Associates to Plaintiff's Counsel, Communications from Plaintiff's Counsel to Woodrow & Associates, Or Communications Between Plaintiff's Counsel and Plaintiff That Were Disclosed to Woodrow And Associates, Are Within The Privilege And Should Not Be Produced

Contrary to the defendants' assertion in its memorandum, in this federal question matter in which there are no pendent state claims and in which the Court's jurisdiction is not based on diversity of citizenship, federal common law, not state law, indisputably controls the scope of privileges. *See* Fed. R. Ev. 501; *Pearson v. Miller*, 211 F.3d 57, 65-66 (3d Cir. 2000) (stating fundamental principle that federal courts must apply federal common law of privilege, not state law, to cases presenting federal question claims); *cf. Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 186 F. Supp. 2d 567, 570 n.3 (E.D. Pa. 2001); *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 129 (E.D. Pa. 1997) ("It is well-settled . . . that, under Federal Rule of Evidence 501, the federal common law of privileges applies to federal question cases."). The decisions of the Pennsylvania courts cited by defendants are therefore inapposite in this case arising under 42 U.S.C. § 1983.

The attorney-client privilege is the oldest privilege recognized by federal common law. *See Upjohn Co. v. United States*, 449 U.S. 383, 388 (1981). It is widely recognized that the

attorney-client privilege exists to promote full and frank communication between attorneys and their clients. *Id.* While it has been held that voluntary disclosure of communications to third parties may constitute a waiver of the privilege, "courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege." *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). Such exceptions further the policies of the privilege because "disclosure is sometimes necessary for the client to obtain informed legal advice." *Id.* Moreover, because of Mr. Woodrow's role in plaintiff's legal representation, he should not be regarded as a third party for the purpose of applying privilege in this case.

Defendants essentially argue that, because Mr. Woodrow was not HMI's employee, any communication to which he was a party cannot be privileged. However, under well-settled principles of the federal common law that applies to this case, that argument has been expressly rejected.

For example, the United States Court of Appeals for the Eighth Circuit upheld a similar assertion of attorney-client privilege in a case where a land-owner's development plans were allegedly thwarted by local authorities. The land-owner filed suit under the antitrust and RICO laws, in *In Re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), and a dispute arose concerning privilege claims for communications that included a non-employee consultant of the plaintiff.[3] As summarized by the Court of Appeals:

> In short, the case presents an individual who, **while acting as an independent consultant to the client, has been involved initially in the attempt to develop a parcel of property (the development of which appears to be the** *sine qua non* **of the client's existence) and subsequently in the litigation that resulted from the failure to develop said property.** Despite any assertions to the contrary, it appears that **this consultant was neither the client nor an**

---

[3]   Like the case at bar, *Bieter* was a federal question case, and therefore, was governed by the "federal common law of attorney-client privilege." 16 F.3d at 935.

**employee of the client**, but was instead a representative of the client. The legal question presented is whether communications either between this consultant and counsel or merely disclosed to the consultant necessarily fall outside of the scope of the attorney-client privilege **because the consultant was neither the client nor an employee of the client**.

16 F.3d at 934 (emphasis added).

The Eighth Circuit then proceeded to consider how this question was affected by

*Upjohn, supra,* where the United States Supreme Court rejected lower-court cases which had

limited attorney-client privilege to a corporation's "control group." The Eighth Circuit held that,

for the same reason that the Supreme Court rejected limiting the privilege to "control group"

members, the privilege should likewise not be limited to employees:

> [W]hen applying the attorney-client privilege to a corporation or partnership, **it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors**. Such a distinction is consistent with neither the Supreme Court's decision in *Upjohn* nor our decision in *Diversified [Indus., Inc. v. Meredith,* 572 F.2d 596, 599 (8th Cir. 1977)].
>
> Both decisions indicated that "the very purpose of the privilege" would be frustrated by application of the "control group" test because that test "discourages the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation.: *Upjohn,* 449 U.S. at 392; *see Diversified,* 572 F.2d at 609 (*en banc*) ("In contrast to the control group test, [the Harper & Row test] encourages the free flow of information to the corporation's counsel in those situations where it is most needed.").... Such information will, in the vast majority of cases, be available from the client or the client's employees, but there undoubtedly are situations, such as the one described by Dean Sexton,[4] in which *too narrow a definition of* "*representative of the client*" will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely. "It is only natural that," just as "middle-level – and indeed lower-level – employees . . . would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to . . . actual or potential difficulties," 449 U.S. at 391**, so too would nonemployees who possess a "significant relationship to the [client] and the**

---

[4]     *Citing* John E. Sexton, *A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege,* 57 N.Y.U. L. REV. 443, 498 (1982*).*

**[client]'s involvement in the transaction that is the subject of legal services**."
Sexton, *supra*, at 487.

16 F.3d at 937-38 (emphasis and footnote added). Accordingly, the Court held that the communications were privileged, even though they involved a non-employee. 16 F.3d at 939-40.

The *Bieter* case was recently cited with approval by another District Court in *In Re Copper Market Antitrust Litigation,* 200 F.R.D. 213 (S.D.N.Y. 2001),[5] which involved communications between a corporate client [Sumitomo], its counsel and a third-party public relations consultant [RLM]. The party seeking to compel production of privileged documents asserted "that the attorney-client privilege is inapplicable because RLM, a third party, was involved in the communications as to which the privilege is asserted." 200 F.R.D. at 217. The Court held that:

> In applying the principles set forth by the Supreme Court in *Upjohn*, **there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation** if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice.

200 F.R.D. at 219 (emphasis added). Moreover, in *Copper Market Antitrust Litigation* as in the case at bar:

> RLM's communications concerned matters within the scope of RLM's duties for Sumitomo, and RLM employees were aware that the communications were for the purpose of obtaining legal advice from [Sumitomo's counsel] Paul Weiss and/or Sumitomo's in house attorneys. Under the principles set out in *Upjohn*, **RLM's independent contractor status provides no basis for excluding RLM's communications with Sumitomo's counsel from the protection of the attorney-client privilege**. *Cf. McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990) (under *Upjohn*, there is no principled basis for distinguishing consultant's communications with attorneys and corporate employee's

---

[5]   Like both *Bieter* and the case at bar, *In Re Copper Market Antitrust Litigation* was a federal question case, and therefore, "privilege issues [were] governed by federal common law." 200 F.R.D. at 217.

communications with attorneys when each acted in the scope of their
employment).

200 F.R.D. at 219 (emphasis added).

Here, like the consultant in *Bieter* and the consultant in *Copper Market Antitrust
Litigation,* HMI's engineer Woodrow "possess[ed] a 'significant relationship to the [client] and
the [client]'s involvement in the transaction that is the subject of legal services.'" *Bieter,* 16 F.3d
at 938. Here, as in *Bieter* and *Copper Market Antitrust Litigation,* for purposes of application of
the attorney-client privilege, "there is no reason to distinguish between a person on the
corporation's payroll and a consultant hired by the corporation," *Copper Market Antitrust
Litigation,* 200 F.R.D. at 219. Therefore, here, as in *Bieter* and *Copper Market Antitrust
Litigation,* HMI's assertion of privilege should be upheld, and defendants' motion to compel
production should be denied.

The remaining documents that are still in issue and for which attorney-client
privilege is claimed are all documents that either were disclosed to Mr. Woodrow or reflect
communications between Mr. Woodrow and Mr. Garrity, but that were not disclosed to any third
parties.[6] With respect to these documents, defendants do not challenge the sufficiency of the
descriptions on plaintiff's privilege logs; instead, they contend—solely because they were
disclosed to Mr. Woodrow or constitute communications between Mr. Garrity and Mr. Woodrow
or his employees (Robert Jordan, Lynn DeSimone, and Chris Jaffe)—that these are not
privileged documents. (Defendants' Mem. at p 2-3.)

---

[6]   In light of plaintiff's production of the documents listed at items 94, 101, 107, 123, and
132 (redacted) of its log and at P-2, P-3, P-4, P-5 (redacted), and P-13 the only remaining
documents of the set that defendants are challenging as being unprotected by attorney-
client privilege, with the exception of certain handwritten notes that are discussed *infra,*
are all documents that either were disclosed to Mr. Woodrow or reflect communications
between Mr. Woodrow and Mr. Garrity, but that were not disclosed to any third parties.

Significantly, throughout this litigation, defendants have taken a position with respect to their own documents that is consistent with the *Bieter* and *Copper Antitrust* cases discussed above, and that is flatly inconsistent with the position that they are taking in this motion. Thus, defendants have taken the position that communications between the engineering consultant hired by Whitemarsh Township, Mr. Zarko, **a partner in CKS Engineers, Inc.**, and the Township's counsel, Mr. Weiss, are privileged. (*See* Excerpts from June 18, 2003 Deposition Transcript of Thomas F. Zarko, attached hereto as Exhibit D.) Defendants have also taken the position that communications disclosed to Mr. Zarko are privileged documents. (*See, e.g.*, Thomas Zarko Privilege Log, Item 3, attached hereto as Exhibit E.) Plaintiff is simply taking the same position with respect to communications or disclosures involving Mr. Woodrow that defendants are taking with respect to communications or disclosures involving Mr. Zarko. Mr. Woodrow, plaintiff's engineering consultant, is to plaintiff what Mr. Zarko is to defendants. Plaintiff's counsel, Mr. Garrity, *needed to communicate with Mr. Woodrow in order to be able to* render legal advice to plaintiff concerning the land development process. Because of the adversarial nature of the Township's response to plaintiff's preliminary plan application, among other things, it was frequently necessary for plaintiff to share Mr. Garrity's advice and mental impressions with Mr. Woodrow. Significantly, when counsel for plaintiff objected at Mr. Woodrow's deposition to defendants' questioning concerning the substance of conversations between Mr. Woodrow and Mr. Garrity on the basis of privilege, defendants' counsel did not file a motion to compel on the subject. (*See* Excerpts from November 24, 2003 Deposition Transcript of Timothy P. Woodrow, attached hereto as Exhibit F.)

In light of claims of privilege with respect to Mr. Zarko's communications with Mr. Weiss, and *vice versa*, and documents disclosed to Mr. Zarko, it would be fundamentally

unfair to require production of documents containing substantive communications reflecting Mr. Garrity's mental impressions and legal advice or requests for such advice or review of documents between Mr. Garrity and Mr. Woodrow, or that were disclosed to Mr. Woodrow.[7]

For these reasons, defendants' motion to compel production of documents listed at items P-1, P-6, P-8, P-10, P-12, and P-14 through P-30 of the Woodrow Privilege Log and items 36 through 38, 73, 93, 97, 98, 100, 102, 103, 106, 115, 116, 124, 158, 169, and 170 of plaintiff's privilege log should be denied.

**B.    Handwritten Notes Reflecting Substantive Communications Between Plaintiff And Its Counsel Are Privileged Documents**

Only 7 documents in the "handwritten notes" category challenged by defendants remain in dispute. *See* Exhibit A; *see also* Defendants' Motion at ¶ 14. These documents reflect privileged communications and should not be ordered produced to defendants.

Defendants only challenged the description of these items insofar as they omitted an author. (*See* Defendants' Mem. at 5.)    In response, the handwritten documents were generated by Leonard Poncia (items 48, 52-53, 55, 62, and 65) and Robert Raquet (item 47).[8]

---

[7]    If the Court nevertheless compels production of the documents defendants seek for purported communications or disclosure to third parties, HMI submits that fundamental fairness requires that the defendants likewise be ordered to produce the documents listed on Mr. Zarko's privilege log as well as documents listed on the defendant's privilege log that refer to communications between Mr. Zarko and Mr. Weiss or that were disclosed to Mr. Zarko.

[8]    Item 47 reflects the handwritten notes of Robert Raquet, an employee of plaintiff, taken during a settlement meeting with the defendants on February 5, 2003. As such, item 47 is not only privileged but is also irrelevant, reflecting inadmissible statements and information in any event. *See* Fed. R. Ev. 408. Furthermore, it is not a document that is responsive to any document request reasonably calculated to lead to the discovery of admissible evidence, especially given the obvious circumstances in which it was written. *See* Fed. R. Civ. P. 26 (b)(1). Defendants know the information exchanged during the settlement meeting at issue and would be overreaching in seeking Mr. Raquet's notes recorded during that meeting.

(*See* Helfer Decl., ¶ 8.)  Both Mr. Poncia and Mr. Raquet were plaintiff's employees at various times and worked on plaintiff's development plans for its property.  (*See* Defendants' Motion at ¶ 24.)

Plaintiff submits that the descriptions on the log, as supplemented herein, provide sufficient information to determine that these are privileged documents that reflect communications between plaintiff and its counsel.  As stated on plaintiff's privilege log, the handwritten notes at items 48, 52-53, 55, 62, and 65, are notes that were taken during telephone conversations or meetings with HMI's lawyer, Mr. Garrity of the Wisler Pearlstine law firm. These meetings were not attended by third parties.[9]  In addition, these notes reflect the topics of attorney/client communications similar to those that this Court has protected in this matter when defendants asserted such communications were privileged.[10]  Now that plaintiff has addressed defendants' challenge, it is clear that the documents are privileged: HMI's employee, Mr. Poncia, generated these notes during meetings and conversations with counsel, and they reflect counsel's input.  The documents were properly withheld.

---

[9]  In those descriptions, Tony D. is Tony DePaul, Rob R. is Robert Raquet, Andrea N. is Andrea Natticchione, "Doug D.," a mistake, should be Donna Bartynski, PDP is Peter DePaul and LSP is Leonard Poncia.  (Tony DePaul, Andrea Natticchione, Peter DePaul and Donna Bartynski are all officers of Creekside Commons, Inc.)

[10]  *See, e.g.,* the Court's May 19, 2003 Order denying plaintiff's motion to compel deposition answers to questions concerning the fact of discussions with counsel.

C.    **Work Product Protection Has Been Properly Asserted**

Defendants also challenge the assertion of the work product doctrine with respect to several of the same documents they contend are not privileged.[11] (*See* Defendants' Motion at ¶ 12.)

With respect to the remaining items,[12] defendants' challenge should be rejected. The descriptions of these documents as well as the timing and circumstances of their generation demonstrate that they were prepared in anticipation of litigation and are entitled to work product protection.

The Federal Rules of Civil Procedure limit the discovery of materials prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). This work product protection exists not only to protect the work product, strategies, and mental impressions of a party's attorneys, but extends to materials prepared in anticipation of litigation by other representatives of the client, including consultants or agents. *Id.* The purpose of the doctrine is to promote the adversary system, which it does by enabling attorneys to prepare cases without fear that the work product will be used against their clients. *Westinghouse v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). It is settled that disclosure of work product to third parties who are not the party's adversaries does not waive the protection afforded by Rule 26(b)(3) to or materials prepared in anticipation of litigation or an attorney's mental impressions. *Id.*; *see also Morales v. United States*, 1997 WL 223080 (S.D.N.Y. 1997) (finding conversations between counsel and

---

[11]    Of the documents defendants challenge on this additional ground, plaintiff has withdrawn its assertion of work product doctrine with respect to P-16, 93, and 116, though it maintains its assertion of attorney-client privilege with respect to those documents.

[12]    The items challenged by defendant for which plaintiff continues to assert work product protection include P-17 through P-28 and P-30 on the Woodrow privilege log, as well as 97 and 124 listed on the plaintiffs' privilege log.

a third party to be protected by work product doctrine and that permitting questions concerning such communications might reveal the party's legal strategy in contravention of the policy concerns encoded in Rule 26(b)(3)). "Litigation," within the meaning of Rule 26(b)(3) has been construed to include proceedings that are adversarial in nature, even if they are before an administrative board. *See, e.g., Kent Corp. v. National Labor Relations Bd.*, 530 F.2d 612 (5th Cir. 1976). Furthermore, the work product doctrine protects documents that may have been prepared in anticipation of litigation of claims other than those at issue in an instant case. *See, e.g., Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989).

From a temporal point of view, litigation between the parties does not have to be pending already for a document to have been prepared in anticipation of litigation. *See Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 42 (D. Md. 1974). Instead, it is sufficient if the prospect of litigation motivated the creation of the materials. *See, e.g., United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.), *cert. denied*, 454 U.S. 862 (1981). The general test in the Third Circuit is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). The party's subjective state of mind is relevant to whether a party anticipates litigation. *Id.*

Here, the documents remaining in issue as to work product assertion are those listed at P-17 through P-28 and at P-30 on the Woodrow privilege log, as well as at 36, 97 and 124 listed on the plaintiffs' privilege log, for which work product doctrine was asserted in

addition to attorney-client privilege, on the additional basis that they were allegedly not prepared in "anticipation of litigation."[13]

With respect to these documents, HMI disagrees with defendants' assertion that it has merely offered the terminology "in anticipation of litigation." With respect to each document, plaintiff has identified the author, date of its generation, recipients (if any), and a general description to justify the assertion of the doctrine. These are all factors relevant to the applicability of the doctrine. *See Martin*, 983 F.2d at 1260.

### 1. The Documents Prepared In Anticipation Of The Present Litigation Or The Litigation Pending Against The Township In The State Courts Is Indisputably Entitled To Work Product Protection

There can be no dispute that HMI reasonably anticipated litigation with the Township after the March 21, 2002 meeting at which the defendants wrongfully denied HMI's development plans.[14] Plaintiff commenced its land use appeal action in state court on April 19, 2002, and the present case was instituted on May 24, 2002. The claims of work product protection for materials generated after March 21, 2002 in anticipation of these specific legal actions—such as draft complaints, documents concerning the contemplated litigation with

---

[13] Though the description of the document makes it apparent that plaintiff intended to assert the privilege, plaintiffs' log erroneously omitted assertion of work product doctrine protection with respect to item 36. Item 36 is a draft version of the document listed at P-18 of the Woodrow & Associates privilege log, prepared by Mr. Woodrow to analyze the Township's plan denial that directly resulted in the land use appeal and the present litigation. Plaintiff maintains an assertion of work product doctrine protection for item 36 listed on its privilege log.

[14] Even before the March 21, 2002 meeting, there was an observable adversarial atmosphere with respect to the plaintiff's preliminary plan submission. HMI submits that certainly its anticipation of litigation was reasonable by the time it learned the Township scheduled a hearing on its application for preliminary plan approval, March 8, 2002. The atmosphere is readily observable through various events, including the Township's restrictive rezoning of plaintiff's property following its September 10, 2001 preliminary plan application and the plaintiff's procedural challenge to the rezoning.

Whitemarsh Township, and evaluations of the Township's denial resolution—cannot reasonably be in dispute here.

Therefore, items P-17 through P-28 and P-30 on the Woodrow privilege log, as well as items 36, 97 and 124, are clearly entitled to work product protection based on the circumstances of their production and their descriptions on the logs. These are documents that were prepared and exchanged between Mr. Garrity and/or present counsel on the one hand and Mr. Woodrow on the other in connection with the preliminary plan application and the scheduled hearing thereon,[15] the land use appeal in the state courts, and the present litigation. Among other things, they include draft legal filings, documents prepared by Mr. Woodrow at counsel's direction and request for purposes of preparing or assisting with the pending lawsuits, and documents reflecting the mental impressions of plaintiff's counsel, including present counsel.

HMI submits that the circumstances attending the production of the documents challenged by defendants that are in issue, demonstrated by their descriptions on the privilege logs, make it clear that they are entitled to the protection of the work product doctrine.

D.    **Documents Reflecting Communications Between Plaintiff And Counsel That Were Not Fully Described On Plaintiff's Privilege Log**

Defendants also challenge the privileged nature of two additional documents. Contrary to the averment in paragraph 15 of defendants' motion, plaintiff has not claimed privilege with respect to documents it disclosed to representatives of the Township. Based on

---

[15]    In this respect, it is notable that Pennsylvania courts have held that a board of commissioners or supervisors reviewing subdivision or land development plans is acting in a quasi-judicial capacity and is effectively a tribunal. *See Iannarone v. Township of Springbrook*, 441 A.2d 810, 813 (Pa. Commw. Ct. 1982); *see also Doylestown Twp. v. Teeling*, 635 A.2d 657 (Pa. Commw. Ct. 1993).

the more complete description of these documents in this memorandum, the two documents to which defendants ostensibly refer are clearly privileged.

Item 132 is a copy of the March 21, 2002 letter to Robert Ford from Thomas Zarko that was used as the basis to wrongfully deny plaintiff's plan application; however, on the back of a page it has Robert Raquet's handwritten comments concerning his communications with Mr. Garrity. Those privileged notes have been redacted and the letter, which was generated by defendants in the first instance and produced multiple times in this litigation in any event, has been produced prior to the filing of this opposition. Plaintiff submits that the issue with respect to item 132 is therefore moot.

Item 158 is a draft letter to Mr. Gregan prepared by Mr. Garrity and transmitted to plaintiff for review. The privilege log is inaccurate in stating that Mr. Gregan was a recipient of the draft document. The draft was not transmitted to Mr. Gregan or Mr. Weiss. Because the draft reflects ongoing communications between attorney and client, it is a privileged document.

## III.   CONCLUSION

For the above reasons, defendants' motion should be denied.

Respectfully submitted,

Michael Sklaroff
Walter M. Einhorn, Jr.
Lawrence D. Berger
Arleigh P. Helfer III
BALLARD SPAHR ANDREWS &
   INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
Attorneys for Plaintiff
Highway Materials

Dated: December 19, 2003

## CERTIFICATE OF SERVICE

I, Arleigh P. Helfer III, Esquire, hereby certify that on December 19, 2003, I served copies of the foregoing Memorandum Of Plaintiff Highway Materials, Inc. In Opposition To Defendants' Motion To Compel Production Of Documents Listed In Woodrow & Associates' Privilege Log And Plaintiff's Privilege Log upon the following individuals in the manner stated below:

By Federal Express:

Harry G. Mahoney, Esquire
Deasey Mahoney & Bender Ltd.
1800 John F. Kennedy Boulevard, Suite 1300
Philadelphia, PA 19103-2978

By U.S. Mail, first class delivery:

Kevan F. Hirsch, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
350 Sentry Parkway, Building 640
Blue Bell, PA 19422