UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.          :
                                 :        CIVIL ACTION NO. 02-cv-3212
        v.                       :
                                 :
WHITEMARSH TOWNSHIP, MONTGOMERY  :
COUNTY, PA, et al.               :

ORDER

AND NOW, this        day of                       , 2004, upon consideration of

Defendants' Motion for Leave of Court to File a Reply Brief to Plaintiff's Response to

Defendants' Motion for Summary Judgment, it is hereby

ORDERED

that the Motion is granted.  The Court will accept the Reply Brief of Defendants attached to

Defendants' Motion as their filed Reply Brief.

BY THE COURT:

_____
                                    J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.          :
                                        :     CIVIL ACTION NO. 02-cv-3212
     v.                           :
                                        :
WHITEMARSH TOWNSHIP, MONTGOMERY :
COUNTY, PA, et al.                 :

DEFENDANTS' MOTION FOR LEAVE OF COURT
TO FILE A REPLY BRIEF TO PLAINTIFF'S
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Whitemarsh Township, The Board of Supervisors of Whitemarsh Township,

Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and

Thomas F. Zarko respectfully move this Honorable Court to grant permission to Defendants to file

a reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. Defendants

make this request pursuant to The Honorable Robert F. Kelly's Rules of Court governing General

Motion Practice.

Plaintiff's analyses of its claims for violation of its substantive due process, equal protection

and procedural due process rights are flawed and misleading given the current case law in the Third

Circuit. Defendants respectfully request the opportunity to reply in accordance with the Defendants'

Brief attached hereto and incorporated herein by reference.

Respectfully submitted,

DEASEY, MAHONEY & BENDER, LTD.

BY:_____
     HARRY G. MAHONEY, ESQUIRE
     CARLA P. MARESCA, ESQUIRE

Attorneys for Defendants, Whitemarsh
Township, the Board of Supervisors of
Whitemarsh Township, Ann D. Younglove,
Ronald J. DeRosa, William P. Rimel, Peter P.
Cornog, Michael A. Zeock and Thomas F. Zarko

Validation Codes: HM1224/CM853
Suite 1300
1800 John F. Kennedy Boulevard
Philadelphia, PA 19103-2978
(215) 587-9400
(215) 587-9456 - fax

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.    :
             :  CIVIL ACTION NO. 02-cv-3212
  v.          :
             :
WHITEMARSH TOWNSHIP, MONTGOMERY :
COUNTY, PA, et al.       :

REPLY BRIEF
OF
DEFENDANTS WHITEMARSH TOWNSHIP,
THE BOARD OF SUPERVISORS OF WHITEMARSH TOWNSHIP,
ANN D. YOUNGLOVE, RONALD J. DEROSA, WILLIAM P. RIMEL,
PETER P. CORNOG, MICHAEL A. ZEOCK AND THOMAS F. ZARKO
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION

   Defendants, Whitemarsh Township, The Board of Supervisors of Whitemarsh Township,

Ann D. Younglove, Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and

Thomas F. Zarko filed a Motion for Summary Judgment on June 16, 2004.  Plaintiff filed a brief in

opposition to that Motion on August 11, 2004.  Plaintiff's brief is interwoven with factual

inaccuracies, flawed legal analyses and misstatements of the law to such an extent that Defendants

are constrained to file this Reply.

   Plaintiff's efforts in its brief can best be described as a desperate attempt to "spin" the facts

to create illusory issues in order to overcome the established law in the Third Circuit.  Indeed,

Plaintiff's "spin" of the facts tauntingly invites a factual response by the Defendants in the apparent

hope that such a response will create "issues of fact" that will somehow enable Plaintiff to survive

summary judgment.  The law in the Third Circuit, in the due process and equal protection areas,

when applied to the objective facts of this case, demonstrates that Defendants are entitled to

summary judgment as a matter of law. Even assuming, arguendo, the Court accepts that the facts

of this case as set forth in Plaintiff's brief, Defendants are still entitled to summary judgment.

II.    SUBSTANTIVE DUE PROCESS

     A.    The standard of proof in a substantive due process case has changed from "improper motive" to the "shocks the conscience"

To put this case in proper perspective, one must recall that when Plaintiff filed its Complaint

on May 24, 2002, the standard for substantive due process cases was "improper motive" as set forth

in Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988) and its progeny. Under the "improper motive"

standard for substantive due process, a plaintiff with a protected property interest had to prove either

(1) that the government's actions were not rationally related to a legitimate government interest, or

(2) that the government's actions were motivated by bias, bad faith or other improper motive. Bello

v. Walker, supra; Blanche Road v. Bensalem Township, 57 F.3d 253 (3d Cir. 1995), cert. denied,

116 S.Ct. 303 (1995); Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir. 1991),

cert denied, 112 S.Ct. 1668 (1992).

Given that relatively lax standard for establishing a substantive due process violation in land

use and zoning cases, it came as no surprise that this Court denied Defendants' Rule 12 Motion to

Dismiss the Plaintiff's substantive due process claims on December 11, 2002. Thereafter, however,

the United States Court of Appeals for the Third Circuit, in the landmark case of United Artists

Theatre Circuit, Inc. v. Township of Warrington, et al., 316 F.3d 392 (3d Cir. 2003), dramatically

altered the legal landscape in substantive due process cases in the land use and zoning area. In that

case, the Court overturned Bello and substantially heightened the burden of proof for a substantive

due process claim to action on the part of municipal defendants which "shocks the conscience". Id.

-2-

At 400-401. In <u>United Artists</u>, the Third Circuit explicitly stated that the "improper motive" standard was in direct and irreconcilable conflict with the United States Supreme Court's decision in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1988). Thus, the Court held that the <u>Bello</u> decision and its progeny are "no longer good law". <u>United Artists</u>, supra at 401.

The "shocks the conscience" standard is premised, in part, on the long established policy of federal courts to "avoid being cast in the role of a 'zoning board of appeals.'" <u>United Artists</u>, at 402 (citations omitted). The Third Circuit, in <u>United Artists</u>, took the opportunity to reinforce its disdain for federal courts being cast in this role. Because land use disputes inherently involve some claim of abuse of authority, the more rigorous "shocks the conscience" standard prevents matters of local concern from being transformed into substantive due process claims based only on allegations of improper motives.

Federal district courts and the Third Circuit have applied the "shocks the conscience" standard in multiple land use and zoning cases since <u>United Artists</u>, consistently finding that conduct similar to or worse than the alleged conduct of the Whitemarsh Township Defendants, was not so egregious and outrageous that it "shocks the conscience".

     B.     **Federal Courts, at summary judgment and at trial, have consistently found in favor of municipal defendants**

In its brief, Plaintiff timidly challenges the Third Circuit's decision in <u>United Artists</u>, claiming it was wrongly decided. (Plaintiff's brief, p. 52, fn. 32). It makes this challenge in a footnote, apparently realizing that a direct challenge to the "shocks the conscience" standard would be fruitless. Indeed, in all of the cases cited below, the courts have found in favor of the municipal defendants in land use and zoning cases in which the owner/developer plaintiff claimed a substantive

due process violation. Each was decided at the summary judgment stage or following a bench trial. They all demonstrate that the "shocks the conscience" standard is an extremely stringent one which severely limits the ability of land owners and developers to federalize what are "garden variety" land use disputes. Lindquist v. Buckingham Township, (Lindquist II), 2003 WL 21357247, *1, 68 Fed.Appx. 288 (3d Cir. 2003); Keystone Outdoor Advertising Company, Inc. v. West Whiteland Township, 2003 WL 1914157, 64 Fed.Appx. 333 (3d Cir. Pa. March 11, 2003); Corneal v. Jackson Township, 1-cv-00-1192 (M.D. Pa. July 28, 2003), affd. 2004 U.S.App. LEXIS 7198 (3d Cir. Pa. April 13, 2004); Levin v. Upper Makefield Township, 2004 U.S.App. LEXIS 4457 (3d Cir. Pa. March 8, 2004); Thornbury Noble, Ltd. v. Thornbury Township, et al., C.A. No. 99-cv-6460 (E.D. Pa. October 21, 2003); Fred's Modern Contracting, Inc. v. Horsham Township, 02-cv-0918 (E.D. Pa. March 29, 2004); Blaine v. Township of Radnor, et al., C.A. 02-cv-6684 (E.D. Pa. May 19, 2004); Lindquist v. Buckingham Township, et al., (Lindquist I) 00-cv-1301 (E.D. Pa. April 15, 2003); affd. 03-2431 and 03-2971 (3d Cir. Pa.) (July 19, 2004), petition for rehearing/rehearing en banc denied (August 17, 2004).

In contrast, the only land use case cited by Plaintiff in its opposition brief in which the court did not find in favor of the municipal defendants was decided on a motion to dismiss, not a motion for summary judgment. In that case, Associates in Obstetrics & Gynecology v. Upper Merion Township, et al, 270 F.Supp.2d 633 (E.D. Pa. 2003), the court denied the municipal defendants' Rule 12 motion to dismiss. The court specifically noted that a "Rule 12(b)(6) motion will be granted only when it is ceratin that no relief could be granted under any set of facts that could be proved by the plaintiff." Id., at 637, fn. 2, citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). To suggest that Associates is more similar to the case at bar than the eight (8) cases cited by Defendants

-4-

ignores the procedural posture of <u>Associates</u>.  In point of fact, Plaintiff has cited no summary judgment, trial level or appellate decisions to support its position because there have been no such decisions which support Plaintiff in any Third Circuit courts since <u>United Artists</u>.

 C. <u>The standard is the same for all substantive due process cases</u>

 Plaintiff, in its opposition brief, strategically but misguidedly sets forth an oblique challenge to the "shocks the conscience" standard by claiming there is a different standard to be applied to defendants who have time to deliberate from defendants who act in a hyper-pressurized environment. (See Plaintiff's Opposition Brief at p. 52).  Similar challenges have been raised against the <u>United Artists</u> decision, but to no avail.  In <u>United Artists</u>, the plaintiffs, in their petition for rehearing and/or rehearing en banc, made this argument, attempting to distinguish the facts of <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998) (police chase) from the actions of the municipal officials in <u>United Artists</u> (Board of Supervisors' decision on final plan approval of developer's plans for a movie theater).  The Third Circuit denied plaintiff's petition.  In <u>Lindquist I</u>, the plaintiffs made an identical argument that challenged the applicability of <u>United Artists</u> holding because it was based on <u>County of Sacramento v. Lewis</u>.  That argument was also rejected by the Third Circuit in <u>Lindquist I</u>.  While the court in <u>Associates</u> used this reasoning, in part, to deny the Township's motion to dismiss, the Third Circuit has rejected those arguments.

 D. The actions of municipal officials in other cases where no substantive due process violation was found were similar or worse than the alleged conduct of Whitemarsh Township officials

 Recognizing that the facts of this case do not even come close to behavior which "shocks the conscience", the Plaintiff has attempted, in its brief, to distinguish the facts of this case from other federal cases in which the courts applied the "shocks the conscience" standard.  Plaintiff curiously

uses the boxing analogy of a "one-two punch" to cast a negative light on the actions of the Whitemarsh Township Defendants in rezoning Plaintiff's property and denying Plaintiff's application for preliminary plan approval. Plaintiff argues that this "one-two punch", allegedly lacking in the cases cited by Defendants in their brief, distinguishes this case from the plethora of cases cited by Defendant. Plaintiff's analysis is severely flawed because rezoning of real property and action on land development plans are within the Township's duties as set forth in the Pennsylvania Municipalities Planning Code. 53 P.S. 10101 et seq. The right to rezone is discretionary. The authority to deny a plan that does not comply with Township ordinances is set forth in the Municipalities Planning Code and the Township's own subdivision and land development ordinance. If Plaintiff's version of the facts is correct, then Plaintiff's recourse is in state court to overturn Whitemarsh Township's decision to rezone the quarry property and the decision to deny the second revised preliminary plans for Quarry Hole No. 1.

As stated before, the actions by the municipalities in the previously cited cases (Lindquist II, supra, Keystone Outdoor Advertising, supra, Corneal, supra, Levin, supra, Thornbury Noble, supra, Fred's Modern Contracting, supra, Blaine, supra, and Lindquist I supra) are similar to and arguably worse than the actions complained of by Plaintiff against Whitemarsh Township. In each of those cases, the court found in favor of the municipality.

Plaintiff's blasé dismissal of the case of Lindquist I as "not even remotely similar to this case" speaks volumes about Plaintiff's flawed legal analysis of its substantive due process claim. While one might attribute Plaintiff's failure to properly and accurately analyze Lindquist I to the fact that the case was decided by the Third Circuit only several weeks before Plaintiff filed its opposition brief in the case at bar, it may also reflect either Plaintiff's unfamiliarity with the facts of that case

or a blatant misrepresentation of the facts of that case to this Court. In <u>Lindquist</u>, the plaintiffs owned approximately 250 acres of farm land in Buckingham Township in Bucks County. They sought a two-phased subdivision of the property for residential development. Phase one called for a clustered subdivision utilizing cul-de-sacs. While plaintiffs' application for preliminary plan approval was pending, the Township's Board of Supervisors changed the zoning ordinance and the subdivision and land development ordinance (SALDO) to eliminate clustered subdivisions as a "by right" use and banned cul-de-sacs. The collective effect of these changes to the Township's zoning ordinance and SALDO was to prevent plaintiffs from developing their property as intended if their preliminary plans were denied. The Township did just that. After the amendments were enacted, the Board of Supervisors, by resolution, denied plaintiffs' preliminary plans for Phase one. Within the same resolution, it also denied Phase two even though no application for preliminary plan approval for Phase Two had been submitted for the Township's consideration.

Plaintiffs challenged the Township's actions in state court. The parties agreed to a settlement of that litigation whereby revised preliminary plans would be submitted by the Lindquists and evaluated by the Township under the old zoning and SALDO provisions which permitted clustered subdivisions by right and cul-de-sacs. The court entered the agreement as an approved order. Despite an agreement which was arguably open-ended in terms of the number of revised preliminary plans that could be submitted and the time in which they could be submitted by plaintiffs, the Township Board sought to deny revised preliminary plans by resolution despite the court-approved settlement agreement. Thereafter, the Supervisors passed a series of additional resolutions to correct errors in their earlier denial resolution to thwart plaintiff's development. One resolution sought to

-7-

have plaintiffs' further revised plans evaluated under the amended ordinances despite an opinion from the Township solicitor that the Board should not do that.

Using Plaintiff's boxing analogy, Buckingham Township's actions included a "one-two punch", followed by an "uppercut", a "left cross" and a "rabbit punch". The district court found that although the actions might have evidenced improper motive, the conduct was not so egregious and outrageous as to "shock the conscience". The Third Circuit affirmed, stating:

> The District Court concluded that while the township may have been 'negligent' and 'may have acted with an improper motive', **desirous of thwarting development of the property,** its conduct did not shock the conscience. We concur.

Lindquist I, supra at p. 13 (emphasis added).

Plaintiff's analysis of Lindquist II is also erroneous and misleading. Lindquist II arose out of the same development as Lindquist I. It was brought by the three adult children of the plaintiffs in Lindquist I and by a real estate development partnership hired by the Lindquist family to develop the Lindquist farm. While Plaintiff in the case at bar correctly reported that Lindquist II was dismissed because the statute of limitations action had expired, the Third Circuit, in its opinion affirming the district court, stated the following regarding Buckingham Township's conduct::

> Additionally, in our recent decision in United Artists Theatre Circuit v. Warrington , 316 F.3d 392 (3d Cir. 2003), we held that in light of County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), a plaintiff asserting that a municipal land-use process must show that the defendant's conduct "shocked the conscience" and not just evinced "improper motive". **The plaintiffs do not even come close to establishing conduct on the part of defendants that shocks the conscience.**

Lindquist II, supra, at *1 (emphasis added).

A thorough review of the "shocks the conscience" cases, and in particular the most recent decision by the Third Circuit in <u>Lindquist I</u>, supra, demonstrates that actions taken by a municipality which evidence an improper motive to "thwart development" do not amount to conduct which "shocks the conscience". While the Defendants here do not admit that their rezoning of the property and denial of preliminary plan was a concerted effort to "thwart development of the property", even if this Court believes that to be the case, <u>Lindquist I</u> clearly demonstrates that, in this Circuit, such actions do not "shock the conscience" and do not amount to a substantive due process violation.

     E.    <u>Plaintiff's experts do not establish a due process violation</u>

Because Plaintiff has little objective factual basis to survive summary judgment, it turns to the opinions of its two experts, Marc D. Jonas, Esquire and Joseph J. Viscuso, P.E. and pronounces that their opinions "by themselves, establish an ample basis on which this Court must determine that there are genuine issues of material fact to be tried". For the reasons set forth, neither of the "expert opinions" expressed by Messrs. Jonas or Viscuso are sufficient to preclude summary judgment.

     1.    <u>Marc D. Jonas, Esquire</u>

It is axiomatic that in order to set forth a genuine issue of material fact to be decided by a jury, there must be evidence that would be admissible at trial. Mr. Jonas' testimony would not be admissible at trial.

Under Federal Rule of Evidence 702, in order for a potential expert witness' testimony to be admissible, the party proffering that expert witness must meet three threshold requirements: (1) the witness must be qualified as an expert, (2) the witness must testify to scientific, technical or other specialized knowledge, and (3) the testimony must assist the trier of fact to understand the evidence or determine a fact in issue. F.R.E. 702; <u>Gibbs, Inc. II v. Law Engineering, Inc.</u>, 1992 U.S.Lex.

7602, #91-1048 at *10-11 (4th Cir. March 3, 1992).  The advisory committee notes to Rule 704, moreover, clearly point out that under Rule 701 and 702, expert opinions "must be helpful to the trier of fact" or they are not permitted.  F.R.E. 704, advisory notes; see also <u>Adelman v. Baker, Watts & Company</u>, 807 F.2d 359, 365-370 (4th Cir. 1986) (citing <u>Marx & Company v. Diner's Club, Inc.</u>, 550 F.2d 505, 510 (2nd Cir. 1977), cert. denied 434 U.S. 861).

It is well settled that an expert shall not testify about the requirements of the law or submit testimony that amounts to nothing more than legal conclusions.  <u>Adelman</u>, supra at 368; <u>Federal Realty Inv. Trust v. Pacific Insurance Company</u>, 760 F.Supp. 533, 538 (D.Md. 1991).  The facts presented to the Fourth Circuit in <u>Adelman</u> are analogous to those present here.  In <u>Adelman</u>, an attorney specializing in securities law was called as an expert to testify in substantial part to the "applicability of the security laws to the transactions here, giving his expert opinion on the governing law."  807 F.2d at 368.  The Fourth Circuit Court of Appeals upheld as proper the exclusion of this evidence, stating that the admission of such testimony would "fly squarely in the face of precedent." <u>Id</u>.

The fundamental proposition that experts are not permitted to testify concerning their legal conclusions flows from the fact that under F.R.E. 702, expert testimony that consists of legal interpretation and legal conclusions cannot possibly assist the trier of fact.  See <u>Harden v. Ski Venture, Inc.</u>, 50 F.3d 1291, 1296 (4th Cir. 1995); <u>Burkhart v. Washington Metro Area Transit Authority</u>, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997); and generally <u>United States v. Cecil</u>, 836 F.2d 1431, 1441 (4th Cir. 1998), cert denied, 487 U.S. 1205.  In the <u>Marx</u> decision, for instance, the Second Circuit set forth this reasoning when it denied the admissibility of an attorney's expert opinion testimony, stating:

-10-

> "The special legal knowledge of the judge makes the witness'
> testimony superfluous (citations omitted) . . . the admission of such
> testimony will give the appearance that the court was shifting to
> witnesses the responsibility to decide the case."

The admission of this type of testimony constitutes error. The law, as set forth in Adelman

and Marx could not be more clear. In fact, the law is so clear that every other circuit which has

considered it, adopted it: See, e.g., Nieves-Villanueva vs. Soto-Rivera, 133 F.3d 92, 99-101 (1st Cir.

1997) (a 42 U.S.C. §1983 case in which the court said it was error for an expert to testify that certain

municipal employees' hiring was a violation of law); Snapp - Drap, Inc., vs. CIR, 98 F.3d 194, 198

(5th Cir. 1996) (upholding decision to exclude expert reports that improperly contained legal

conclusions and statements of mere advocacy), cert. denied 522 U.S. 821 (1997); United States vs.

Zipkin, 729 F.2d 384, 387 (6th Cir. 1984) (reversing a trial court's decision to permit the testimony

of bankruptcy judge regarding his interpretation of the Bankruptcy Act); Harver Ins. Co. vs.

Continental Bank Corp., 922 F.2d 357, 366 (7th Cir. 1990) (admission of attorney expert witnesses

testimony on legal matters was error); Police Retirement System vs. Mid-West Invest., 940 F.2d 351,

357 (8th Cir. 1991) (admission of experts securities attorney testimony on the meaning application

of securities law was error: "**explaining the law is the judge's job**."); United States vs. Poschwatta,

829 F.2d 1477, 1483 (9th Cir. 1987) (construction of legal document is a question of law for the

court, not an expert), cert. denied 484 U.S. 1064 (1988); Crow Tribe of Indianans vs. Racicot, 87

F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is not proper for issues of law); Specht vs. Jansen,

853 F.2d 805, 806-810 (10th Cir.), cert. denied, 480 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783

(1989) **(testimony of an expert witness attorney admitted on ultimate issue of law constituted**

**reversible error); Montgomery vs. Aetna Cas. and Sur. Co., 898 F.2d 1537, 1541 (11th Cir.**

-11-

**1999)** ("a[n] expert witness...may not testify to the legal implications of conduct"); <u>Burkhart</u>, 112 F.3d at 1212-13 (DC Cert. 1997) (citing <u>Marx and Company</u> at 509-510: "each courtroom comes equipped with a legal expert 'called a judge' and it is his or her province alone to instruct the relevant legal standards."). See also dictum in <u>VIN, Inc. vs. Somerset Hotel As'n</u>, 19 F. Supp.2d 422, 427 n.4 (W.D. Pa. 1998), aff'd without opinion, 1999 U.S. App. Lexis 9440 (3rd Cir. April 8, 1999).

The judge is the final arbitrator and legal expert regardless of the complexity of the legal environment over which he must rule. See <u>Willette vs. Bin</u>, 778 F. Supp. 10, 11 (Ed. La. 1991) ("within this [the courts] province, the trial judge is presumed to have special competency, regardless of the complexity of issues.") (citing <u>United States vs. Curtis</u>, 782 F.2d 593, 599 (6th Cir. 1986)).

As noted at the beginning of this section, under F.R.E. 702, in order for a proposed expert's testimony to be admissible, it must, among other things, convey scientific, technical or other specialized knowledge. Mr. Jonas' report totally fails to meet that requirement. Rather, such material is simply legal advocacy whose only proper time and place is in Plaintiff's counsel's closing speech to the finder of fact.

Even a cursory review of Mr. Jonas' deposition and expert report (Plaintiff's Exhibits 12 and 19, respectively attached to its Brief in Opposition to Motion for Summary Judgment) demonstrates that his "expert opinion" consists largely of regurgitation of Plaintiff's favorite allegations, is little more than a legal brief in support of the Plaintiff's case and an exercise in legal advocacy. Throughout his report, Mr. Jonas states that the actions of the Defendants "shock his conscience". Aside from the fact it is of no moment whether Defendants' actions shock Mr. Jonas' conscience, he would not be permitted to usurp the Court's function of being the sole provider of the law if this

case were to proceed to trial. Therefore, because Mr. Jonas' "expert legal opinions" would not be admissible, Plaintiff cannot point to them and claim that they create genuine issues of material fact.

       2.     <u>Joseph J. Viscuso, P.E.</u>

In his report, Mr. Viscuso repeatedly claims that Resolution 2002-17's list of the Plan's non-compliances with the Township's zoning ordinance, SALDO and grading and stormwater management ordinance were not, in his opinion, non-compliances because the preliminary plan requirements of Whitemarsh Township's SALDO did not require these specific items. However, in certain instances, Mr. Viscuso acknowledges that a listed non-compliance is a valid criticism and should have either been a condition for final plan approval or that the applicant should have been granted a waiver. Three such instances are listed on page 40 of his report, referring to the Township's denial comments in 4(g), (h) and (i). For those three items, Mr. Viscuso acknowledges that the applicant partially provided the necessary information (item g) or did not provide it at all (items h and i). Mr. Viscuso later attempts to explain away those items as being relatively minor and should have been subject to waivers.

While Defendants do not wish, at this stage, to engage in a debate over whether Mr. Viscuso's report and deposition testimony are credible, a rejection of a plan is lawful if adequately supported by even one of several objections. <u>Herr v. Lancaster County Planning Commission</u>, 155 Pa.Cmwlth. 379, 625 A.2d 164 (Pa.Cmwlth.Ct. 1993); <u>Akin v. South Middleton Township Zoning Hearing Board</u>, 120 Pa.Cmwlth. 112, 547 A.2d 883 (1988); <u>County Builders, Inc. v. Lower Providence Township</u>, 5 Pa.Cmwlth. 1, 287 A.2d 849 (1972). The municipality may, in that instance, deny the plan or agree to a conditional approval.

From a broader perspective, Mr. Viscuso's report must be viewed as little more than a difference of opinion he has with Thomas F. Zarko, the Township's engineer, as to the interpretation of the Township's zoning, SALDO and grading and stormwater management ordinances. However, even if the Court were persuaded, at this stage, that there was a violation of state law because the Supervisors had an insufficient basis for denying Plaintiff's preliminary plan application, such a violation of state law does not amount to a constitutional violation. Even a "bad faith violation of state law remains only a violation of state law." United Artists, supra at 402, citing Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1104-05 (8th Cir. 1992). In effect, both Mr. Jonas' and Mr. Viscuso's opinions do not create genuine issues of "material" fact with regard to the issue of whether there was a substantive due process violation.

III.    EQUAL PROTECTION

A.    Plaintiff's Equal Protection Analysis is Flawed

A plaintiff may recover on an equal protection claim if it can be established that:

> (1) the person, compared with others similarly situated, was selectively treated, and

> (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the persons.

Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Each prong of the test is to be applied separately and "failure to satisfy either inquiry [is] fatal to the plaintiff's claim." A.B.C. Home Furnishings, Inc. v. Town of East Hampton, 964 F. Supp. 697, 702 (E.D. N.Y. 1997).

It is undisputed that this case does not involve a suspect class or a fundamental right. Therefore, the Equal Protection clause of the Fourteenth Amendment requires only that the

-14-

Township's actions be "rationally related to a legitimate state interest" to withstand challenge. <u>Eide v. Sarasota County</u>, 908 F.2d 716, 722 (11th Cir. 1990);<u>Panama City Medical Diagnostic Ltd. v. Williams</u>, 13 F.3d 1541, 1545 (11th Cir. 1994), <u>citing</u> <u>Nordlinger v. Hahn</u>, 505 U.S. , 112 S. Ct. 2326, 2331-2332, 120 L. Ed. 2d 1 (1992).

> 1.    Plaintiff fails to cite to any specifics regarding how its property is <u>similarly situated to other properties in Whitemarsh Township</u>

> If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court. Limiting such claims is essential to prevent federal courts from turning into "zoning boards[s] of appeals." <u>Village of Belle Terre v. Boraas</u>, 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting).

In its Brief, Plaintiff attacks Defendants' legal argument and asserts that Defendants fail to cite case law on point with this issue. However, Plaintiff fails to cite to any specific examples of how its property is actually similarly situated to the other properties to which it compares itself. Rather, Plaintiff makes a general assertion that they do not need to be identical and argues that the mere fact that it seeks land development in the Township is sufficient to make it similarly situated to others who have gone through the land development process.

The law is clear. "[A]n equal protection claim revolves around whether similarly situated persons are treated differently." <u>The Reserve</u>, *supra,* 17 F.3d at 1381. n189 ***"Different treatment of dissimilarly situated persons does not violate the equal protection clause."*** <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1109 (11th Cir. 1987), *cert. denied*, 485 U.S. 961, 99 L. Ed. 2d 425, 108 S. Ct. 1225 (1988).

*In land use planning cases, it may be very difficult to show unequal application of a zoning ordinance since each parcel can be unique.* Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1240 (9th Cir.), cert. denied, 130 L. Ed. 2d 125, 115 S. Ct. 193 (1994). *Summary judgment is appropriate with respect to an "as applied" denial of equal protection where the undisputed facts show that the other properties were not similarly situated.* Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1079-1080 (5th Cir. 1989) (emphasis added); Spence v. Zimmerman, 873 F.2d 256, 261-262 (11th Cir. 1989).

In The Development Group, LLC, et al. v. Franklin Township Board of Supervisors, et al., 2003 U.S. Dist. LEXIS 18042 (E.D. Pa. September 24, 2003), this Court addressed the equal protection requirements of "similarly situated" and "no rational basis for the difference in treatment" in a Rule 12 motion to dismiss. Plaintiff, The Development Group, owned a parcel of land in Franklin Township, known as Miller Farm, which was zoned for high density residential development ("HDR"). This zoning permitted, by right, a maximum of five residential units per acre. Any development at lesser density would, under the Township's zoning ordinance, be deemed a "conditional use," and would require the approval of the Board of Supervisors following a conditional use hearing . Id. at 6.

Representatives of the Plaintiff developer presented a sketch plan to the Planning Authorities (Planning Commission and Board of Supervisors) at a joint public meeting. The sketch plan outlined a proposed development for the first of two phases of the development, involving the construction of approximately 54 single family residences. Id. at *8. At the meeting, Defendants pointed out that the HDR zoning of the Miller Farm I property prohibited single-family homes, whereas townhouses would be permitted under the applicable ordinances. However, according to the Complaint,

-16-

members of the Planning Authorities who were present at the meeting also told Plaintiffs that they were opposed to development of any kind on the property and that they would never approve a development plan for the land, irrespective of whether it conformed with the applicable ordinances. Id.

Based on Defendants' comment that townhouses would be a use permitted by the relevant ordinances, Plaintiffs undertook to prepare and present land development plans for a townhouse development which presumably was a by-right use under the HDR zoning. Following submission of the plans, the plaintiffs were subject to a review process that they contended was lengthier, much harsher and more onerous than other developers experienced. The Board of Supervisors eventually denied the plans, citing numerous deficiencies and non-compliances with the township's ordinances. Plaintiffs contended that these reasons cited for denial in a letter to the plaintiffs were "spurious and pretextual, and provided an inappropriate and insufficient basis for denial of preliminary plans." Id., at *10. The Board of Supervisors subsequently denied plans for the second phase of the property, also detailing its reasons in a letter to the plaintiffs.

Plaintiffs alleged that the Township violated Plaintiffs' equal protection rights because the Township had approved plans for tracts "similarly situated" to Plaintiffs' property. Specifically, Plaintiffs referred to a development known as Hess Mill Run II which was granted a waiver concerning permissible lengths of cul-de-sacs and the number of units permissible on cul-de-sacs, while Plaintiffs were denied such a waiver. Id. at *20. Also, the Complaint alleged that Hess Mill Run II was approved even though sewer planning modules had not yet been submitted to the state, whereas the Miller Farm sewer planning modules had been approved by the Township and submitted

to the state.  Plaintiff also referred to another property called Echo Hill that they claimed was similarly situated without providing any detail to substantiate the claim.

This Court stated that other than these "***generalized allegations***", Plaintiffs provide[d] no detail to support their contention that Hess Mill Run II and Echo Hill were similarly situated to Miller Farm. In order to demonstrate that these proposed developments were, in fact, similarly situated to Plaintiffs' developments, the Court stated the Plaintiffs would have to provide much more detail about Hess Mill Run II and Echo Hill." Id. at *22.  The Court also noted that the complaint did not contain factual charges which, if proven, would show the absence of any rational basis for the Township's actions.

Plaintiff's burden at the summary judgment stage is much greater than at the motion to dismiss stage.  Plaintiff has failed to demonstrate how the other properties and their developers in Whitemarsh Township to which Plaintiff points are "similarly situated" or "similar in all relevant respects" to Plaintiff.  To assert, as Plaintiff has, that it is similarly situated to every other developer since January 1, 1996 by the mere fact that it has gone through the same land development process in Whitemarsh Township, ignores the legal requirement of identifying details of the other developments which would permit the Court to find, as a threshold matter, that the Plaintiff and its properties are similar in all relevant respects to other developments.

      2.      Plaintiff has not met its burden of establishing the absence of
             any rational basis for the Township's actions

Assuming *arguendo* that Plaintiff has established a genuine issue of material fact to satisfy prong one, Plaintiff must still satisfy the second prong of this analysis to overcome Defendants' Motion for Summary Judgment. See Barnes Foundation v. Township of Lower Merion, 982 F. Supp.

-18-

970, 986 (E.D. Pa. 1997) ("proof of racially disproportionate impact . . . would not be enough, standing alone, to support the inference of purposeful discrimination because the Defendant's actions are explainable on grounds other than race"); <u>see also</u> <u>Crowley v. Courville</u>, 76 F.3d 47, 53 (2d Cir. 1996)("a demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith"); <u>Zahra</u>, *supra* at 684 ("'equal protection does not require that all evils of the same genus be eradicated or none at all'").

"Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. ***In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification***." <u>F.C.C. v. Beach Communications, Inc.</u>, U.S., 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993) (emphasis added). "Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." <u>Id.</u> ***Thus, "a state 'has no obligation to produce evidence to sustain the rationality of a statutory classification'" because "the burden is on the challenger to disprove every conceivable basis which might support the classification, 'whether or not the basis has a foundation in the record.'*** <u>Panama City Medical Diagnostic Ltd.</u>, 13 F.3d at 1547, <u>quoting</u> <u>Heller v. Doe by Doe</u>, 113 S. Ct. 2637, 2643 (1993) (emphasis added). Cf. Also, <u>The Development Group, LLC, et al. V. Franklin Township Board of Supervisors, et al.</u>, supra. Unquestionably, Plaintiff has failed to meet this burden.

-19-

a.     Rezoning

"The Equal Protection Clause affords the states particularly wide latitude with respect to zoning decisions." Acierno v. New Castle County, 2000 U.S. Dist. Lexis 7853 at *18.

> In fact, a zoning ordinance not affecting suspect classes:
> Cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Acierno, supra at *18 citing Heller v. Doe, 509 U.S. 312, 320 (1993).

*In order to prevail on an equal protection claim, Plaintiff must demonstrate that the passage and application of the zoning ordinance or land use decision "so lacks rationality that [it] constitute[s] a constitutionally impermissible denial of equal protection*." New Orleans v. Dukes, 427 U.S. 297, 305 (1976) (emphasis added).

Section 601 of the Municipalities Planning Code grants to the governing body of each municipality in Pennsylvania the authority to enact, amend, and repeal zoning ordinances. 53 P.S. §10601. Federal courts have generally accorded a high degree of deference to policy objectives in land use planning. Village of Belle Terre v. Boraas, 416 U.S. 1, 93 S.Ct. 1536, 39 L.Ed2d 797 (1974). Pennsylvania appellate courts have acknowledged that zoning is permitted when exercised for the promotion of the health, safety, morals or general welfare of the community. Sobel Construction Company v. Zoning Hearing Board of Borough of East Stroudsburg, 329 A.2d 912, (Pa. Cmwlth. 1974). Rezoning is a purely legislative function reserved to the governing body of the

municipality.  Township of Haverford v. Zoning Hearing Board of Haverford Township and Havwin Manor, Inc., 344 A.2d 758 (Pa. Cmwlth. 1975)(citing 53 P.S. §10601).

In Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, (3rd Cir.), cert denied, U.S., 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), the Court of Appeals noted the narrow review that is proper for a court's scrutiny of zoning ordinances and their compliance with federal substantive due process standards:

> Given the legislative or quasi-legislative nature of zoning decisions, their review by federal courts is quite different from the review to which they may be subjected by state courts.  See, e.g., Fleming v. City of Tacoma, 81 Wash.2d 292, 502 P.2d 327 (1972) (rezoning amendments are subject to review under Washington "appearance of fairness" doctrine).  It is also very different from the review of certain federal administrative actions, where, by statute, a decision must be overturned if not supported by "substantial evidence" on the record. See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983). Unlike such schemes for administrative review, federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for "irrationality" or "arbitrariness," is proper  only if the governmental body could have had no legitimate reason for its decision.  See, e.g., Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101S.Ct. 715, 724, 66 L.Ed.2d 659 (1981); Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, (3rd Cir.), cert denied, U.S., 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987) quoting Shelton v. City of College Station, 780 F.2d 475, 482-83 (5th Cir.1986) (en banc) (emphasis supplied), cert. denied, 107 S.Ct. 89, (1986).  See also Kaplan v. Clear Lake City Water Auth., 794 F.2d 1059 (5th Cir.1986).  The Court in Pace continued:

> The federal courts largely defer to legislative judgment on such matters as zoning regulation "because of the recognition that the process of democratic political decision making often entails the accommodation of competing interests, and thus necessarily produces

-21-

laws that burden some groups and not others." Id. at 687.  **This court will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decision making unless the local legislative judgment is without a plausible rational basis.** (Emphasis added).

It is interesting to note that in Pace Resources, supra, the court noted that a state court had found the rezoning of plaintiff's property by the township to be illegal and had reversed the zoning.  Despite this state court ruling, there was no constitutional violation.

The rezoning of the property to provide for residences following rehabilitation of the quarry properties is clearly a legitimate use of the Township's zoning power under the Municipalities Planning Code.  As such, the actions of the individual Supervisors and the Board as a whole clearly relate to a legitimate government interest.  Therefore, Plaintiff's cannot establish that the rezoning does not relate to a legitimate government interest.  Sameric Corporation of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998).

The Supervisors' decision to rezone the quarry properties was clearly rationally related to a legitimate interest in having the quarry properties' uses and zoning, after reclamation, be consistent with the surrounding uses and zoning, which were primarily low density residential, agricultural and recreational (golf courses).  Although constantly referring to the rezoning of the quarry properties as "retaliatory", Plaintiff ignores the fact that rezoning of the property had been "on the table" and in fact requested by the Plaintiff itself as early as submission in November, 2000 of the sketch plan for a mixed use of offices and apartments.  That use necessarily required a rezoning of the property. The Plaintiff's representatives knew by July 13, 2001 that the quarry properties were going to be rezoned from HVY-X to another classification.  On that date, the Supervisors, at their regularly scheduled public meeting, accepted Intervenor Cohan's petition to rezone the property and

announced that it was going to look to rezone the property. Plaintiff's characterization of the rezoning as "retaliatory" is not only factually unfounded but also of no significance because a municipality always has the right to rezone property. Plaintiff has not identified the evidence necessary to "disprove every conceivable basis which supports the classification which, in this case, is the rezoning of the quarry properties. "

    b. <u>Denial Of Preliminary Plans</u>

  Where a preliminary plan for land development fails to comply with substantive requirements of the subdivision ordinance, its rejection or conditional approval is within the discretion of the governing body.  <u>Herr v. Lancaster County Planning Comm'n</u>, 625 A.2d 164, 172 (Pa.Cmwlth.Ct.1993).

  In the case at bar, the Supervisors had a legitimate, rational basis for denying the second amended plans which did not fully comply with the Township's zoning, subdivision and land development and grading and stormwater management ordinances. In the land development area, it is unquestioned that a municipality has a legitimate interest in having land development plans comply with its ordinances. In <u>The Development Group, LLC</u>, *supra*, the Board of Supervisors denied the preliminary plans for Miller Farm, citing reasons such as "higher opacity of landscape screens than permitted by the applicable zoning ordinance, insufficient submission regarding lighting, inadequate site distances at a certain intersection, need for further data regarding the water supply in stormwater infiltrations." 2003 U.S. Dist. LEXIS 18042 at *10. Even though the plaintiffs contended that these reasons for denial were "spurious and pretextual", the court noted that the complaint did not contain any factual charges which, if proven, would negate the rational basis of the township's actions. <u>Id.</u> at *21. Likewise, Plaintiff in this case cannot establish that Defendants'

denial of Plaintiff's preliminary plan approval is totally devoid of any rational basis. The Plaintiff's burden, which it has failed to meet, is to show the total absence of any rational basis for the Township's actions.

      B.     Plaintiff has improperly attempted to recast alleged procedural due
              process violations as a basis for its equal protection claims

In its opposition brief, on pages 72 and 73, Plaintiff cites several alleged procedural due process violations in its list of "firsts" in an effort to show how it was treated differently without any rational basis for the treatment. The law in this jurisdiction is clear. "As a matter of logic and law, Plaintiff may not convert a procedural due process claim into an equal protection claim by expediently alleging that he was denied procedural rights by an official who has accorded such rights to others in the past." Stop-Save Township Open Places, Inc., et al. v. Bd. of Supervisors of Montgo. Twp., 1996 U.S. Dist. LEXIS 16998, at *10 (E.D. Pa. 1996) citing Rivkin v. Dover Twp. Rent Leveling Board, 671 A.2d 567, 582 (N.J. 1995) (cert. denied. 1996 U.S. LEXIS 6103, 117 S.Ct. 275 (1996)) (claimant may not circumvent principle that adequate state remedy to redress procedural irregularities precludes §1983 procedural due process claim by recasting such claim as one for denial of equal protection).

## IV.   PROCEDURAL DUE PROCESS

Plaintiff's argument that it was denied procedural due process is, at best, a flawed legal analysis. Initially, Plaintiff criticizes Defendants' argument because they cited no new law in their Memorandum of Law from that cited in their Motion to dismiss. Every case cited by Defendants is good law in the Third Circuit and each stands for the proposition that a procedural due process claim

in the land use and zoning area is not valid if the state provides reasonable remedies to rectify legal errors by a local administrative body.

In <u>Bello v. Walker</u>, 840 F.2d 1124, 1128 (3d Cir. 1988), the plaintiff was denied a building permit by a municipal council.  The Third Circuit held that because Pennsylvania affords a full judicial mechanism to challenge the administrative decision to deny an application for a building permit, that there was no justifiable procedural due process claim.  Even though the "improper motive" standard for substantive due process claims was overruled by <u>United Artists</u>, supra, <u>Bello</u> is still good law on procedural due process.  Cf, also, <u>DeBlasio v. Zoning Board of Adjustment</u>, 53 F.3d 592 (3d cir. 1995) (procedural due process claim failed where New Jersey provides a constitutionally adequate process for challenging wrongful zoning decisions); <u>Rogin v. Bensalem Township</u>, 616 F.2d 680, 695 (3d Cir. 1980) (Pennsylvania's procedures for challenging zoning ordinances substantially conformed with the due process requirements enumerated by the Supreme Court).

Against these cases, Plaintiff cites <u>C&M Group, Inc. v. New Britain Township</u>, C.A. 90-4375, 1991 WL 25684,*3 (E.D. Pa. Feb 14, 1991) for the proposition that "post-deprivation remedies are adequate to satisfy due process 'only when the circumstances surrounding the deprivation requires quick action by the state, or when pre-deprivation procedures are impractical".  While Plaintiff creates the distinct impression that this case supports its position that the **"actions"** of the Township establishes a procedural due process violation, the court there held that the pre-deprivation "procedures", not the "actions" of the Board, were dispositive of this issue:

> Nevertheless, plaintiffs have failed to allege that pre-deprivation **procedures** provided in this case were constitutionally infirm. Plaintiff avers that the Board of Supervisors failed to provide "a

decision based on the record", Complaint para. 21, and argues in its brief that the board [of supervisors] failed to give the Brittany Square plan fair consideration. However, even if the board acted arbitrarily and failed to base its decision on the applicable law and [*9] facts, that goes to the substance rather than procedure. It does not amount to a failure to provide adequate procedure. See <u>Rogin</u>, 616 F.2d at 692-94.

<u>C&M Group, Inc.</u>, supra at *8, 9.

The Court dismissed plaintiff's procedural due process claim in <u>C&M</u>.

Adding another layer of confusion, the Plaintiff then cites <u>Leipziger v. Township of Falls</u>, 2001 U.S. Dist. LEXIS 1048 (E.D. Pa. Feb 1, 2001), again apparently in support of its theory that it has been denied pre-deprivation "procedures". That case involved a plaintiff towing company's claim for constitutional violations as a result of township's removal of the plaintiff from a rotating list of township approved towers. In that case, there was no pre-removal hearing available under the township's ordinance. The failure to have any "procedure" available to a towing company to challenge its removal before it occurred violated plaintiff's procedural due process rights. <u>Leipziger</u>, supra.

In the case at bar, Plaintiff has numerous and adequate pre and post deprivation "procedures" provided by the Township's SALDO and the Municipalities Planning Code to apply for land development appeal its denial and to challenge rezoning both before and after it occurs. Plaintiff's complaints about how it was treated during the land development process and during the rezoning are "substantive", not "procedural" due process challenges. Therefore, Plaintiff's analysis is flawed and summary judgment in favor of Defendants is appropriate.

V.    <u>CONCLUSION</u>

For the reasons set forth in this Reply Brief as well as in their earlier Motion for Summary Judgment and accompanying Memorandum, Defendants are entitled to and respectfully request that the Court enter summary judgment in their favor.September 2, 2004

Respectfully submitted,

DEASEY, MAHONEY & BENDER, LTD.

BY:_____
    HARRY G. MAHONEY, ESQUIRE
    CARLA P. MARESCA, ESQUIRE
    Attorneys for Defendants, Whitemarsh
    Township, the Board of Supervisors of
    Whitemarsh Township, Ann D. Younglove,
    Ronald J. DeRosa, William P. Rimel, Peter P.
    Cornog, Michael A. Zeock and Thomas F. Zarko

    Validation Codes: HM1224/CM853
    Suite 1300
    1800 John F. Kennedy Boulevard
    Philadelphia, PA 19103-2978
    (215) 587-9400
    (215) 587-9456 - fax

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HIGHWAY MATERIALS, INC.                          :
                                                  :        CIVIL ACTION NO. 02-cv-3212
        v.                                        :
                                                  :
WHITEMARSH TOWNSHIP, MONTGOMERY    :
COUNTY, PA, et al.                                :

CERTIFICATE OF SERVICE

        I, Harry G. Mahoney, Esquire, hereby certify that a true and correct copy of Defendants

Whitemarsh Township, the Board of Supervisors of Whitemarsh Township, Ann D. Younglove,

Ronald J. DeRosa, William P. Rimel, Peter P. Cornog, Michael A. Zeock and Thomas F. Zarko's

Motion for Leave of Court to File a Reply Brief in Support of their Motion for Summary Judgment

was served this date, via first-class mail on all counsel of record addressed as follows:

                Walter M. Einhorn, Jr.,  Esquire
                Ballard, Spahr, Andrews & Ingersoll, LLP
                1735 Market Street, 51st Floor
                Philadelphia, PA 19103

                Kevan F. Hirsch, Esquire
                Kaplin, Stewart, Meloff, Reiter & Stein, P.C.
                350 Sentry Parkway
                Building 640
                Blue Bell, PA 19422

Date:                                    _____
                                         HARRY G. MAHONEY, ESQUIRE